1

```
1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
2       ────────────────────────────────

3   ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
    et al.,
4                    Plaintiffs,             1:24-cv-03993-HB
    vs.
5
    BLACKBAUD, INC., et al.,                 Motion to Dismiss
6                    Defendants.
        ────────────────────────────────    (Consolidated)
7
    ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
8   et al.,
                     Plaintiffs,             1:24-cv-03998-HB
9   vs.

10  WHITEPAGES, INC., et al.,                Motion to Dismiss
                     Defendants.
11      ────────────────────────────────

12
    Mitchell H. Cohen Building & U.S. Courthouse
13  4th and Cooper Streets
    Camden, New Jersey 08101
14  Tuesday, October 1, 2024
    Commencing at 1:28 p.m.
15

16  B E F O R E:           THE HONORABLE HARVEY BARTLE, III,
                           UNITED STATES DISTRICT JUDGE (EDPA)
17

18

19
                 (CAPTION CONTINUED ONTO NEXT PAGES)
20

21         John J. Kurz, Federal Official Court Reporter
                  John_Kurz@njd.uscourts.gov
22                     (856)576-7094

23   Proceedings recorded by mechanical stenography; transcript
             produced by computer-aided transcription.
24

25
```

2

---

ATLAS DATA PRIVACY CORPORATION, et al.,

                      *Plaintiffs*,

vs.

HIYA, INC., et al.,

                      *Defendants*.

CIVIL ACTION NUMBER:

1:24-cv-04000-HB

---

ATLAS DATA PRIVACY CORPORATION, et al.,

                      *Plaintiffs*,

vs.

WE INFORM, LLC,

                      *Defendants*.

CIVIL ACTION NUMBER:

1:24-cv-04037-HB

---

ATLAS DATA PRIVACY CORPORATION, et al.,

                      *Plaintiffs*,

vs.

INFOMATICS, LLC, et al.,

                      *Defendants*.

CIVIL ACTION NUMBER:

1:24-cv-04041-HB

---

ATLAS DATA PRIVACY CORPORATION, et al.,

                      *Plaintiffs*,

vs.

THE PEOPLE SEARCHERS, LLC, et al.,

                      *Defendants*.

CIVIL ACTION NUMBER:

1:24-cv-04045-HB

---

ATLAS DATA PRIVACY CORPORATION, et al.,

                      *Plaintiffs*,

vs.

COMMERCIAL REAL ESTATE EXCHANGE, INC., et al.,

                      *Defendants*.

CIVIL ACTION NUMBER:

1:24-cv-04073-HB

---

(CAPTION CONTINUED ONTO NEXT PAGES)

```
 1   ————————————————————————

 2   ATLAS DATA PRIVACY CORPORATION,      CIVIL ACTION NUMBER:
     et al.,
 3                   Plaintiffs,          1:24-cv-04075-HB
     vs.
 4
     DM GROUP, INC., et al.,
 5                   Defendants.
     ————————————————————————
 6

 7   ATLAS DATA PRIVACY CORPORATION,      CIVIL ACTION NUMBER:
     et al.,
 8                   Plaintiffs,          1:24-cv-04077-HB
     vs.
 9
     CARCO GROUP INC., et al.,
10                   Defendants.
     ————————————————————————
11
     ATLAS DATA PRIVACY CORPORATION,      CIVIL ACTION NUMBER:
12   et al.,
                     Plaintiffs,          1:24-cv-04080-HB
13   vs.

14   DELUXE CORPORATION, et al.,
                     Defendants.
15   ————————————————————————

16   ATLAS DATA PRIVACY CORPORATION,      CIVIL ACTION NUMBER:
     et al.,
17                   Plaintiffs,          1:24-cv-04095-HB
     vs.
18
     TWILIO INC., et al.,
19                   Defendants.

20   ————————————————————————

21   ATLAS DATA PRIVACY CORPORATION,      CIVIL ACTION NUMBER:
     et al.,
22                   Plaintiffs,          1:24-cv-04096-HB
     vs.
23
     DELVEPOINT, LLC, et al.,
24                   Defendants.
     ————————————————————————
25              (CAPTION CONTINUED ONTO NEXT PAGES)
```

1    _____

2    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
3                    *Plaintiffs*,          1:24-cv-04098-HB
     vs.
4
     QUANTARIUM ALLIANCE, LLC, et al.,
5                    *Defendants*.
     _____
6

7    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
8                    *Plaintiffs*,          1:24-cv-04103-HB
     vs.
9
     YARDI SYSTEMS, INC., et al.,
10                   *Defendants*.
     _____
11

12   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
13                   *Plaintiffs*,          1:24-cv-04104-HB
     vs.
14
     6SENSE INSIGHTS, INC., et al.,
15                   *Defendants*.
     _____

16   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
17                   *Plaintiffs*,          1:24-cv-04105-HB
     vs.
18
     LIGHTBOX PARENT, L.P., et al.,
19                   *Defendants*.
     _____
20

21   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
     et al.,
22                   *Plaintiffs*,          1:24-cv-04106-HB
     vs.
23
     SEARCH QUARRY, LLC, et al.,
24                   *Defendants*.
     _____

25                   (CAPTION CONTINUED ONTO NEXT PAGES)

1  ———————————————————————————

2  ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
3                   *Plaintiffs*,            1:24-cv-04107-HB
   vs.
4
   ACXIOM, LLC, et al.,
5                   *Defendants.*
   ———————————————————————————
6
7  ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
8                   *Plaintiffs*,            1:24-cv-04110-HB
   vs.
9
   ENFORMION, LLC, et al.,
10                  *Defendants.*
   ———————————————————————————
11
12 ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
13                  *Plaintiffs*,            1:24-cv-04111-HB
   vs.
14
   COSTAR GROUP, INC., et al.,
15                  *Defendants.*
   ———————————————————————————
16 ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
17                  *Plaintiffs*,            1:24-cv-04112-HB
   vs.
18
   ORACLE INTERNATIONAL CORPORATION,
19 et al.,
                    *Defendants.*
20 ———————————————————————————
21 ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
22                  *Plaintiffs*,            1:24-cv-04113-HB
   vs.
23
   RED VIOLET, INC., et al.,
24                  *Defendants.*
   ———————————————————————————
25
                (CAPTION CONTINUED ONTO NEXT PAGES)

```
 1    _____

 2    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
      et al.,
 3                    Plaintiffs,            1:24-cv-04114-HB
      vs.
 4
      RE/MAX, LLC, et al.,
 5                    Defendants.
      _____
 6
      ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
 7    et al.,
                      Plaintiffs,            1:24-cv-04141-HB
 8    vs.

 9    DIGITAL SAFETY PRODUCTS, LLC, et al.,
                      Defendants.
10    _____

11    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
      et al.,
12                    Plaintiffs,            1:24-cv-04143-HB
      vs.
13
      CIVIL DATA RESEARCH,
14                    Defendants.

15    _____

16    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
      et al.,
17                    Plaintiffs,            1:24-cv-04160-HB
      vs.
18
      SCALABLE COMMERCE, LLC, et al.,
19                    Defendants.
      _____
20
      ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
      et al.,
21                    Plaintiffs,            1:24-cv-04168-HB
      vs.
22
      EPSILON DATA MANAGEMENT, LLC, et al.,
23                    Defendants.
      _____
24

25                   (CAPTION CONTINUED ONTO NEXT PAGES)
```

```
1   _____

2   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
3                    Plaintiffs,           1:24-cv-04171-HB
    vs.
4
    PEOPLE DATA LABS, INC., et al.,
5                    Defendants.
    _____
6

7   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
8                    Plaintiffs,           1:24-cv-04174-HB
    vs.
9
    LABELS & LISTS, INC.,
10                   Defendants.
    _____
11
12  ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
                     Plaintiffs,           1:24-cv-04175-HB
13  vs.

14  CLARITAS, LLC, et al.,
                     Defendants.
15  _____

16  ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
17                   Plaintiffs,           1:24-cv-04176-HB
    vs.
18
    INNOVIS DATA SOLUTIONS INC., et al.,
19                   Defendants.

20  _____

    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
21  et al.,
                     Plaintiffs,           1:24-cv-04178-HB
22  vs.

23  ACCURATE APPEND, INC., et al.,
                     Defendants.
24  _____

25                   (CAPTION CONTINUED ONTO NEXT PAGES)
```

1  ―――――――――――――――――――

2  **ATLAS DATA PRIVACY CORPORATION,**          **CIVIL ACTION NUMBER:**
   **et al.,**
3                        *Plaintiffs,*          **1:24-cv-04181-HB**
   **vs.**
4
   **DATA AXLE, INC., et al.,**
5                        *Defendants.*
   ―――――――――――――――――――
6
   **ATLAS DATA PRIVACY CORPORATION,**          **CIVIL ACTION NUMBER:**
7  **et al.,**
                         *Plaintiffs,*          **1:24-cv-04182-HB**
8  **vs.**

9  **REMINE INC., et al.,**
                         *Defendants.*
10 ―――――――――――――――――――

11 **ATLAS DATA PRIVACY CORPORATION,**          **CIVIL ACTION NUMBER:**
   **et al.,**
12                       *Plaintiffs,*          **1:24-cv-04184-HB**
   **vs.**
13
   **LUSHA SYSTEMS, INC., et al.,**
14                       *Defendants.*

15 ―――――――――――――――――――

16 **ATLAS DATA PRIVACY CORPORATION,**          **CIVIL ACTION NUMBER:**
   **et al.,**
17                       *Plaintiffs,*          **1:24-cv-04217-HB**
   **vs.**
18
   **TELTECH SYSTEMS, INC., et al.,**
19                       *Defendants.*
   ―――――――――――――――――――
20 **ATLAS DATA PRIVACY CORPORATION,**          **CIVIL ACTION NUMBER:**
   **et al.,**
21                       *Plaintiffs,*          **1:24-cv-04227-HB**
   **vs.**
22
   **PEOPLECONNECT, INC., et al.,**
23                       *Defendants.*
   ―――――――――――――――――――
24

25               (CAPTION CONTINUED ONTO NEXT PAGES)

1 ─────────────────────────────

2 **ATLAS DATA PRIVACY CORPORATION,**          **CIVIL ACTION NUMBER:**
  **et al.,**

3               *Plaintiffs,*                 **1:24-cv-04230-HB**

  **vs.**

4

  **CORELOGIC, INC., et al.,**

5               *Defendants.*

6 ─────────────────────────────

  **ATLAS DATA PRIVACY CORPORATION,**          **CIVIL ACTION NUMBER:**

7 **et al.,**

               *Plaintiffs,*                 **1:24-cv-04233-HB**

8 **vs.**

9 **BLACK KNIGHT TECHNOLOGIES, LLC,**
  **et al.,**

10              *Defendants.*

11 ─────────────────────────────

   **ATLAS DATA PRIVACY CORPORATION,**         **CIVIL ACTION NUMBER:**

12 **et al.,**

               *Plaintiffs,*                 **1:24-cv-04256-HB**

13 **vs.**

14 **ZILLOW, INC., et al.,**

               *Defendants.*

15 ─────────────────────────────

16 **ATLAS DATA PRIVACY CORPORATION,**         **CIVIL ACTION NUMBER:**
   **et al.,**

17              *Plaintiffs,*                **1:24-cv-04261-HB**

   **vs.**

18

   **EQUIMINE, INC., et al.,**

19              *Defendants.*

20 ─────────────────────────────

   **ATLAS DATA PRIVACY CORPORATION,**         **CIVIL ACTION NUMBER:**

21 **et al.,**

               *Plaintiffs,*                **1:24-cv-04269-HB**

22 **vs.**

23 **THOMSON REUTERS CORPORATION, et al.,**

               *Defendants.*

24 ─────────────────────────────

25               (CAPTION CONTINUED ONTO NEXT PAGES)

1  ───────────────────────────

2  ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
3                    *Plaintiffs*,          1:24-cv-04271-HB
   vs.
4
   CHOREOGRAPH LLC, et al.,
5                    *Defendants*.
   ───────────────────────────
6
7  ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
                    *Plaintiffs*,          1:24-cv-04288-HB
8  vs.

9  TRANSUNION, LLC, et al.,
                    *Defendants*.
10 ───────────────────────────

11 ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
12                   *Plaintiffs*,          1:24-cv-04292-HB
   vs.
13
   MELISSA DATA CORP., et al.,
14                   *Defendants*.

15 ───────────────────────────

16 ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
                    *Plaintiffs*,          1:24-cv-04298-HB
17 vs.

18 EQUIFAX INC., et al.,
                    *Defendants*.
19 ───────────────────────────

20 ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
   et al.,
21                   *Plaintiffs*,          1:24-cv-04299-HB
   vs.
22
   SPOKEO, INC., et al.,
23                   *Defendants*.
   ───────────────────────────
24

25                  (CAPTION CONTINUED ONTO NEXT PAGES)

```
 1  _____

 2  ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
 3               Plaintiffs,               1:24-cv-04324-HB
    vs.
 4
    RESTORATION OF AMERICA, et al.,
 5               Defendants.
    _____
 6
    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
 7  et al.,
                 Plaintiffs,               1:24-cv-04345-HB
 8  vs.

 9  i360, LLC, et al.,
                 Defendants.
10  _____

11  ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
12               Plaintiffs,               1:24-cv-04354-HB
    vs.
13
    TELNYX LLC, et al.,
14               Defendants.
    _____
15
    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
16  et al.,
                 Plaintiffs,               1:24-cv-04380-HB
17  vs.

18  GOHUNT, LLC, et al.,
                 Defendants.
19  _____

20  ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
21               Plaintiffs,               1:24-cv-04383-HB
    vs.
22
    ACCUZIP, INC., et al.,
23               Defendants.
    _____
24

25              (CAPTION CONTINUED ONTO NEXT PAGES)
```

```
  1   ————————————————————————

  2   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
      et al.,
  3                    Plaintiffs,           1:24-cv-04385-HB
      vs.
  4
      SYNAPTIX TECHNOLOGY, LLC, et al.,
  5                    Defendants.
      ————————————————————————
  6
      ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
  7   et al.,
                       Plaintiffs,           1:24-cv-04389-HB
  8   vs.

  9   JOY ROCKWELL ENTERPRISES, INC.,
      et al.,
 10                    Defendants.
      ————————————————————————
 11
      ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
 12   et al.,
                       Plaintiffs,           1:24-cv-04390-HB
 13   vs.

 14   FORTNOFF FINANCIAL, LLC, et al.,
                       Defendants.
 15   ————————————————————————

 16   ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
      et al.,
 17                    Plaintiffs,           1:24-cv-04392-HB
      vs.
 18
      MYHERITAGE, LTD., et al.,
 19                    Defendants.
      ————————————————————————
 20
      ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
 21   et al.,
                       Plaintiffs,           1:24-cv-04434-HB
 22   vs.

 23   E-MERGES.COM, INC.,
                       Defendants.
 24   ————————————————————————

 25                  (CAPTION CONTINUED ONTO NEXT PAGES)
```

```
1    _____

2    ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
     et al.,
3                      Plaintiffs,            1:24-cv-04442-HB
     vs.
4
     WILAND, INC., et al.,
5                      Defendants.
     _____
6
     ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
7    et al.,
                       Plaintiffs,            1:24-cv-04447-HB
8    vs.

9    ATDATA, LLC, et al.,
                       Defendants.
10   _____

11   ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
     et al.,
12                     Plaintiffs,            1:24-cv-04566-HB
     vs.
13
     LEXISNEXIS RISK DATA MANAGEMENT,
14   LLC, et al.,
                       Defendants.
15   _____

16   ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
     et al.,
17                     Plaintiffs,            1:24-cv-04571-HB
     vs.
18
     PRECISELY HOLDINGS, LLC, et al.,
19                     Defendants.
     _____
20
     ATLAS DATA PRIVACY CORPORATION,          CIVIL ACTION NUMBER:
21   et al.,
                       Plaintiffs,            1:24-cv-04609-HB
22   vs.

23   NUWBER, INC., et al.,
                       Defendants.
24   _____

25                    (CAPTION CONTINUED ONTO NEXT PAGES)
```

---

ATLAS DATA PRIVACY CORPORATION,    CIVIL ACTION NUMBER:
et al.,
                *Plaintiffs*,    1:24-cv-04664-HB
vs.

ROCKETREACH LLC, et al.,
                *Defendants.*

---

ATLAS DATA PRIVACY CORPORATION,    CIVIL ACTION NUMBER:
et al.,
                *Plaintiffs*,    1:24-cv-04696-HB
vs.

OUTSIDE INTERACTIVE, INC.,
                *Defendants.*

---

ATLAS DATA PRIVACY CORPORATION,    CIVIL ACTION NUMBER:
et al.,
                *Plaintiffs*,    1:24-cv-04770-HB
vs.

VALASSIS DIGITAL CORP., et al.,
                *Defendants.*

---

ATLAS DATA PRIVACY CORPORATION,    CIVIL ACTION NUMBER:
et al.,
                *Plaintiffs*,    1:24-cv-04850-HB
vs.

THE LIFETIME VALUE CO. LLC, et al.,
                *Defendants.*

---

ATLAS DATA PRIVACY CORPORATION,    CIVIL ACTION NUMBER:
et al.,
                *Plaintiffs*,    1:24-cv-04949-HB
vs.

BELLES CAMP COMMUNICATIONS, INC., et al.,
                *Defendants.*

---

(CAPTION CONTINUED ONTO NEXT PAGES)

```
 1  _____

 2  ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
 3                     Plaintiffs,          1:24-cv-05334-HB
    vs.
 4
    FIRST AMERICAN FINANCIAL
 5  CORPORATION, et al.,
                       Defendants.
 6  _____

 7  ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
 8                     Plaintiffs,          1:24-cv-05600-HB
    vs.
 9
    PROPERTYRADAR, INC., et al.,
10                     Defendants.
    _____
11
    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
12  et al.,
                       Plaintiffs,          1:24-cv-05656-HB
13  vs.

14  THE ALESCO GROUP, L.L.C.,
                       Defendants.
15  _____

16  ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
    et al.,
17                     Plaintiffs,          1:24-cv-05658-HB
    vs.
18
    SEARCHBUG, INC.,
19                     Defendants.
20  _____

    ATLAS DATA PRIVACY CORPORATION,        CIVIL ACTION NUMBER:
21  et al.,
                       Plaintiffs,          1:24-cv-05775-HB
22  vs.

23  AMERILIST, INC., et al.,
                       Defendants.
24  _____

25
```

| | |
|---|---|
| **ATLAS DATA PRIVACY CORPORATION, et al.,** | **CIVIL ACTION NUMBER:** |
| *Plaintiffs,* | **1:24‑cv‑06160‑HB** |
| **vs.** | |
| **LEXISNEXIS RISK DATA MANAGEMENT, LLC, et al.,** | |
| *Defendants.* | |

| | |
|---|---|
| **ATLAS DATA PRIVACY CORPORATION, et al.,** | **CIVIL ACTION NUMBER:** |
| *Plaintiffs,* | **1:24‑cv‑07324‑HB** |
| **vs.** | |
| **US DATA CORPORATION,** | |
| *Defendants.* | |

| | |
|---|---|
| **ATLAS DATA PRIVACY CORPORATION, et al.,** | **CIVIL ACTION NUMBER:** |
| *Plaintiffs,* | **1:24‑cv‑08075‑HB** |
| **vs.** | |
| **SMARTY, LLC, et al.,** | |
| *Defendants.* | |

1    **A P P E A R A N C E S:**

2          BOIES SCHILLER FLEXNER LLP
          BY: ADAM R. SHAW, ESQUIRE
3          30 South Pearl Street, 12th Floor
          Albany, New York 12207
4          For the Plaintiffs

5          BOIES SCHILLER FLEXNER LLP
          BY:  HSIAO (MARK) C. MAO, ESQUIRE
6          44 Montgomery Street, 41st Floor
          San Francisco, California 94104
7          For the Plaintiffs

8          BOIES SCHILLER FLEXNER LLP
          BY:  ERIC M. PALMER, ESQUIRE
9          401 East Las Olas Blvd., Suite 1200
          Fort Lauderdale, Florida 33301
10         For the Plaintiffs

11         MORGAN & MORGAN
          BY:  RYAN JOSEPH McGEE, ESQUIRE
12         201 N. Franklin Street, 7th Floor
          Tampa, Florida 33602
13         For the Plaintiffs

14         PEM LAW LLP
          BY:  RAJIV D. PARIKH, ESQUIRE
15              JOHN J. BOULTON, ESQUIRE
               JESSICA A. MEREJO, ESQUIRE
16         1 Boland Drive, Suite 101
          West Orange, New Jersey 07052
17         For the Plaintiffs

18         TROUTMAN PEPPER HAMILTON SANDERS LLP
          BY:  ANGELO A. STIO III, ESQUIRE
19              MICHAEL SCHWARTZ, ESQUIRE
          301 Carnegie Center, Suite 400
20         Princeton, New Jersey 08543
          For the Defendants CARCO Group Inc.; Acxiom, LLC;
21         AtData, LLC; Deluxe Corporation; DM Group, Inc.;
          Enformion, LLC; Red Violet, Inc.; Remine Inc.;
22         RocketReach LLC; CoreLogic, Inc.

23         VEDDER PRICE, P.C.
          BY:  BLAINE C. KIMREY, ESQUIRE
24              BRYAN K. CLARK, ESQUIRE
          222 North LaSalle Street
25         Chicago, Illinois 60601
          For the Defendants Whitepages, Inc., and Hiya, Inc.

1    **A P P E A R A N C E S:** (Continued)

2        SEYFARTH SHAW LLP
         By:  ROBERT T. SZYBA, Esquire
3        620 Eighth Avenue, 32nd Floor
         New York, New York 10018
4        For the Defendants Infomatics, LLC; The People
         Searchers, LLC; and We Inform, LLC, et al.
5
         McCARTER & ENGLISH, LLP
6        BY:  SCOTT S. CHRISTIE, ESQUIRE
         Four Gateway Center
7        100 Mulberry Street
         Newark, New Jersey 07102
8        For the Defendants Black Knight Technologies, LLC and
         Black Knight, Inc.
9
         HOGAN LOVELLS US LLP
10       BY:  DAVID M. CHEIFETZ, ESQUIRE
         390 Madison Avenue
11       New York, New York 10017
         For the Defendant The Lifetime Value Co.
12
         LATHAM & WATKINS, LLP
13       BY:  ROBERT C. COLLINS, III, ESQUIRE
         330 North Wabash Avenue, Suite 2800
14       Chicago, Illinois 60611
         For the Defendants CoStar Group, Inc.; CoStar Realty
15       Information, Inc.; Lightbox Parent, L.P.; Lightbox
         Holdings, L.P.; Oracle International Corporation; Oracle
16       America, Inc.; Oracle Corp.; PeopleConnect Holdings,
         Inc.; Intelius, LLC; and PeopleConnect Intermediate, LLC
17
         LATHAM & WATKINS, LLP
18       BY:  SAMIR DEGER-SEN, ESQUIRE
         1271 Avenue of the Americas
19       New York, New York 10020
         For the Defendants CoStar Group, Inc.; CoStar Realty
20       Information, Inc.; Lightbox Parent, L.P.; Lightbox
         Holdings, L.P.; Oracle International Corporation; Oracle
21       America, Inc.; Oracle Corp.; PeopleConnect Holdings,
         Inc.; Intelius, LLC; and PeopleConnect Intermediate, LLC
22

23
                (Appearances continued onto next page.)
24

25

*19*

```
 1   A P P E A R A N C E S:  (Continued)

 2         LATHAM & WATKINS, LLP
           BY:  RUTH HIRSCH, ESQUIRE
 3         555 Eleventh Street, NW, Suite 1000
           Washington, D.C., 20004
 4         For the Defendants CoStar Group, Inc.; CoStar Realty
           Information, Inc.; Lightbox Parent, L.P.; Lightbox
 5         Holdings, L.P.; Oracle International Corporation; Oracle
           America, Inc.; Oracle Corp.; PeopleConnect Holdings,
 6         Inc.; Intelius, LLC; and PeopleConnect Intermediate, LLC

 7         SAUL EWING LLP
           BY:  WILLIAM C. BATON, ESQUIRE
 8         1 Riverfront Plaza, 1037 Raymond Boulevard
           Apartment 1520
 9         Newark, New Jersey 07102
           For the Defendants Precisely and Valassis
10
           PARKER POE ADAMS & BERNSTEIN, LLP
11         BY:  SARAH FULTON HUTCHINS, ESQUIRE
           620 South Tryon Street, Suite 800
12         Charlotte, North Carolina 28202
           For the Defendant BlackBaud, Inc.
13
           GREENSPOON MARDER
14         BY:  KELLY MAGNUS PURCARO, ESQUIRE
           1037 Raymond Blvd., Suite 900
15         Newark, New Jersey 07102
           For the Defendant The Alesco Group
16
           LOWENSTEIN SANDLER LLP
17         BY:  A. MATTHEW BOXER, ESQUIRE
           65 Livingston Avenue
18         Roseland, New Jersey 07068
           For the Defendant Lexisnexis
19
           CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
20         BY:  DAVID A. YUDELSON, ESQUIRE
                JOHN MACDONALD, ESQUIRE
21         2029 Century Park East, Suite 1100
           Los Angeles, California 90067
22         For the Defendants Restoration of America and Access

23         HARRISON LAW LLC
           BY:  KATHERINE A.G. SOBIECH, ESQUIRE (*pro hac vice*)
24         141 West Jackson Blvd., Suite 2055
           Chicago, Illinois 60604
25         For the Defendants Epsilon Data, Conversant, Citrus Ad
```

1 | **A P P E A R A N C E S:**  (Continued)

2 | MANATT, PHELPS & PHILLIPS, LLP
BY:  KAYLA LAROSA, ESQUIRE (*pro hac vice*)
3 | 7 Times Square
New York, New York 10036
4 | For the Defendant Smarty, LLC

5 | SIDLEY AUSTIN LLP
BY:  TYLER J. DOMINO, ESQUIRE (*pro hac vice*)
6 | 787 Seventh Avenue
New York, New York 10019
7 | For the Defendant MyHeritage

8 | **Also Present:**

9 | David Bruey, The Courtroom Deputy

10 | Ryan Rose, Judicial Law Clerk

11 | Michael Zuckerman, Deputy Solicitor General
New Jersey Office of Attorney General
12 | For the Intervenor

13 | Jeremy Feigenbaum, Solicitor General
New Jersey Office of Attorney General
14 | For the Intervenor

15 | Ryan Cooper, Esquire, Labels & Lists, Inc.

16 | Krista Rose, Esquire, Transunion

17 |

18 | (Further appearances of counsel are listed on sign-in sheet,
Attachment 1, to the docket minute entry.)
19 |

20 |

21 |

22 |

23 |

24 |

25 |

*United States District Court*
*District of New Jersey*

1                          **INDEX**

2                        **ARGUMENT**

3    **ATTORNEYS:**                                    **PAGE**

4    By Mr. Deger-Sen                                   22

5    By Mr. Kimrey                                      55

6    By Mr. Palmer                                      70

7    By Mr. Parikh                                      86

8    By Mr. Zuckerman                                   91

9    By Mr. Deger-Sen                                  110

10   By Mr. Palmer                                     123

11   By Mr. Parikh                                     130

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (PROCEEDINGS held in open court before The Honorable

2     Harvey Bartle, III, United States District Judge, at

3     1:28 p.m. as follows:)

4          THE COURTROOM DEPUTY:  All rise.

5          THE COURT:  Good afternoon.  You may be seated.

6          The Court is holding oral argument this afternoon on

7     the various Daniel's Law cases, specifically the motion to

8     dismiss the law case on the ground that the law is

9     unconstitutional on its face.

10          Mr. Stio, are you going to argue for the defendants,

11     at least initially?

12          MR. STIO:  Good afternoon, Your Honor.

13          THE COURT:  Good afternoon.

14          MR. STIO:  The consolidated motion to dismiss, we are

15     going to have Mr. Samir Deger-Sen from Latham be the primary

16     arguer.

17          THE COURT:  Very good.

18          MR. STIO:  And there may or may not be additional

19     argument on a supplemental brief by Mr. Kimrey.

20          THE COURT:  Very good.

21          MR. STIO:  But Mr. Deger-Sen will take the lead.

22          THE COURT:  Very good.

23          Afternoon.

24          MR. DEGER-SEN:  Thank you, Your Honor.

25                         ARGUMENT

1          May it please the Court, Samir Deger-Sen from Latham

2     & Watkins.

3          When the State regulates in a content-based way by

4     deeming certain categories of speech to be too dangerous to be

5     in the hands of the public, it's under a special obligation to

6     ensure that the amount of speech it curtails is no more than is

7     absolutely necessary.  But that's the opposite of what happened

8     here.

9          Under intense lobbying pressure, New Jersey enacted a

10    sweeping ban that contains virtually no limitations.  It's a

11    speech prohibition that's extraordinary in its scope and

12    breadth, and it's far broader than any other state has enacted

13    in this area.

14         Neither plaintiffs nor the AG come close to showing

15    that it's the least restrictive means to further the

16    government's asserted interest in safety.

17         To take one straightforward example, the statute

18    contains no exception for material that is already in the

19    public domain and thus where the speech restriction can't

20    possibly serve any government interest.  There's also, I think,

21    a particular easy case to see there are less restrictive

22    alternatives because --

23         THE COURT:  Isn't that statement a little broad?

24    Because information can certainly be in the public domain if

25    it's scattered about.

1          Here, the information is compiled or summarized.  So

2   doesn't the Supreme Court make a distinction with respect to

3   that type of situation?

4          MR. DEGER-SEN:  I don't think so, Your Honor.

5          I mean, that's the sort of distinction I think that

6   the Supreme Court talked about in *Florida Star*, where it said,

7   was -- you know, the fact that you're just -- that a media

8   organization was just amplifying the speech, aggregating the

9   speech doesn't make a difference necessarily.  That's not a

10  government interest, you know.  If it wants to restrict speech,

11  it has to do so in an evenhanded way.

12         And I think the evenhandedness thing here is very

13  significant, because the government itself here does the exact

14  kind of speech that it is prescribing private entities, but

15  it's written for itself a very different statute, one with a

16  significant number of exceptions.  It doesn't have to

17  disclose -- or there's no restrictions on its disclosure of

18  phone numbers.  It allowed itself 30 rather than ten days for

19  compliance.  A takedown request must be verified by a

20  government agency.  The government is allowed to disclose

21  information to other government entities and even private

22  vendors and contractors that if a private company did, that

23  would be prohibited.

24         So all these areas the government just says, you

25  know, well, we do the same kind of speech, but, you know, for

1  our own administrative convenience we need these exceptions.

2  But that -- you know, as the Supreme Court said in *Florida*

3  *Star*, when the State attempts the extraordinary measure of

4  punishing truthful publication, it must demonstrate a

5  commitment to advancing this interest by applying the

6  prohibition evenhandedly.

7         And this, you know, it clearly does not do that in

8  this instance.  So that, I think, alone shows that this is not

9  the least restrictive means the government can use.  And I

10 don't think that actually the other side really meaningfully

11 disputes that this is not the least restrictive means.  I think

12 what they try to do is throw out a series of threshold

13 arguments, and I think what I will try and do today is walk

14 through those threshold arguments and try to explain why none

15 of them have applied here.

16         THE COURT:  What would be a proper restriction?

17         MR. DEGER-SEN:  Sorry, Your Honor?

18         THE COURT:  What would be a proper restriction?

19         MR. DEGER-SEN:  What would be a proper restriction?

20         THE COURT:  Yes.

21         MR. DEGER-SEN:  I mean, it's not -- it's not our role

22 to suggest what a proper restriction is and nor this Court's

23 role to suggest what a proper restriction is.  The Court has to

24 assess the statute as written.  If it fails constitutional

25 scrutiny, it's not up to the Court to sort of rewrite the

1   statute and do judicial surgery on it.  It's up to the

2   Legislature to come up with a properly-tailored statute.

3                THE COURT:  Well, what is the standard I'm supposed

4   to apply in determining the constitutionality of it?

5                MR. DEGER-SEN:  I think it's strict scrutiny, Your

6   Honor, and that's because --

7                THE COURT:  It's interesting, though, that the cases

8   which deal with privacy statutes I don't think ever used the

9   term "strict scrutiny."

10               MR. DEGER-SEN:  I mean, you know, *Sorrell* is sort of

11  a private statute.  But I think a lot of the privacy statutes

12  come from the *Florida Star* line of cases.

13               THE COURT:  No, no.  I'm talking about the standard I

14  have to apply to determine whether it's constitutional on its

15  face.

16               And the Supreme Court uses the strict scrutiny

17  standards with respect to a lot of cases dealing with the First

18  Amendment.  But if you look at the *Florida Star* case and the

19  *Oklahoma* case, they never use the term "strict scrutiny."

20               MR. DEGER-SEN:  It --

21               THE COURT:  Am I wrong about that?

22               MR. DEGER-SEN:  No, that's correct, Your Honor.  I

23  think it's because it doesn't have to get -- so those

24  restrictions --

25               THE COURT:  So what's the standard I apply?  If I

1    don't have to apply -- the Supreme Court didn't use the term

2    "strict scrutiny."  So what standard do I apply?

3             MR. DEGER-SEN:  So I think the reason the Court

4    didn't use strict scrutiny is -- there's two lines of doctrine,

5    and I think the *Schrader* case from the Third Circuit is a good

6    case to map out --

7             THE COURT:  I want to talk about the Supreme Court

8    decisions.

9             MR. DEGER-SEN:  Absolutely.  And so the Supreme Court

10   decisions in this area a lot of the time don't involve

11   necessarily content-based distinctions, but what they involve

12   are matters of public concern.  And so the standard from the

13   *Florida Star* line of cases is if it's an issue of public

14   concern, then the statute has to be narrowly tailored to a

15   government interest at the highest order.

16            THE COURT:  It seems to me that the standard is there

17   are three prongs to it.  First is the restricted speech of

18   public significance.  That's number one.

19            And number two, the state interest is of the highest

20   order.

21            And three, whether it's underinclusive.  Seems to me

22   that's the standard we apply here.  So let's take those three

23   factors.

24            Now, is it a matter of public significance the home

25   addresses and unlisted phone numbers of judges, prosecutors,

```
 1    police officers?
 2              MR. DEGER-SEN:  I think it is, Your Honor.  I do just
 3    want to say one thing, which is that's the standard that one
 4    applies when you don't have a content-based restriction.  So I
 5    don't think we need to necessarily go down that road of
 6    doctrine.  I think we win under both of these.  But there are
 7    two sort of alternative ways of thinking about this.
 8              One is, if it's a content-based law, you apply the
 9    sort of strict scrutiny analysis --
10              THE COURT:  That's not what --
11              MR. DEGER-SEN:  -- and its restrictive means.
12              THE COURT:  That's not what the Supreme Court says
13    when you have a privacy statute.
14              If you look at the Florida Star case, they have these
15    three factors.  Now let's go through the three factors.  Are
16    the addresses and phone numbers of public significance?
17              MR. DEGER-SEN:  I think they absolutely are, Your
18    Honor.
19              THE COURT:  Why?
20              MR. DEGER-SEN:  Because they -- the public often has
21    a compelling interest and understanding where public servants
22    might live, and so --
23              THE COURT:  It really has a public interest in where
24    somebody lives and his phone number?
25              MR. DEGER-SEN:  It can, Your Honor.  I mean, it --
```

```
 1    for example, there's the situation where you might have a
 2    public servant who, you know, is not living within the state,
 3    even though there's a residency requirement for an elected
 4    official.  Sometimes that's something that someone could be
 5    very interested in.  And I think the important thing is to
 6    understand the level of generality that the Florida Star cases
 7    look in that issue.
 8              So in Florida Star, obviously, you know, there's not
 9    necessarily a public interest in knowing the exact name of this
10    particular rape victim, but there is a public interest in the
11    general topic.
12              THE COURT:  But the Florida Star case involving
13    information about crime and about the prosecution of crime, and
14    that is certainly a matter of vital interest to the public.
15    Can we all agree?
16              MR. DEGER-SEN:  Absolutely, Your Honor.
17              THE COURT:  Courtrooms are open to the public in
18    America, correct?
19              MR. DEGER-SEN:  Yes.
20              THE COURT:  They have a right to know that.  But
21    isn't that different than the home address and the phone number
22    of a police officer?
23              MR. DEGER-SEN:  I -- I think when you have
24    truthful -- you know, the crux of those cases is what's being
25    published is truthful information that's been obtained
```

1      lawfully.  And the public generally has an interest in having

2      as much -- this is about a critical First Amendment value

3      that's reflected in these cases is the public has an interest

4      in having truthful information.  The dissemination of

5      information is ultimately important for debate.  You know, the

6      public can then use that information in different ways.  One

7      might be to scrutinize its public officials.  One might be to

8      determine --

9              THE COURT:  So you're saying that the phone numbers

10     and home addresses of police officers are of significant public

11     interest?  You --

12             MR. DEGER-SEN:  I -- I mean, our primary argument, as

13     we put forth in the briefs, is we go through this other line of

14     doctrine that addresses content-based laws.

15             THE COURT:  Let's stick --

16             MR. DEGER-SEN:  If we're taking that off the table,

17     then, yes.  I'm happy to --

18             THE COURT:  Let's stick with the factors in the

19     *Florida Star* case.

20             MR. DEGER-SEN:  Absolutely.

21             THE COURT:  Okay.  That's one.  It's of significant

22     public interest.

23             And your position is, it is.

24             MR. DEGER-SEN:  Yes, Your Honor, at the level of

25     generality that *Florida Star* looks at it, which is you don't

```
 1    have to say is this specific address in the public interest.
 2    It's the general topic.  And I think Your Honor's question was
 3    exactly right, you know, it's not about what is the specific
 4    name of this rape victim, but it's about, you know, the open
 5    courts, the procedure, criminality, violence in the community,
 6    and that level of generality I think addresses can be of public
 7    interest.  It's truthful information that individuals can use
 8    in order to form their opinions about public servants.  So I
 9    think that can be of public interest in the same way that the
10    information in Florida Star was of public interest.
11              THE COURT:  Now, how about the compelling interest of
12    the state in restricting the information, is there a compelling
13    state interest or not?
14              MR. DEGER-SEN:  I think there is a compelling state
15    interest.  And of course, in virtually every First Amendment
16    case the government ultimately is able to identify some
17    compelling interest.  And so what it comes down to is, is the
18    statute properly tailored to fulfill that compelling interest?
19    And then I think that sort of goes to your third prong which
20    you described as underinclusiveness.
21              THE COURT:  Right.
22              MR. DEGER-SEN:  I think that that's correct.
23              I think here when you have a statute that sweeps in
24    extraordinary amounts of speech and it does so in a way that
25    it's very hard to see the relationship between some of the
```

1    speech that's being restricted here and fulfillment of the

2    asserted interest in safety, you know, do you need -- this is

3    sort of the third iteration of Daniel's Law that has got more

4    and more aggressive with each iteration.

5         We know that there are lots of statutes across the

6    country that have provisions such as requiring a specific, you

7    know, threat or at least a basis to believe that someone has a

8    threat, that have mens rea requirements, the culpability

9    requirements.  This is a negligence per se statute, just like

10   the Supreme Court described in *Florida Star* where the

11   concerning things about that statute was that it was --

12        THE COURT:  Well, wait a minute.  This statute

13   doesn't use the term "negligence per se."  In *Florida Star*,

14   that's true.  But we'll get to that in a minute what the

15   standard is.

16        But you're arguing -- are you arguing it's

17   underinclusive?  You are, aren't you?

18        MR. DEGER-SEN:  It is.  It's poorly tailored.

19        THE COURT:  All right.  But how does that differ --

20        MR. DEGER-SEN:  It's over and underinclusive.

21        THE COURT:  How does that differ from the

22   *Williams-Yulee* case in the Supreme Court?  There, didn't the

23   Supreme Court say you don't have to solve the entire problem?

24        MR. DEGER-SEN:  That's correct, Your Honor.

25        THE COURT:  It's a pretty -- this is a problem that's

1    very difficult to solve in totality.  So this is an effort of

2    the New Jersey's Legislature after the murder of Judge Salas'

3    son, and they had a concrete set of facts.  The assailant had

4    obtained the address of Judge Salas from the Internet.  So the

5    Legislature was dealing with a very specific set of facts, and

6    they were focusing on obtaining information from the Internet,

7    which isn't unreasonable because this has happened in other

8    cases.

9            Correct?

10            MR. DEGER-SEN:  I think that's correct, Your Honor.

11    But it still has to be narrowly tailored.  I mean, in any First

12    Amendment case, the government can stand up and say, well, you

13    know, it obviously has a nexus to our interest, all these

14    provisions further it to some degree, and we don't have to

15    solve the whole problem so we don't really have to show that

16    we're doing a perfect job.  But if that were the case, then I

17    think tailoring analysis would always come out in favor of the

18    government.  But that's not how the cases --

19            THE COURT:  The cases involving the privacy laws, do

20    they ever use the word "narrowly" tailored?  They use --

21            MR. DEGER-SEN:  They do.  I mean --

22            THE COURT:  You're talking about -- I understand

23    strict scrutiny when you're talking about abridgment of the

24    First Amendment right.  But they don't seem to use that term

25    when the privacy statute was involved.  All First Amendment

```
 1   cases don't involve privacy statutes; wouldn't you agree?
 2             MR. DEGER-SEN:  I think that's true.  I don't think
 3   the privacy interest is a different line of doctrine, Your
 4   Honor.  I mean, I think the *Sorrell* case, for example, could be
 5   justified by a privacy interest.  And I don't think that
 6   because there's asserted an issue of privacy you are suddenly
 7   out of the traditional doctrine and you're allowed to do
 8   content-based restrictions.  So I do disagree with that
 9   premise.
10             THE COURT:  Well, the laws traditionally recognize
11   the right of privacy.  It's been a common law tort for a long
12   time.  There are various -- some people say there are four
13   different torts.  So the Supreme Court is trying to resolve the
14   tension between a privacy law and the right to free speech.
15             And doesn't the Supreme Court say in case after case
16   that each case has to be decided on its own set of facts?
17             Now, I agree with you that the cases that I've seen,
18   the Supreme Court has come down in favor of the First
19   Amendment, right.  That they never say that there's a blanket
20   rule, correct?
21             MR. DEGER-SEN:  I think that that -- well, in privacy
22   cases overall, I mean --
23             THE COURT:  Yeah.  When you're talking about
24   First Amendment cases involving the right of privacy.
25             MR. DEGER-SEN:  They never --
```

1    THE COURT:  They always say we're deciding the case

2    on this particular set of facts.  Correct?

3    MR. DEGER-SEN:  That's true, Your Honor.  I --

4    THE COURT:  And -- go ahead.

5    MR. DEGER-SEN:  Well, I was going to say, I mean, the

6    other thing I think that's important, though, is they assert

7    that this is a privacy-based statute, but, you know, the

8    legislative finding, you know, that has never been the

9    justification of the statute.  The justification of the statute

10   has always been safety.  There isn't -- you know, all the

11   legislative findings and the statute itself says the goal here

12   is to enhance the safety and security of certain public

13   officials in the justice system.  And I think --

14   THE COURT:  And also to foster their ability to do

15   their job because of fear of reprisal.  So there's two aspects

16   to it.

17   MR. DEGER-SEN:  I -- okay.

18   THE COURT:  And how does the Legislature decide to

19   obtain that goal?  They do it through a privacy provision.

20   In other words, I guess the Legislature could say

21   we're going to hire a security detail for every prosecutor and

22   every police officer in the state, but that's obviously not

23   practical.  That's one way of trying to deal with the problem,

24   correct?

25   If you want to protect the judges and so forth, you

```
1    give them a security detail.  Yeah, that's not a practical
2    solution.
3              So the Legislature has decided to take a different
4    tact, to protect the privacy, that is, insofar as a home
5    address and a phone number is concerned.  Isn't that what it
6    is?
7              MR. DEGER-SEN:  I guess I don't think what they're
8    doing is protecting privacy in that situation.  I mean, you
9    have a lot of statutes, you know, Daniel's Law statutes that
10   protect other -- you know, this statute does not protect, you
11   know, all kinds of more intimate details like your Social
12   Security information or, you know, other details, your email
13   address.  This only is -- this is addresses and phone numbers.
14   And what the legislators said is addresses and phone numbers
15   are important because they go to the safety benefit, not to
16   privacy.
17             THE COURT:  Yeah, right.  But I don't know of any
18   case where an assailant has obtained a Social Security number
19   of a prosecutor and through that threatened the life of a
20   prosecutor.
21             MR. DEGER-SEN:  Exactly.  But --
22             THE COURT:  But they do do it through obtaining home
23   addresses and phone numbers.
24             MR. DEGER-SEN:  I 100 percent agree.
25             THE COURT:  So I can understand why the Legislature
```

```
 1    didn't make a big deal about Social Security numbers.
 2             MR. DEGER-SEN:  Exactly, Your Honor.  But I think
 3    that shows that this is not a statute that's grounded in the
 4    interest in privacy.  It's a statute that's grounded in the
 5    interest in safety.
 6             And I would say I think that's for the obvious reason
 7    if they had tried to justify the statute based on privacy, then
 8    there wouldn't be a government interest of the highest order.
 9    Because an individual's right to not, you know, to keep private
10    their address or their home phone number has no historical
11    tradition whatsoever.  I mean, phone numbers have been in
12    telephone books and telephone directories for decades.
13             THE COURT:  We don't have telephone books anymore.
14    There used to be these thick telephone books.  I haven't seen
15    one in years.
16             (Laughter.)
17             MR. DEGER-SEN:  Absolutely.  These are the modern
18    telephone books.  And of course when you had much smaller local
19    communities, people knew where everyone's address was and all
20    the time we give out our address.  And none of these common law
21    torts that they point to have ever found -- there's just no
22    case they can identify ever in the common law that have found
23    that someone has engaged in a tort or engaged in misconduct
24    simply by disclosing an address or a phone number.
25             And, you know, one treatise describes it this way.
```

1    Under the Restatement, the mere publication of a person's

2    address, no matter what the circumstances, could not constitute

3    an invasion of privacy under any of the standard privacy torts.

4            THE COURT:  Yeah, that may be true of common law

5    tort.  But here's the Legislature passing a statute, and they

6    certainly have a right to change the rules with respect to

7    privacy.

8            MR. DEGER-SEN:  Oh, absolutely.  But I think their

9    argument is, well, there's been a historical coexistence

10   between privacy torts and the First Amendment and so we have

11   to -- the First Amendment can give way in the area of privacy.

12   And it seemed like the premise of Your Honor's question was in

13   the privacy realm, the standards are a little bit different.

14   But then I think they've got to establish that this is

15   actually -- the privacy is the goal here and not security,

16   because security shouldn't then go down this route of a

17   completely different type of doctrinal analysis.  The

18   information in *Florida Star* was --

19           THE COURT:  But aren't they attempting to reach the

20   goal of protection through privacy?

21           As I say, another option would be to provide a

22   security detail for everybody, but that's not practical.  So

23   what other way can they do it?  They can do it through privacy

24   not allowing publication of a person's address and unlisted

25   phone number.  Isn't that keeping private what might not

```
 1    otherwise be private?  Isn't that what's happening?  It's a
 2    nondisclosure.
 3              MR. DEGER-SEN:  Right.
 4              THE COURT:  So that means -- nondisclosure means keep
 5    it private.
 6              MR. DEGER-SEN:  But the goal is -- it's not privacy
 7    because it's very important or essential to that person that no
 8    one knows his address and no one knows his phone number.
 9    That's absolutely not true because --
10              THE COURT:  Well, what is the goal of privacy?
11              MR. DEGER-SEN:  The goal of privacy, I think, is to
12    make sure that the really intimate details of your life are
13    not -- you know, things that might be embarrassing or deep
14    within you are revealed to the public.  And so when you have,
15    you know -- and that's why all the torts ultimately need
16    something that's, you know, maybe shameful or embarrassing or
17    something of that nature.
18              But whenever there's something that you openly
19    disclose, that everyone already knows about, you know, no one
20    really thinks that just having my address out there in the
21    world is something that, you know, violates my privacy, that
22    makes me feel like some private person or realm has been
23    violated.  I think what everyone thinks is, well, that's
24    something everyone might know and in some situations it might
25    then lead to safety problems.  But then the goal here, the
```

1    ultimate goal here is not keeping this information private,

2    it's safety.  And we know that because this ultimately only

3    applies to a small subsection of the population.

4         I mean, judges and police officers don't have more of

5    an interest in privacy than anyone else.  The reason why it's

6    important to keep their information private is because it's

7    important, the Legislature tells us, to keep them safe.  So the

8    end goal here is safety, and it needs to be analyzed as a

9    safety statute.  And I think if that's true, then there's no

10   reason to sort of use a different kind of analysis like the one

11   used in *Florida Star*.

12        *Florida Star* involved something which was absolutely

13   an intimate detail of someone's life, you know, the fact that

14   they were a victim of rape and that person, there was evidence

15   in the record that they suffered a lot of trauma; that their

16   mother was being called every day by the potential rapist.  It

17   was sort of the fact that the information was out there was

18   deeply painful to them.  But no one feels that same way about

19   just the fact that your address or your phone number is out

20   there.  So the privacy goal here, the privacy harm is not the

21   same.

22        THE COURT:  Well, under the analysis required by the

23   Supreme Court, the question is whether the information is of

24   public significance, isn't it, under the three-factor test that

25   I was talking about?

```
 1          MR. DEGER-SEN:  If -- if -- well, that's assuming
 2   that it's a privacy statute, which it's not.  I mean --
 3          THE COURT:  But see -- well, you know, the fact that
 4   a phone number is not available or home address is not
 5   available, it doesn't mean that the public can't scrutinize the
 6   performance of prosecutors and judges.  They can still
 7   scrutinize their behavior, what they do, without knowing about
 8   their home address or without knowing their unlisted phone
 9   number.  Do you disagree with that?
10          MR. DEGER-SEN:  No.
11          THE COURT:  I don't think Daniel's Law inhibits
12   public scrutiny of public officials.
13          MR. DEGER-SEN:  And that was the exact argument that
14   was made at Florida Star; that there's no -- the public doesn't
15   need to know the specific name of the rape victim to
16   understand, you know, what's going on with policing the
17   community; that the name doesn't add anything.
18          THE COURT:  I'm talking about wouldn't you agree that
19   Daniel's Law does not really restrict the public from
20   evaluating and criticizing prosecutors, judges, and police
21   officers for their performance or behavior?
22          I mean, you don't need to know the home address or
23   the phone number to be able to properly evaluate performance of
24   public officials.
25          MR. DEGER-SEN:  You might.  It just sort of depends
```

1    how you evaluate them.  If you're evaluating them because they

2    live in a totally different place to where they claim to live,

3    then it does help you.  And that's why the key thing is, is it

4    truthful information?  It's not really up to courts to sort of

5    figure out how people might use information and do they really

6    need this information.

7         When the government steps in and says we are

8    suppressing speech, we're going to prevent you from having

9    information because we think that information in your hands is

10   too dangerous, the burden flips onto the government.  They're

11   then the entity that has to really prove that it's necessary to

12   do that, because for exactly the reason, you know, we generally

13   say the public should have the information and they might do

14   what they do with it.  You know, they might be able to

15   scrutinize public officials or they night not, but we still

16   give them the information.  The default is public having -- the

17   default is speech -- public having information.  And that's the

18   same with *Florida Star*.

19        You know, you could definitely say:  I just don't see

20   why the public needs to know her name.  And I think if that

21   were the analysis, all of the rape cases, all of the juvenile

22   cases like *Daily Mail*, they would have come out in a different

23   direction.

24        THE COURT:  But see, here, if you have the

25   information, then public officials are subject to threats and

1    assassinations, correct?  Which is not generally the case with

2    the rest of the public.

3              We had an assassination here, Judge Salas' son,

4    because of what happened.

5              Now, isn't that a pretty compelling interest to

6    protect?

7              MR. DEGER-SEN:  Absolutely, Your Honor.  It's a

8    compelling interest in safety.  And so because of that, you

9    sort of run through the judicial analysis.  Is this a

10   content-based statute?  If it is, it's subject to strict

11   scrutiny.  Then you look to whether the statute is tailored.

12   We are certainly not saying that a state cannot enact some

13   version of Daniel's Law.  States across the country in the

14   federal government have enacted versions of Daniel's Law, and

15   the New Jersey version is hopelessly ill-tailored.

16             So just positing --

17             THE COURT:  Well, how is that different than some of

18   the other statutes you talked about?

19             In other words, what's so unusual about this

20   statute --

21             MR. DEGER-SEN:  Well --

22             THE COURT:  -- that makes it unconstitutional on its

23   face?

24             MR. DEGER-SEN:  Well, for example, the Colorado and

25   Kansas statutes have a requirement that there has to be a nexus

44

1    to a specific threat.  Most of this, a lot of the statutes have

2    a culpability or mens rea requirement.

3              THE COURT:  Well, let's go back to that issue about a

4    true threat.  It's a little late at that point, isn't it?

5              In other words, if a judge gets word or a prosecutor

6    gets the word that somebody has his phone number or address,

7    it's a little late to do anything about that, isn't it?

8              MR. DEGER-SEN:  It -- that would be true.  But so

9    before that happens someone could, for example, in Colorado,

10   the law says that they have to affirm under penalty of perjury

11   that they have a reason to believe that the information poses a

12   threat.

13             So that could be -- it doesn't mean that someone

14   already has it.  Presumably it is, I have a reason to believe

15   that because of who I'm dealing with right now, that person

16   could hurt me if they knew my address.

17             THE COURT:  But isn't New Jersey's law, Daniel's Law

18   a lot more effective?  In other words, it just seems to me that

19   to wait till the threat occurs, and then what do you do?  You

20   get word that they're being threatened, then what happens?

21             MR. DEGER-SEN:  Well, let me --

22             THE COURT:  Someone has your address.

23             MR. DEGER-SEN:  There are several areas where

24   Daniel's Law sweeps beyond other laws.  So let me try a

25   different option.

1        The federal Daniel's Law, for example, has exceptions

2   for information the individual voluntarily publishes on the

3   internet, after the act has passed, information of public

4   concern, or information received from a federal government

5   source.  Because this is a First Amendment speech case, it's

6   the government's burden to try to explain why you couldn't have

7   an equivalent exception here and that the government's interest

8   couldn't be satisfied with something like that.

9        Now, if the information is already in the public

10  domain, then there's no way in which suppressing speech here

11  advances the government's goals whatsoever.

12        THE COURT:  Well, I think you speak too broadly,

13  because a lot of information may be in the public domain

14  that -- you could never have a law then because virtually every

15  bit of information is out there somewhere.  Correct?

16        MR. DEGER-SEN:  But here there is no exception --

17        THE COURT:  I mean, you could never have one here

18  because the people who own a house, there's a deed somewhere

19  recorded in one of the 21 counties of New Jersey, right?

20        MR. DEGER-SEN:  But --

21        THE COURT:  So are you saying that simply because

22  it's in the public domain that you could never -- you could

23  never take steps to deal with -- to restrict speech?

24        MR. DEGER-SEN:  Well, so two things.  One is the

25  federal exception is for someone who voluntarily publishes.  So

1      they've published on their own LinkedIn profile.

2               THE COURT:  Right.  Well, that's correct.

3               MR. DEGER-SEN:  And so that's an exception that they

4      could have here that they don't have.  Or you could have an

5      exception that says readily available from a public source or

6      something like that.  At least a defense that someone who is

7      basically just publishing information that's already out there

8      or someone who's received the information from a government

9      source, so it's already out there through a government

10     database, actually at least has an exception or has a defense.

11     Nothing like that.  I mean, this sort of shows that this is I

12     think a law that was sweeping in -- in rejecting a lot of these

13     alternatives.

14              THE COURT:  Well, what you're really saying is you

15     could never restrict access to a home address because if

16     somebody owns the property, the deed is recorded, you know, in

17     the county, or if the person is a voter, the voter list exists.

18              So anybody who owns a home or votes in the state of

19     New Jersey could never ask to have the address not disclosed.

20     Is that what you're saying?

21              MR. DEGER-SEN:  No.  I mean, you have these -- I

22     mean, this is an exemption I'm drawing straight from the

23     federal law.  If they voluntarily publish it, which is a

24     different scenario than the one you're describing, then they

25     should -- then that shouldn't trigger liability.  Or as I

1    described something which is, you know, readily available on

2    the Internet, something like that is an exemption.  And states

3    do have these exemptions.  You know, I'm not just sort of

4    thinking of hypotheticals.  Daniel's Law really is a much

5    broader statute than the others, than the federal law and what

6    other states have passed.

7           And so if their burden is to show it's the least

8    restrictive means or it's narrowly tailored or if each of these

9    provisions are really essential to the public safety goal, I

10   think that severely undermines them.

11          I think the other thing that severely undermines them

12   is the fact that they've written a very different statute for

13   the government.  I mean, why is it, for example, that a private

14   company can't do a transfer even to a contractor or a vendor or

15   any other private third party, but the government can do that

16   exact transfer, to the exact same vendor, to the exact same

17   contractor?

18          The government's theory is, oh, if you allow

19   transfers from outside of the company, that it may just somehow

20   lead to it getting out and getting into the public domain.  But

21   that's equally true from when the government does it.  That's

22   another example.  As the Supreme Court says in all of these

23   cases, when the government doesn't regulate in an evenhanded

24   way, when it has exemptions that undermine when it's really

25   fulfilling its asserted interest, that's a severe tailoring

1    problem.  And this is a hopelessly ill-tailored law for that

2    reason.

3             THE COURT:  Well, how about the *Williams-Yulee* case

4    in the Supreme Court which involved the Florida Bar canon which

5    prohibited judges who are running for election for personally

6    soliciting contributions?

7             But it didn't prohibit the judicial candidate from

8    sending "thank you" notes to those who contributed.  And it

9    didn't prevent the candidate from establishing a committee of

10   lawyers to raise money for the candidate.  And it didn't

11   prohibit the elected judge from recusing in any case where the

12   lawyer contributed appeared.

13            And the Supreme Court said, you know, we don't have

14   to solve all the problems.  It doesn't have to solve

15   everything.  It can be incremental.  Isn't that what's

16   happening here?  The Legislature had a specific set of facts,

17   true facts they were very worried about.  So they were dealing

18   with that specific situation mainly.  The statute isn't limited

19   to that.  So isn't that appropriate?

20            MR. DEGER-SEN:  But I think you could say the same

21   thing in almost all of the Supreme Court's cases that you could

22   say, well, there's a tailoring problem, but ultimately it still

23   advances the goal in some way.  And that isn't a sufficient --

24            THE COURT:  Well, doesn't this advance the goal in

25   some way?  In other words, it prevents people like Daniel

1    Anderl's assailant, people like that won't be able go to the

2    Internet and get the address.

3              MR. DEGER-SEN:  And that can't be the answer on

4    tailoring, because then I think every statute is by definition

5    tailored.  Because as long as all the government has to prove

6    to restrict speech is that it advances to some extent the

7    government's goal, then I think basically every restriction on

8    speech will probably satisfy that test.  But that's why we have

9    these tiers of scrutiny.  So when you're in strict scrutiny, as

10   we think applies here, you have to show that it's the least

11   restrictive means.  If you're in intermediate scrutiny, which

12   they concede is at least the level of scrutiny that applies

13   here, you have to show that it doesn't reduce more speech than

14   is necessary.

15             And so when the government then regulates itself in a

16   completely different way, how can it be necessary to restrict

17   this speech?  How can it be necessary to restrict, for example,

18   a private company giving this information to a vendor?  If it

19   were necessary, if the safety interest is appreciably damaged

20   by that transaction, then the government couldn't -- wouldn't

21   possibly have had an exemption for itself that is nothing but

22   for its administrative convenience.  If it's really true that

23   that transaction by one, you know, one company to a vendor is

24   going to lead to someone, you know, maybe losing their life,

25   then the government wouldn't have that exemption to itself.  So

1    that means the government doesn't sincerely, as the Supreme

2    Court describes it, doesn't sincerely believe in that interest.

3    And that's the nub of the tailoring analysis.  And that was

4    true in the *Florida Star* case.

5            If you look at Justice Scalia's concurrence, it

6    discusses all of the other ways in which the information could

7    still have gotten out there into the public domain.  Justice

8    Marshall's opinion describes how the restriction only applied

9    to, you know, mass dissemination and not small publications.

10   And it said the fact that the government wasn't regulating in

11   an evenhanded way, when you are suppressing truthful speech and

12   saying the public can't have this truthful information, if it

13   doesn't regulate in an evenhanded way, that severely undermines

14   the fact that the government claims it needs to do this.  And

15   that's exactly what's happening here.  This is clearly an

16   unevenhanded way.  It clearly suppresses speech.  They agree

17   with that.  And it is far more extensive than any other state

18   analogue and far more extensive than the federal government's

19   law.

20           So, you know, the government -- I don't think the AG

21   can just stand up and say, well, we found a goal and we found

22   that this enhances the goal to some degree and so the First

23   Amendment is out the window.  That would be true in every

24   single First Amendment case.

25           THE COURT:  All right.

1          MR. DEGER-SEN:  Thank you, Your Honor.

2          Oh, well, before I sit down, I wondered if you wanted

3     to discuss the facial challenge versus as-applied challenge.

4     I'm happy to answer any questions on that.

5          THE COURT:  About the what challenge?

6          MR. DEGER-SEN:  The question about -- it was a focus

7     of the briefing -- the facial versus as-applied question.

8          THE COURT:  Well, we're not arguing the as-applied

9     issue here.

10         MR. DEGER-SEN:  But they have raised the argument

11    that we can't raise a facial challenge in this posture.

12         THE COURT:  Well, I'll hear what you have to say

13    about that if you wish.  You wish to --

14         MR. DEGER-SEN:  I'm happy to address it now, happy to

15    address it later.

16         THE COURT:  Oh, that's fine.  All right.

17         MR. DEGER-SEN:  Address it now?

18         THE COURT:  Whatever you want.

19         MR. DEGER-SEN:  Oh, okay.  I'll address it now.

20         So as I understand the way that they've presented

21    this, their argument is even when you have a flat content-based

22    ban on speech that's not properly tailored to a governmental

23    interest, the statute still can't be invalidated facially.  And

24    that's directly contrary to what the Third Circuit said in

25    *Bruni*.

1          In *Bruni*, the Third Circuit described the general

2    facial invalidation test as being that a substantial number of

3    the law's applications are unconstitutional judged in relation

4    to the statute's plain and legitimate sweep.

5          THE COURT:  Right.

6          MR. DEGER-SEN:  But it then said, and this, I think,

7    is a key part, where a statute fails the relevant

8    constitutional test, such as strict scrutiny or reasonableness

9    review, it can no longer be constitutionally applied to anyone.

10   And thus, there is no set of circumstances, there is no

11   legitimate sweep in which it can be applied.  And that's how

12   the Supreme Court, you know, has struck down statutes under

13   that analysis --

14         THE COURT:  Did that case involve a privacy statute?

15         MR. DEGER-SEN:  It was a buffer zone case.

16         THE COURT:  It was a what?

17         MR. DEGER-SEN:  It was a buffer zone case, so it's

18   about speech close to a -- I think an abortion facility.

19         THE COURT:  Yeah.  So it did not involve privacy?

20         MR. DEGER-SEN:  It did not involve a privacy statute.

21   But, again, we contest this is a privacy statute.

22         THE COURT:  I understand.

23         MR. DEGER-SEN:  And we think this is the appropriate

24   analysis.

25         But *Sorrell*, for example, they didn't have a privacy

1  statute...

2           (Loud microphone feedback.)

3           MR. DEGER-SEN:  That was one of the stated remarks.

4  Asserted interest, they said that doctors have a right to not

5  have information; that prescribing information be given to

6  marketers and then used in marketing materials towards them.

7  That basically is, I think, a privacy interest.  And the

8  Supreme Court didn't say there was some completely different

9  type of analysis, and it struck down the statute facially by

10 looking at the statute and saying is it properly tailored to

11 the governmental interest.  And that was *Reed*, in *Brown*, in

12 *Packingham*, in *Simon & Schuster*.

13          And as I understand the other side's arguments, they

14 believe that all of those cases and *Bruni* have essentially been

15 overruled by the Supreme Court's decision in *NetChoice*.  I

16 mean, A, the Supreme Court doesn't sub silentio overrule its

17 longstanding precedent that way.  And *NetChoice* was a very

18 different kind of case*,* because *NetChoice* was not a flat ban.

19 *NetChoice* was a content moderation law.  And that means that

20 each of the times you would -- you know, the question was

21 basically, it limited the editorial discretion of third

22 parties.  And so, as the Supreme Court said, a function only

23 qualifies for First Amendment protection if it's inherently

24 expressive.  And they didn't really know in any of the

25 applications whether there was even any First Amendment

54

1   activity going on.

2           You know, the way the Court described it is creating

3   a feed and transmitting direct messages one might think

4   involved different levels of editorial choice so that one

5   creates an expressive product and the other does not.  If so,

6   regulation of those diverse activities could well fall on

7   different sides of the constitutional line.

8           So each time, you know, the question was:  Does this

9   law affect editorial choice such that it even triggers the

10  First Amendment?  You obviously have to go application by

11  application in a situation like that.

12          Where you have a flat ban on speech, you just know

13  it's a ban on speech in all of its applications.  It's

14  unconstitutional.

15          (Loud microphone feedback.)

16          Sorry about that.  I just want to note that I think

17  the implications --

18          THE COURT:  Stand back a little bit.

19          MR. DEGER-SEN:  Stand back a little bit, yeah.

20          The implications I think of the government's position

21  here are really pretty radical, which is that even when you

22  have a flat ban on speech like this, instead of being able to

23  facially invalidate it, the law has to stay on the books

24  forever and people have to go up individually and essentially

25  seek judicial exemptions from the law.  And, you know, a lot of

1    people are not going to have the money and resources to be able

2    to litigate to get their judicial exemption, which is exactly

3    why in the First Amendment area the Court -- you know, the

4    Supreme Court usually defers to what's facial invalidation.

5         And I'll finally just note here that I do think even

6    if you were to do the kind of overbreadth analysis, we win

7    under that standard, too.  You know, if you look at *Stevens*, if

8    you look at *Bonta*, the Court didn't feel like it needed to do a

9    lot of fact-finding or anything like that.  And *Stevens* was a

10   criminal prosecution, so there were no -- there's no discovery.

11        THE COURT:  Right.

12        MR. DEGER-SEN:  The question is, when you look at the

13   statute, this Court is able to construe what the statute means,

14   just as the Supreme Court did in *Stevens*.  It's able to look at

15   what the possible applications are and sort of weigh that a lot

16   of those applications are unconstitutional, even if they were a

17   plainly legitimate sweep.  But our primary position is there's

18   no legitimate sweep here because it's a poorly tailored flat

19   ban on speech.

20        THE COURT:  Thank you.

21        MR. DEGER-SEN:  Thank you, Your Honor.

22        THE COURT:  Anyone else speaking for one or more

23   defendants?

24                    ARGUMENT

25        MR. KIMREY:  Hello again, Your Honor.

```
 1              THE COURT:  Afternoon.
 2              MR. KIMREY:  Good to see you again.  Blaine Kimrey
 3      for Whitepages and for Hiya.
 4              THE COURT:  Right.
 5              MR. KIMREY:  May it please the Court.
 6              The test that you referred to, Your Honor, is the
 7      Florida Star vs. B.J.F. test --
 8              THE COURT:  Right.
 9              MR. KIMREY:  -- is a test that we referred to in our
10      supplemental briefing as the Bowley/Daily Mail standard.
11      Florida Star vs. B.J.F. relies on Daily Mail.  Daily Mail is
12      really the seminal case.
13              THE COURT:  Right.
14              MR. KIMREY:  And we go through that test in our
15      briefing.  And it sounds to me as if the Court is particularly
16      focused on public significance.  So I'd like to start --
17              THE COURT:  That's one of my focuses.
18              MR. KIMREY:  So I'll start -- unless the Court would
19      like me to start with something else --
20              THE COURT:  No; go ahead.
21              MR. KIMREY:  -- with public significance.
22              The State of New Jersey has already deemed this
23      information to be publicly significant in at least a couple of
24      ways.
25              Number one, there are two statutes that say that
```

57

1    judges, prosecutors, and law enforcement personnel must have a

2    primary home address in the state of New Jersey.  These

3    statutes are N.J.S.A. 40A:14-122.8.

4              THE COURT:  Right.

5              MR. KIMREY:  And N.J.S.A. 52-14-7(a).

6              THE COURT:  They're mentioned in your brief.

7              MR. KIMREY:  It's in our brief, yes, Your Honor.

8              And so the State of New Jersey has deemed that to be

9    publicly significant because the State of New Jersey has

10   adopted a policy important to the state and its citizenry that

11   these public officials reside in the state.  And the way you

12   figure out whether they reside in the state is you determine

13   what their home address is.

14             Number two, with respect to home addresses, the State

15   of New Jersey, in various ways, makes these home addresses

16   publicly available.  And part of that has to do with the fact

17   that the Public Agency Provision is looser under New Jersey's

18   Daniel's Law than is the Private Entity Provision.

19             And so as the Supreme Court taught us in *Cox v. Cohn*,

20   when a state renders something public, it de facto recognizes

21   that it is of public significance.  So, again, two primary

22   points, Your Honor.

23             Because these two statutes require that judges,

24   prosecutors, and police officers reside in the state which

25   makes that newsworthy, which makes it publicly significant, and

1      because -- yes, sir.

2              THE COURT:  Well, how about -- I'm sure there's a New

3      Jersey law which says if you have a certain income you have to

4      file a state income tax return, correct?

5              MR. KIMREY:  I don't know.

6              Everyone files a state income tax return, yeah, or

7      should, yes.

8              THE COURT:  All right.  Well, that's mandated by law.

9      But your tax return isn't made public because you're required

10     to file a tax return.

11             MR. KIMREY:  Well, that's different in a whole host

12     of ways, Your Honor.

13             Number one, a tax return is a communication to, you

14     know, a single entity, the revenue agency of the state of New

15     Jersey.

16             THE COURT:  Right.  Right.  Okay.

17             MR. KIMREY:  Or if it's a federal one --

18             THE COURT:  Right.

19             MR. KIMREY:  -- it's to the federal government.  And

20     those are entities that are specifically required to enforce

21     filing of tax returns, auditing those tax returns, et cetera.

22             A home address is totally different.  For instance,

23     my home address is on my house.  You can drive by in front of

24     my house.

25             THE COURT:  Does it have your name on it also?

1          MR. KIMREY:  No, it doesn't have my name on it.  But

2     you can very easily find through numerous sources my name

3     connected to my home address.

4          THE COURT:  Go to your neighbor.

5          MR. KIMREY:  Please don't do that.

6          (Laughter.)

7          THE COURT:  Knock on your neighbor's door, I guess,

8     and find out.

9          MR. KIMREY:  And part of that has to do with the fact

10     that I have pizza delivered to my house.  I have Amazon

11     packages delivered to my house.

12          THE COURT:  Right.

13          MR. KIMREY:  There has to be an association between

14     my name and the address for things to come to my house that I

15     want to come to my house.

16          THE COURT:  Right.

17          MR. KIMREY:  So it's not like a tax return.  I mean,

18     that's highly sensitive information, which our Former President

19     has argued at length, one of our Former Presidents.

20          THE COURT:  Well, we won't get into that.

21          MR. KIMREY:  But totally different.  Totally

22     different.  These -- home addresses have historically been

23     public.  And part of that has to do with the fact that they are

24     because they're on our house.  I mean, nothing would get

25     delivered to our houses if our addresses weren't there.

1          So under the -- what I'll refer to as the
2  *Bowley/Daily Mail* standard, which is the *Florida Star vs.*
3  *B.J.F.* standard, we satisfy.  And that's a three-part test,
4  right?
5          THE COURT:  Right.
6          MR. KIMREY:  I was addressing the second part, which
7  is public significance.
8          The first part is whether it's truthful and lawfully
9  obtained.  And there's no claim that these numbers and these
10  addresses are untruthful.  The problem is that --
11          THE COURT:  No.  I don't think there's any doubt,
12  we're talking about truthful information here lawfully
13  obtained.
14          MR. KIMREY:  Yes.
15          THE COURT:  I don't think there's any dispute about
16  that.
17          MR. KIMREY:  Yeah.  Okay.  So number one is
18  satisfied.
19          Then you get to number three.  And, by the way, I
20  just want to make clear, we very clearly addressed in our
21  briefing this argument, in the supplemental dismissal briefing
22  of Whitepages and Hiya that was joined by several other
23  defendants.
24          THE COURT:  Right.
25          MR. KIMREY:  Nowhere in the opposition's briefing is

1     this addressed.  That constitutes a waiver and concession of

2     this very point.  They've focused on the consolidated brief,

3     which focused primarily on the strict scrutiny, narrow

4     tailoring argument that Mr. Deger-Sen was discussing.

5            THE COURT:  Right.

6            MR. KIMREY:  They completely ignored our argument,

7     even though it was very clear on the record.  So there's a

8     waiver.  They can't contest that, period, the end.

9            Now, I realize the Court may not want to find New

10    Jersey's Daniel's Law unconstitutional facially based on a

11    notion of waiver.  But it is a waiver.  But we can squarely

12    address these factors.

13           The third of which, Your Honor, is a state interest

14    of the highest order.

15           THE COURT:  Right.

16           MR. KIMREY:  And this is dicey for me to address

17    because I understand that I run the risk of being cast as not

18    caring about the safety of judges, police officers, and

19    prosecutors.  That is not the case.  They deserve to be

20    protected as public servants.  I stipulate to that.

21           But that does not mean that the State of New Jersey

22    has satisfied its burden to show that this particular statute

23    as drafted satisfies an interest of the highest order.

24           And this kind of dovetails into the point you were

25    making, Your Honor, about privacy versus safety.

1           I agree wholeheartedly with Mr. Deger-Sen that this
2    is a safety statute, because that's what the Legislature said.
3    The Legislature clearly said this is a safety statute, which
4    makes total sense because of the catalyst for the statute,
5    which is the terrible, heinous murder of Judge Salas' son.
6           This is not a privacy statute.  But --
7           THE COURT:  Well, what about the second aspect about
8    so that they can do their jobs without fear of reprisal?
9           MR. KIMREY:  I --
10           THE COURT:  Isn't that more than just --
11           MR. KIMREY:  I think they should be able to do their
12    jobs without fear of reprisal, sure.
13           THE COURT:  Isn't that more than safety and security?
14           MR. KIMREY:  No, I don't think so, Your Honor.  I
15    understand what you're driving at, Your Honor, I think.  And
16    I'm sensitive to it and empathetic to the point.
17           But there has been no statistical information shared
18    by the State of New Jersey or expert information shared by the
19    State of New Jersey indicating that the partial -- and keep in
20    mind, this is partial suppression.  It's not complete
21    suppression --
22           THE COURT:  Right.
23           MR. KIMREY:  -- that the partial suppression of home
24    addresses and unlisted telephone numbers -- and, by the way, I
25    don't even know what that means.  I can elaborate on it if

1    you'd like, but unlisted telephone numbers of these people.

2            THE COURT:  Well, most people have unlisted phone

3    numbers now.  I haven't seen a phone book in years.

4            MR. KIMREY:  I know.  Well, back in the day, right,

5    when there were hard copy phone books dropped at our

6    doorsteps --

7            THE COURT:  Right, right.

8            MR. KIMREY:  -- what unlisted phone number meant is a

9    phone number that wasn't in the Whitepages.

10           THE COURT:  Right.

11           MR. KIMREY:  And so that was simple.  But now -- I

12   mean, there are still hard copy phone books.  Most of us don't

13   use them.

14           THE COURT:  I haven't seen one in years.

15           MR. KIMREY:  But unlisted phone number is meaningless

16   because, you know, once a phone number, once anything gets on

17   the Internet, it never goes away.  You know, it gets cached.

18   Even if it gets suppressed, Your Honor, you can get it through

19   the Wayback -- do you know what the Wayback Machine is?

20           THE COURT:  No idea.

21           MR. KIMREY:  So the Wayback Machine is a snapshot of

22   the Internet periodically over the course of time.  And if you

23   go there, you could find things on the Wayback Machine that

24   aren't live on the Internet.

25           So the Internet is constantly being photographed

1   essentially over time.

2            THE COURT:  Right.

3            MR. KIMREY:  And it's also cached, which is another

4   form of saving.  And so this information remains out there.

5            So there's really no way to eliminate this

6   information.  And here, because the statute itself facilitates

7   the partial availability of the information via public

8   agencies, this statute just doesn't qualify -- go ahead, Your

9   Honor.

10           THE COURT:  But the Supreme Court has said -- and I

11  can't recall the name of the case now.  I think it was Justice

12  Stevens who said the compilation of information where you have

13  a summary of information is different than the fact that the

14  information may exist in scattered locations, in private

15  courthouses and other places.  So the fact that information may

16  be out there somewhere else, and it may be a little harder to

17  get to, doesn't mean that efforts can't be made to prevent the

18  dissemination of compiled or summarized information.

19           MR. KIMREY:  I totally agree, Your Honor, efforts can

20  be made but not this imperfectly and this in violation of the

21  First Amendment.

22           The problem is not the effort to make numbers and

23  addresses harder to obtain.  The problem is that this

24  particular statute does it in a way that has, frankly, led to

25  this diabolical litigation via the assignment provision, and

1    that this is unique.  This statute does that, but the federal

2    statute doesn't do that.  The Colorado statute doesn't do that.

3    Maryland --

4            THE COURT:  Well, is that a policy argument as

5    opposed to a constitutional argument?

6            MR. KIMREY:  I -- I think it's both, Your Honor.

7    Because it ties into this notion of appropriate tailoring,

8    whether you apply strict scrutiny, which you can -- and let me

9    back up just a second.

10           There are three -- at least three constitutional

11   doctrines that the Court could employ to find Daniel's Law

12   unconstitutional facially.

13           There is the strict scrutiny, narrowed tailoring

14   argument that Mr. Deger-Sen was focused on.

15           THE COURT:  Which I'm not sure applies in this

16   situation.

17           MR. KIMREY:  It does, because *Sorrell* says it does.

18   *IMDb.com* says it does*, and *Brayshaw* says it does.  So that's a

19   Supreme Court, that's a Ninth Circuit case, and that's a

20   Northern District of Florida case.  So there is case law out

21   there saying that that doctrine does apply.  And it applies in

22   privacy cases.  Those are all privacy cases, although I don't

23   think this is a privacy case.  I think this is a safety case.

24           THE COURT:  Right.

25           MR. KIMREY:  So you can apply that doctrine.  You can

66

1    apply the *Daily Mail* or *Florida Star vs. B.J.F.*, *Cox v. Cohn*,
2    *you know, Bowley*, Third Circuit, you can apply that.
3                THE COURT:  Right.
4                MR. KIMREY:  You can also apply the overbreadth
5    doctrine, okay.  Now, the case law doesn't distinguish between
6    these doctrines as clearly as I just laid them out.  The case
7    law is kind of all over the map, so I'll acknowledge that,
8    particularly at the circuits and at the district courts, but
9    even at the U.S. Supreme Court.
10                THE COURT:  Right.
11                MR. KIMREY:  For instance, in the strict scrutiny
12    analysis, the notion of overinclusiveness, that sounds like
13    overbreadth.  Those things sound synonymous.  Although the
14    Supreme Court recently in the *Moody* decision, the *NetChoice*
15    decision --
16                THE COURT:  Right.
17                MR. KIMREY:  -- treated overbreadth as a unique
18    thing.
19                I want to note, Your Honor, that *Moody* does not guide
20    this Court with respect to the overbreadth doctrine.  Because
21    *Moody* involved a very nuanced analysis of editorial judgments
22    engaged in by Internet companies, social media companies.
23                THE COURT:  Right.
24                MR. KIMREY:  So you had to look at like what they
25    did, how they engaged in the self-policing, you know, the

1    censoring of contents or being a gateway to content.

2            The case that's more like this one is the *Reyes* case

3    that just was decided by the District of Utah.  And that

4    choice -- that case is interesting in that it's a *NetChoice*

5    case, too.  And the Court very carefully distinguished -- it

6    came down after *Moody* did -- and the Court very carefully

7    distinguished *Moody* from the *Reyes* case at Footnote 92.  And in

8    that footnote, the Court said we don't have the *Moody* problem

9    here because we don't have to engage in this nuanced analysis

10   of editorial discretion of social media companies.  This is a

11   blanket ban, much like we have a blanket ban here with respect

12   to numbers and addresses.

13           No discovery is going to change the analysis of these

14   issues for Your Honor.  You know what you need to know.

15           THE COURT:  Right.

16           MR. KIMREY:  And I think that's why you probably

17   asked for this First Amendment analysis now.  You know what you

18   need to know to find this statute unconstitutional.  While

19   noble in its inception, for sure, poorly done and made even

20   worse over the course of time with the amendments to the

21   statute.

22           So I agree with Mr. Deger-Sen that you can apply

23   strict scrutiny and find that the statute is not sufficiently

24   tailored for a whole host of reasons set forth in our briefing.

25           I think that you can also find that the statute fails

1    the *Daily Mail/Bowley* test.

2            And we do not -- so in this regard Mr. Deger-Sen was

3    not speaking on my clients' behalves.

4            THE COURT:  Right.

5            MR. KIMREY:  We do not concede the interest.  We do

6    concede that judges and prosecutors and police officers should

7    be safe, absolutely.  But we don't concede the interest as

8    captured by this particular statute.  But if you're

9    uncomfortable with that, Your Honor, you could say it doesn't

10   matter whether there's a compelling interest or not, it fails

11   under strict scrutiny because there's no narrowed tailoring,

12   and so we shouldn't -- or it fails under *Daily Mail vs. Bowley*

13   because it's presumptively unconstitutional regulation of

14   truthful speech lawfully obtained in the public interest, as

15   I've noted.  Or you can say it's overbroad, belt and

16   suspenders, in your opinion.  And that's kind of -- that

17   reflects back to the narrowed tailoring argument.  But you tie

18   it into the doctrine, the *Bruni* doctrine, which was restated in

19   *NetChoice vs. Moody*.  They misstate the test, by the way.  We

20   don't have to show it's unconstitutional in all applications.

21   But it is as drafted.  And so you can also say that it's

22   overbroad.

23           And you can look at what your esteemed colleague in

24   the federal court in Utah did and distinguish the remand that

25   occurred in *NetChoice vs. Moody*.  And that way you maximize

69

1  your chances of being upheld on appeal because you picked three

2  different First Amendment doctrines -- that I confess do

3  overlap considerably and get confused in the case law -- to

4  support the fact that you find that this version of a statute

5  is facially unconstitutional under both the First Amendment and

6  the New Jersey Free Speech Clause.

7           THE COURT:  All right.

8           MR. KIMREY:  Thank you, Your Honor.

9           THE COURT:  Thank you.

10          Anyone else want to speak for the defendants who will

11  add something and not repeat?

12          MR. YUDELSON:  Only briefly, Your Honor, and only if

13  you have a question.

14          THE COURT:  Come ahead.  Come up.

15          MR. YUDELSON:  Thank you, Your Honor.

16          May it please the Court, David Yudelson, along with

17  my partner, John MacDonald.  We filed the briefing for

18  Restoration of America and Voter Reference, which was

19  unopposed.

20          THE COURT:  Right.

21          MR. YUDELSON:  I came here in the event the Court had

22  questions.  You've obviously heard from counsel in the other

23  motions that we join.

24          But I thought my folks would not be happy if I flew

25  all the way out here and didn't at least offer to answer any

1    questions the Court had.

2            THE COURT:  Not at the moment.  Thank you.

3            MR. YUDELSON:  If you don't have any, I'm happy to

4    let the Court move along.

5            THE COURT:  Thank you.

6            All right.  We'll hear from anyone else?

7            (No response.)

8            THE COURT:  All right.  We'll hear now from the

9    plaintiffs in opposition.

10                         ARGUMENT

11           MR. PALMER:  May it please the Court, Eric Palmer

12   from Boies Schiller Flexner on behalf of the plaintiffs.

13           Your Honor, I think that you're completely correct in

14   thinking that *Florida Star* provides the governing framework

15   here.  And under *Florida Star*, they have no real means of

16   stating a facial challenge for essentially two reasons.

17           First of all, because addresses and phone numbers are

18   generally not matters of public concern.  The only

19   circumstances they've been able to come up with in which

20   disclosing the address or phone number of a covered person

21   constitutes speech on a matter of public concern involved cases

22   like *Publius* or *Brayshaw* in which there is some kind of act of

23   using that address or phone number information to address

24   something that is political in character, like in *Publius*, to

25   speak to the California Legislature's policy of posting people

1    who purchased ammunition addresses online in order to point out

2    something about the hypocrisy of the stances of those

3    legislators.

4           And the reason why we think that that's the correct

5    standard here in the face of the kind of arguments they've made

6    are essentially that they've made really kind of two points.

7    The first is, they claim strict scrutiny automatically applies

8    to a content-based statute whether it is a privacy statute or

9    not.

10          But that clearly can't be the case, because if you

11   just look at *Florida Star*, in Footnote 1 the Court quotes the

12   statute under examination and it prohibits disclosing the name,

13   address, or other identifying information of the victim of any

14   sexual offense.

15          By their own logic, the disclosures having to do with

16   addresses or phone numbers necessarily means that a law is

17   content based.  It follows that *Florida Star* should have

18   applied strict scrutiny, but the Court didn't.  Instead it

19   applied a framework that was designed to address the conflict

20   between privacy interest and the interest of people to speak

21   freely under the First Amendment.

22          And then if one looks at the Third Circuit case from

23   *Bowley*, which our friends from Whitepages have emphasized,

24   there the Court did not apply tiers of scrutiny to a statute

25   that prohibited disclosing the contents of a law enforcement

1   record concerning a child who was convicted of an offense as a

2   juvenile.

3           Both of those statutes applied a privacy-based

4   framework to a statute that, according to defendants'

5   reasoning, have to have regulated content.  And that shows you

6   that that's the kind of proper framework to apply here, so long

7   as that we're dealing with an attempt to safeguard a privacy

8   interest, which brings me to another case that they haven't

9   addressed --

10          THE COURT:  Well, how do you address the argument

11  that's been made that New Jersey compels all judges, police

12  officers, prosecutors, to live within the state?

13          MR. PALMER:  So I think that say, for example, the

14  case that came out of the New Jersey appellate division where

15  you had a reporter who wanted to publish --

16          THE COURT:  Right.

17          MR. PALMER:  -- on that type of situation, there's a

18  chance and there's an argument that that involves a situation

19  where there's speech on a matter of public concern.  We think

20  the appellate division's decision holding otherwise is correct,

21  where the Court essentially said you could point out the same

22  fact that this officer did not live in the right place.

23          THE COURT:  In the municipality, yeah.

24          MR. PALMER:  Yeah, without addressing the specific

25  address.  And we think that reasoning is good.

1            But if you just think, that's the kind of situation

2      where we have a kind of difficult as-applied challenge or

3      potentially difficult as-applied challenge.  In the

4      overwhelming majority of circumstances, this statute does not

5      regulate anything like a reporter writing a news article about

6      where a police officer lives.  Instead, we're talking about

7      situations in which data miners --

8            THE COURT:  Aren't newspapers exempt under the

9      statute?  Are they?

10            MR. PALMER:  The New Jersey appellate division there

11      appears to have assumed that they were not exempt from the

12      statute.

13            I think our view is that because New Jersey courts

14      traditionally interpret statutes that belong to an established

15      body of law like privacy law in line with the common law --

16            THE COURT:  Right.

17            MR. PALMER:  -- we assume that New Jersey courts

18      would apply those principles to infer that the standard types

19      of newsworthiness or speech on a matter of public concern

20      defenses would apply to the statute as well.

21            THE COURT:  Right.

22            MR. PALMER:  So I think that's the way in which that

23      would work.

24            But if that line of questioning -- if you're through

25      with that line of questioning, I was --

```
1              THE COURT:  Go ahead.

2              MR. PALMER:  Yeah.  I would have moved on to address

3     their sort of second argument for why they say that this isn't

4     a privacy statute or a statute that's governed by the Florida

5     Star-type framework is they claim, well, home addresses, they

6     can't be something in which someone has a privacy interest.

7     But they never address the Paul P. vs. Farmer case that we cite

8     in our brief from the Third Circuit.

9              THE COURT:  Right.

10             MR. PALMER:  Where the Court held that convicted sex

11    offenders had a constitutional privacy interest in preventing

12    excessive disclosure of their addresses pursuant to kind of

13    Megan's Law-type framework.

14             THE COURT:  Right.

15             MR. PALMER:  And if that's the case, then of course

16    the addresses and phone numbers of judges, prosecutors, and

17    police officers are, you know, that's a legitimate

18    constitutional interest that can be protected within the rubric

19    of a traditional privacy statute.  And that's really just all

20    Daniel's Law is, is a statute that's aimed at protecting that

21    type of interest which the Third Circuit there describes as an

22    interest in the anonymity of your life for people who, by

23    nature of their work, confront increased risks that give them a

24    need for a somewhat higher level of anonymity than might be the

25    case for other persons.
```

1    It's also notable that in the *Paul P.* case, the Third

2    Circuit points out that the way in which we know that there's a

3    legitimate privacy interest in one's own address is the fact

4    that once people are given the option to pull that information

5    from the public domain, they take it.  And that's exactly

6    what's the case here.  You know, covered persons, for the most

7    part, I think did not want this information out there.  And the

8    state --

9    THE COURT:  This is not a criminal statute.  The

10   covered person has the option whether or not to do it.

11   MR. PALMER:  Right.  Yes.  There is a criminal

12   provision of it that I think would similarly apply based on

13   whether the covered person conveyed the right notice.  But in

14   every instance where the statute applies, the covered person

15   has to make a choice this is information that's being

16   disseminated in a way that probably presents some type of risk

17   to me, and they can make their own choice about how to go about

18   getting that information out of the public domain.

19   And I think that's the other sort of key dimension of

20   grasping at really what the statute has to do with privacy is

21   they say, many times over, this information is already out

22   there.  But the point is, covered persons didn't want it out

23   there.  It creates a risk for them.  And the Third Circuit has

24   said even when this information is already out there, people

25   still have what is, in principal, a legitimate privacy interest

1     in that information.

2             And so it's quite rational for the Legislature to

3     say, okay, we're going to give you a means of starting to get

4     that information out of the public domain, both from public

5     records in which you could secure redaction of almost anything

6     and kind of cut off the source from which a lot of this

7     information enters into the Internet, and then ways of

8     targeting specific disclosures on the Internet which requires

9     really a pretty -- something of a broadbrush method simply

10    because of the way that data gets distributed on the Internet

11    where if you knock it out from one website, the same dataset

12    can reappear and be used to propagate the same information over

13    and over again on different websites.

14            And, you know, that problem has arisen in other

15    contexts.  For example, we cite a case from the Illinois

16    Supreme Court, *People vs. Austin*, dealing with a revenge

17    pornography statute that targets attempts to post information,

18    you know, sexually explicit information, photographs and

19    similar, about someone against their will.

20            And that has the same kind of dynamic to it against

21    the backdrop of the present Internet technologies where if

22    somebody puts that information out there, it can end up in a

23    dataset that just gets put up on website after website after

24    website.  And you need a way to kind of rapidly knock out each

25    of those sort of recurrences of the information.

1        And that's really why, you know, once they concede

2    that the interest here is of the highest order under

3    *Florida Star*, they don't even have a real argument on the

4    tailoring front.

5        And their own cases, much like *Florida Star*, fault

6    the statutes at issue for being underinclusive for not

7    prohibiting informal methods for which information could

8    continue --

9        THE COURT:  What about the underinclusive argument

10   that they make?

11       MR. PALMER:  So I think Your Honor's totally correct

12   that *Williams-Yulee* made clear that courts should not apply --

13   say that a statute is unconstitutional even in strict scrutiny

14   based on an underinclusivity argument unless the

15   underinclusivity shows some type of viewpoint discrimination is

16   at work.  Like you think, oh, this statute can't possibly be

17   doing that, it's just a pretext; or where the statute has set

18   these glaring gaps in its coverage scheme that undermine any

19   idea that it advances the State's interest to the right degree

20   under whatever kind of framework you're using.

21       And here, I think there's no question that the

22   statute has a pretty thorough coverage regime compared to the

23   kinds of statutes that were invalidated in the cases they rely

24   on, like *Publius* and *Brayshaw*, where in those cases, much like

25   in *Florida Star*, you had statutes, I think in *Publius*, where

1    you required publication in order to impose liability, whereas

2    under this statute, you can also reach sort of more subtle

3    methods of distributing the information through

4    business-to-business transactions that can yield data breaches

5    and other kinds of ways that this information can continue to

6    get back onto the Web.  So we don't have the kind of

7    underinclusivity problem that that case emphasizes.

8            And then in their *Brayshaw* case, the Court says,

9    well, the statute is underinclusive because it only applies to

10   someone if they disclose when they're acting with actual

11   malice.  That's not a problem here.  Instead, the statute and,

12   you know, what the Court's thought was, is if you only target

13   disclosures based on actual malice, that information can still

14   be out there disclosed by all kinds of people who didn't have a

15   malicious intent.

16           This statute doesn't work like that.  It does have a

17   mens rea in it, but it's an actual or constructive notice type.

18           THE COURT:  Well, let me ask you about that.

19           MR. PALMER:  Yes.

20           THE COURT:  The defendants argue that this is a

21   strict liability statute.

22           MR. PALMER:  Uh-huh.

23           THE COURT:  And there are Supreme Court decisions

24   which seem to say that when you're talking about contention

25   with the First Amendment, that strict liability privacy laws

```
 1   are not constitutional.
 2            Now, is this a strict liability statute?
 3            MR. PALMER:  No, Your Honor.  I don't think it could
 4   be described as strict liability.  Because to be found liable
 5   under the statute, you have to have received a notice from a
 6   covered person and then failed to take down within the required
 7   statutory period.
 8            And that notice is akin to, you know, in an ordinary
 9   negligence case how you have to have actual or constructive
10   knowledge that your conduct creates some kind of risk to
11   somebody to have created a foreseeable zone of risk or, in
12   securities law, some types of scienter-type concepts, that kind
13   of thing, I think.
14            THE COURT:  But is this -- the statute doesn't say
15   there's a negligence standard.
16            MR. PALMER:  Right.
17            THE COURT:  And the common law tort of privacy, there
18   is some dispute as to whether it's an intentional tort --
19            MR. PALMER:  Right.
20            THE COURT:  -- or whether it's a negligence tort.
21            MR. PALMER:  Right.
22            THE COURT:  Now, in the Florida Star case, the
23   statute specifically talked about negligence per se.
24            MR. PALMER:  Uh-huh.
25            THE COURT:  Daniel's Law doesn't state anything.  And
```

1    if it's a strict liability standard, then doesn't it fall?  Is

2    it unconstitutional?

3            MR. PALMER:  I think that the way I described the

4    statute is if you have to have a notice to be held liable under

5    it, that means you have an awareness, at least constructively,

6    of the fact that you have an asserted legal duty imposed on you

7    under the circumstances by the covered person and you decide

8    not to act in accordance with that notice duty.

9            I think that's much closer to -- you would even call

10   maybe close to --

11           THE COURT:  But what would the defense be for a

12   defendant who continues to disclose after the notice is

13   received?  Is it, well, we had an incompetent employee who

14   disclosed it?  Or does there have to be intent?  Or is it gross

15   negligence?  I mean, the statute is not clear about that, and

16   the Supreme Court has really cautioned about strict liability

17   statutes.

18           MR. PALMER:  I think that on this motion, you don't

19   have to answer that question simply because the statute --

20           THE COURT:  Oh, I think we do, it seems to me.

21           MR. PALMER:  Can I give you a reason why?

22           THE COURT:  Yeah, go ahead, absolutely.  Go ahead.

23           MR. PALMER:  Here's my one reason, which is under the

24   *Florida Star* standard, you need speech on a matter of public

25   concern.  In most applications, the statute doesn't govern

1    speech on a matter of public concern.  So I think we're just

2    out of the territory where we're worried about whether imposing

3    liability in this context needs to be kind of, you know,

4    appropriately tailored in the right way.

5         But to answer your question on what the standard

6    would be, I think that's going to -- there will be some type of

7    statutory interpretation debate that will probably draw on

8    generic principles of New Jersey tort law that you would use to

9    gap, you know, kind of fill the gaps to the extent that the

10   statutory text doesn't fill it in.

11        THE COURT:  Yeah.

12        MR. PALMER:  What the statutory text does tell us,

13   though, is that you need notice in order to be held liable

14   under the statute.

15        So from that idea, in conjunction with those

16   background principles, I think it will turn out to presumably

17   be something similar to a --

18        THE COURT:  Well, I think it's important to think

19   about that at this point.

20        MR. PALMER:  Yeah.

21        THE COURT:  Because of the Supreme Court law that

22   exists.  And some states consider the right to privacy,

23   invasion of a right to privacy is an intentional tort.

24        MR. PALMER:  Right.

25        THE COURT:  Others have maybe a negligence standard.

```
 1   And New Jersey does have model instructions for jury
 2   instructions.  And the headline or the title of the
 3   instructions is under intentional tort.  And while the statute
 4   doesn't say anything, I guess there is a principle, isn't
 5   there, that statutes don't, unless they're clear about it, they
 6   don't undermine the common law doctrines.
 7           MR. PALMER:  Uh-huh.
 8           THE COURT:  So that one could infer that the statute
 9   imposes like a mens rea or an intentional -- it has to be an
10   intentional act for liability to attach.
11           MR. PALMER:  I think intentional in the sense of
12   there being kind of actual or construction scienter that you're
13   violating a notice.
14           THE COURT:  Yeah.  And that's what --
15           MR. PALMER:  Because intentional can mean of course
16   acting with purpose or acting with some level of scienter.  And
17   I think that -- we think that the notice requirement requires
18   some type of scienter in the sense that you have that notice.
19   We want to say it's constructive --
20           THE COURT:  So you're saying it's implicit in the
21   notice requirement so that there would not be, in your view,
22   strict liability, so it wouldn't be automatic if they don't --
23   if they don't follow the notice.  In other words, the addresses
24   continued to be disclosed, phone numbers, that there wouldn't
25   be -- that the plaintiff would have to show that the defendant
```

*United States District Court*
*District of New Jersey*

```
 1    did it intentionally or failed to do it intentionally.

 2            MR. PALMER:  I think if you received the notice and,

 3    you know, a reasonable person would have been aware that they

 4    got the notice, that's the type of territory --

 5            THE COURT:  But of course, now you're getting into a

 6    negligence standard, aren't you, when you're talking about what

 7    a reasonable person would do as opposed to --

 8            MR. PALMER:  So I -- yeah.  I think it is a little

 9    bit broader than a strict actual knowledge requirement, or that

10    would be our position.  But we would not think that --

11            THE COURT:  The statute doesn't say it.  So the

12    question is --

13            MR. PALMER:  Right.

14            THE COURT:  -- going and looking at the common law of

15    New Jersey, would the statute be construed consistent with the

16    common law in terms of what the standard would be?

17            MR. PALMER:  I think that to address that question

18    really kind of goes -- it would require more thought than is

19    sort of present at this stage on this motion.

20            THE COURT:  Well, but the Supreme Court says, I

21    think, that you can't have, under the circumstances presented

22    here, you can't have a statute which imposes liability without

23    fault.  And the question is, does the notice requirement, does

24    that implicitly indicate that there is a fault requirement?

25            MR. PALMER:  I think that the notice requirement
```

1   definitely does distinguish *Florida Star*, because the statute

2   at issue there just said it's unlawful to publish or broadcast

3   information with the identifying information.

4           THE COURT:  And also it specifically talked about

5   negligence per se.

6           MR. PALMER:  Yes, right.

7           THE COURT:  It had that language in the statute,

8   which is a no-fault provision.  If you have -- negligence

9   per se is no fault.

10          MR. PALMER:  Right.  Right.

11          THE COURT:  You presume, absolute presumption that

12  you're at fault.

13          MR. PALMER:  Yes.  Right.  So what the Court is

14  holding there is a statute that says if you disclose this

15  information in any way, no matter what you did, that's a

16  problem once we get to tailoring analysis.  Daniel's Law

17  doesn't work like that.  You need a notice, which gives you at

18  least some level of fault that extends beyond that.

19          THE COURT:  But even if it didn't have a notice

20  requirement, aren't individuals and entities presumed to know

21  what the law is?

22          MR. PALMER:  Yes.

23          THE COURT:  So, in effect, having the statute gives

24  you notice, even though the statute may not have a provision

25  about notice.

```
 1              MR. PALMER:  I think that's correct.
 2              THE COURT:  So is the notice requirement any
 3    different -- to make the statute any different than just a
 4    statute which says you can't disclose after ten days, and if
 5    you do, you're liable?
 6              MR. PALMER:  Yes.  Because under --
 7              THE COURT:  So it may not mean anything then to have
 8    the notice requirement.
 9              MR. PALMER:  Right.  It's like the statute you've got
10    in Florida Star just imposes a duty on everyone.  You can't
11    disclose names and addresses, whereas in Daniel's Law it gives
12    the covered person a right to impose a duty on the other person
13    by providing them with a notice.
14              THE COURT:  Yeah.  But the question is whether it's
15    without fault, and so that's where I'm wrestling with.
16              MR. PALMER:  Right.
17              THE COURT:  And whether or not the statute has to be
18    construed to implicate a standard of some sort other than just
19    no fault.  You missed the ten-day deadline, you're liable.
20              Now, that's a no-fault statute, isn't it, if we just
21    said that?
22              MR. PALMER:  Not if the person received a valid
23    notice.
24              THE COURT:  But see, the question is, is that any
25    different?  Because the statute itself even without that puts
```

1   somebody on notice, right?  We're all presumed to know the law.

2           MR. PALMER:  Right.

3           THE COURT:  And in that basic principle, and if you

4   violate it, you're liable.

5           MR. PALMER:  I guess the difference there is that the

6   presumption that you all -- that everyone knows the law --

7           THE COURT:  Is different than actual notice is what

8   you're saying?

9           MR. PALMER:  Is different from you got a notice that

10  should have got a reasonable person to realize what their duty

11  was under the circumstances.

12          There's certainly a much more concrete event of

13  giving that person knowledge that they got a duty right now,

14  that they go to a particular person that's absent in the case

15  of just, you know, there's the millions of statutes that exist,

16  do I know what my duties are under them?  No, certainly not.

17          THE COURT:  All right.  Anything further?

18          MR. PALMER:  Not unless you have other questions.

19          THE COURT:  Not at the moment.

20          MR. PARIKH:  Your Honor, if I may add one thing on

21  behalf of my colleague.

22          THE COURT:  Sure.

23          MR. PARIKH:  Thank you.

24          Thank you, Your Honor.  Raj Parikh on behalf of

25  plaintiffs.

```
1              THE COURT:  Yes.
2              MR. PARIKH:  Judge, first I think you had asked a
3    question specifically about what Whitepages and Hiya argued
4    with respect to N.J.S.A. 52:14-7, and does that provide a basis
5    to say that home address is public information.  A little bit
6    of background on that law.  That's the New Jersey First Act
7    that was passed by Governor Christie, but at least in one court
8    in New Jersey has found that law to be unconstitutional, and
9    that case is Somerville Board of Education.
10             THE COURT:  Which law is this?
11             MR. PARIKH:  This is N.J.S.A. 52:14-7.
12             THE COURT:  And what does that statute say?
13             MR. PARIKH:  That statute is -- it's one of the two
14   statutes cited by Whitepages and Hiya that talk about residency
15   requirements essentially for public employees.
16             THE COURT:  Right.  So is that --
17             MR. PARIKH:  That teachers and others have to live
18   within the state in order --
19             THE COURT:  So that's unconstitutional --
20             MR. PARIKH:  Right.
21             THE COURT:  -- they have to live in New Jersey?
22             MR. PARIKH:  Correct, Judge.  So the trial court in
23   Somerville, in Somerset County, New Jersey, in the case of
24   Somerville Board of Education vs. Drake, it's Docket No.
25   SOM-L-465-18, issued a 77-page decision finding that statute to
```

1    be unconstitutional on February 11, 2021.  So I just wanted to

2    let the Court know that.

3              THE COURT:  Was that appealed?

4              MR. PARIKH:  It was not appealed, Your Honor, not

5    that I'm aware of.  So it is a trial court decision, but I

6    think it's instructive in terms of the concept that the state

7    believes that there's a public interest in home addresses and

8    telephone numbers.

9              THE COURT:  So all the New Jersey judges could move

10   to Philadelphia or New York?

11             MR. PARIKH:  Correct, Your Honor, that's right.

12   That's right.  And teachers.  And that was a teachers' case in

13   particular.

14             Number two, Judge, just with respect to the question

15   about statutory construction, and I think Mr. Palmer answered

16   your questions, I just want to point out, in terms of notice,

17   what we have to remember, different than some of the other

18   statutes that we're talking about that are strict liability or

19   not, is that here a covered person has the choice as to whether

20   or not to notify these data brokers to pull their information

21   off the Internet.

22             And so why that's different is while Your Honor is

23   correct that everyone is presumed to understand that the

24   statute exists and these data brokers here, the defendants,

25   should have known that Daniel's Law and the three amendments --

1    not two, as defendants' counsel have said, but there are three

2    amendments to Daniel's Law -- were implemented in November of

3    2020.

4            But from the outset, that is notice to everyone that,

5    okay, there is this regiment in New Jersey that protects a very

6    limited scope of people, judges, prosecutors and law

7    enforcement, now also child protective investigators as of last

8    month, but it's the notice that the individual chooses to

9    provide that then puts the defendant on notice or with the

10   understanding that they must then remove the information.  I

11   think that's where the difference occurs.

12           THE COURT:  Okay.

13           MR. PARIKH:  And when the statute talks about, you

14   know, what I think Your Honor's referring to in terms of

15   grappling --

16           THE COURT:  In other words, what you're saying is the

17   statute doesn't require the companies to remove the addresses

18   and phone numbers of every covered person in the state of New

19   Jersey.  It only requires the defendant do so when the covered

20   person elects to have the information removed.

21           MR. PARIKH:  That is correct, Your Honor.

22           And then the second part is the statute talks about

23   awarding damages, right.  And that's where I think the

24   defendants focus in on what they would call "strict liability."

25           But it says that the Court is to award actual

1   damages, but then because damages in these circumstances are so

2   hard to contemplate --

3            THE COURT:  Exactly.

4            MR. PARIKH:  -- puts a floor on those damages.  So I

5   just wanted to point out those two minor things, Your Honor.

6   Thank you.

7            THE COURT:  All right.  Very good.

8            What we'll do is we'll take about a five-, six-minute

9   recess now, then we'll hear from the Attorney General of New

10  Jersey, if someone's here to represent them.

11           Thank you.

12           THE COURTROOM DEPUTY:  All rise.

13           (Recess was taken at 2:53 p.m. until 3:01 p.m.)

14           THE COURTROOM DEPUTY:  All rise.

15           THE COURT:  You may be seated.

16           I'll try to keep my voice up.  Some of you may not

17  have been able to hear me, I understand.

18           All right.  We'll hear from the -- are you finished,

19  Mr. Parikh?

20           MR. PARIKH:  I am, Your Honor.  Just one correction.

21  Your Honor asked me if that *Somerville Board of Education* case

22  was appealed.  I was incorrect.  It was appealed, but the

23  appeal was denied as moot because the parties settled, so

24  there's no appellate record.

25           THE COURT:  Oh, very good.

```
 1              MR. PARIKH:  Thank you, Your Honor.
 2              THE COURT:  Now we'll hear from the Attorney
 3      General's Office.
 4                           ARGUMENT
 5              MR. ZUCKERMAN:  Good afternoon, Your Honor.
 6              THE COURT:  Afternoon.
 7              MR. ZUCKERMAN:  Michael Zuckerman on behalf of the
 8      Attorney General of New Jersey.
 9              You've heard a lot already this afternoon, Your
10      Honor, so I'll dive right in.  I want to say a bit about public
11      significance, and I want to talk about the scienter question
12      directly.
13              THE COURT:  Very good.
14              MR. ZUCKERMAN:  So on lack of public significance, as
15      Your Honor acknowledged, this is a statute that allows
16      particular individuals who face a rise of threats and violence
17      to opt in and request that their information not be disclosed
18      further.  And to them this is high-risk information.  It's also
19      very low-value information to the public discourse.
20              There may be circumstances in which someone makes an
21      argument for one particular person we really need to know where
22      that person lives for some sort of public reason.
23              There's a case in the New Jersey courts right now.
24      The New Jersey Supreme Court just granted certification in it.
25      It will be heard this term, *Kratovil vs. City of New Brunswick.*
```

1      That's one case where one reporter said:  I really want to

2      publish the exact street address of this chief of police.

3             The question of course no one disputes, he could

4      publish the town that the police chief lived in.

5             THE COURT:  Right.

6             MR. ZUCKERMAN:  So it's not even clear to me -- I'm

7      not saying anything about that specific case, but it's not even

8      clear to me why this exact street address Officer Smith lives

9      at 123 Main Street would be public significance, but the name

10     of the town could be, and nobody thinks that Daniel's Law even

11     covers that.  But I think *Kratovil* really, really underscores

12     how imperfect this posture is for what defendants are asking,

13     which is wholesale invalidation of the law.

14             *Kratovil* actually shows you that in these

15     fact-specific situations where there is a matter of public

16     significance, the courts are going to be open for people to

17     bring claims and do those claims on the specific facts and

18     equities as they are presented.  And, in fact, I think that's

19     the drumbeat you see from all of those cases.  We called them

20     the *Florida Star* line, as Your Honor did.  There was a

21     suggestion earlier that we hadn't responded to them.  We did.

22     We cited *Bartnicki* and *Florida Star* and *Cox*.  We didn't -- I

23     think *Smith* is the only one I think we didn't cite.  But that's

24     that whole line of cases.

25             THE COURT:  Right.

1          MR. ZUCKERMAN:  And in each of those cases the

2     Supreme Court is very, very clear.  It says, we're not going to

3     say anything really sweeping here.  We're going to do the

4     specific facts as they stand.  *So Kratovil* is a great example

5     of that.  It's in the New Jersey courts right now.  When there

6     is a matter of public significance involved, the courts are

7     going to be open and courts can weigh the balance between

8     privacy and the marketplace of ideas.  Just most applications

9     of this law don't bring that into the fore, so it's totally

10    inappropriate for the kind of wholesale facial relief that

11    they're looking for, a kind of game over on the whole law.  The

12    whole law is thrown in the garbage.  So that's just what I want

13    to say about public significance and the kind of facial

14    standard.

15          On the scienter issue, another point that I think is

16    important here that we're construing a state statute but here

17    in federal court.  Right now, of course, it's in the federal --

18    it's in the New Jersey state courts already, so it is possible

19    you could get a more authoritative construction.  But at least

20    here, on behalf of the New Jersey Attorney General, we don't

21    read our own state's statute as broadly as the defendants do.

22    We do not think that it's a strict liability statute.  We read

23    it as a negligence statute.  So --

24          THE COURT:  Why do you read it as a negligence

25    statute?

1    MR. ZUCKERMAN:  We read it that way for, I think, two

2   reasons.  Most importantly, the text of the law itself.  It

3   requires notice to be sent, notice to be received, there's ten

4   days to comply.  We think that sets up a kind of reasonable

5   person standard that if, in most of these cases at least, the

6   company is going to be one that specializes in data management

7   and it's a very high-tech company.  It is going to be hard to

8   see how there's not going to be some kind of negligence if

9   they're unable to comply.

10   Now, if there's a scenario where there's a worldwide

11   Internet outage -- we had one of those a few months ago -- and

12   they say oh, my goodness, I'm so sorry, it took us to the

13   eleventh day because we had that whole Internet outage thing

14   and we couldn't do it, I think that's exactly where you're

15   going to see, okay, that's not really valid lack of compliance.

16   There wasn't valid notice.  There wasn't valid receipt.  The

17   ten days hadn't happened.  But for most cases, I think it's

18   going to be pretty clear that a reasonable company getting

19   notice on day one, if it just is unable to comply in ten days,

20   is not going to be acting reasonably.

21   THE COURT:  Well, invasion of privacy, do you agree

22   that this is a privacy statute?

23   MR. ZUCKERMAN:  We think that it's a privacy and a

24   safety statute.  I think there was sort of a -- I heard a kind

25   of false dichotomy I think between privacy and safety.

```
 1              THE COURT:  Right.
 2              MR. ZUCKERMAN:  I think here that's just a blinkard
 3     view.  I think the reason this information matters is because
 4     it keeps people safe in their homes.  And for anyone who's been
 5     a victim of a home invasion, the idea that, oh, you were
 6     worried about your safety but not your privacy or you didn't
 7     feel an invasion of privacy when that happened is just kind of
 8     a semantic argument that's not going to really carry water.
 9              THE COURT:  But if it does have privacy aspects,
10     isn't invasion of privacy in New Jersey an intentional tort?
11              MR. ZUCKERMAN:  So --
12              THE COURT:  And if it's an intentional tort, since
13     the statute doesn't say negligence, would it be appropriate to
14     construe the statute consistent with the common law and have
15     a -- require an intentional violation to subject a defendant to
16     liability?
17              MR. ZUCKERMAN:  Your Honor, we don't think the New
18     Jersey courts would read it that way.  We do think they would
19     read in a scienter requirement.  We think there's very clear
20     doctrine in the New Jersey courts, they're --
21              THE COURT:  Well, isn't that pretty much the same
22     thing, scienter and intent?  Because negligence doesn't require
23     scienter.
24              MR. ZUCKERMAN:  Well, it's a general -- a general
25     intent -- I'm sorry, Your Honor, yes, not a specific intent.
```

1    We don't think that the New Jersey courts would read into the

2    words of this statute a specific intent; that the person had to

3    purposefully say, you know what, I got this receipt, this

4    notice, this request, but I don't care, I'm not going to do

5    anything about it, forget them.  We don't think it would

6    require that.

7            We do think if the company gets it and they just, you

8    know, they're distracted and they aren't doing a good job of

9    running a reasonable business in data brokering or posting

10   addresses on the Internet and they're not able to comply

11   because they didn't act reasonably, we do think the courts

12   would read the statute to --

13           THE COURT:  Well, see, you're conflating negligence

14   with intent.  They are two different concepts, wouldn't you

15   agree?

16           MR. ZUCKERMAN:  Well, I would agree that specific

17   intent is different from negligence.  And we do think this

18   would be a negligence standard, not a specific-intent standard.

19           THE COURT:  But on what basis?

20           MR. ZUCKERMAN:  On the --

21           THE COURT:  Because if it's a privacy, and I think

22   New Jersey, at least in the model jury instructions, civil jury

23   instructions for invasion of privacy, these torts are

24   considered intentional torts.

25           So if you're going to read into the statute, the

1  common law, which is reasonable statutory construction here, be

2  consistent with it, then it would have to be intent.

3         MR. ZUCKERMAN:  Your Honor, we don't think the New

4  Jersey courts would import the specific intent requirement from

5  those other torts.  We think that the Legislature can and did

6  articulate a different standard of conduct here, which --

7         THE COURT:  But it didn't say it in the statute, did

8  it?  What do you mean you think the Legislature did something?

9         Well, where is it evident in the statute?

10        MR. ZUCKERMAN:  So, Your Honor, they -- they write

11  exactly what they think can't happen for someone to be in --

12  for what would constitute a violation, and that violation seems

13  to suggest some sort of actual receipt and knowledge of the

14  request or constructive knowledge of the request and then a

15  failure to act.

16        THE COURT:  Right.  And then it says if you fail to

17  act, you're liable.  It doesn't say if you acted unreasonably

18  in failing to act, does it?

19        MR. ZUCKERMAN:  So, Your Honor, it does not say the

20  word "reasonableness" in the statute.

21        THE COURT:  Right.

22        MR. ZUCKERMAN:  We think that the -- I mean --

23        THE COURT:  I mean, you say you think.  Well, what's

24  the basis for you to think, or your thought?

25        MR. ZUCKERMAN:  Well, ultimately, the New Jersey

1   courts when they construe the statute definitively would have

2   to come up with their assumption of the Legislature's intent.

3          THE COURT:  Of course.  But you saying it today you

4   think, what's the basis for your thinking that they would

5   impose a negligence statute?  That's all I'm asking you.

6          MR. ZUCKERMAN:  Our --

7          THE COURT:  As opposed to if privacy is an

8   intentional tort in New Jersey, and states differ from time to

9   time, and there isn't much really case law in New Jersey, but

10  they do -- the model jury instructions, if you look at them on

11  privacy, deem invasion of privacy an intentional tort.

12         So you could construe the statute, it seems to me,

13  with the common law definition, with what the common law of New

14  Jersey seems to say that that's what the tort is.  But you keep

15  saying you think the courts would do something, well, that's

16  not really an answer, is it?

17         MR. ZUCKERMAN:  Well, Your Honor, I can't tell you

18  exactly what the New Jersey courts would say.

19         THE COURT:  No.  But we have to -- I understand,

20  nobody knows for sure, but you have to try to reason to a

21  conclusion.  And one way of doing it is saying if the tort is

22  an intentional tort, then the elements of an intentional tort

23  could be read into the statute.  Because there is a doctrine in

24  New Jersey and a lot of other states that when there's a

25  statute passed, it's construed consistently with common law

1    unless the statute specifically speaks otherwise.

2            Now, the statute hasn't specifically spoken

3    otherwise.  So I'm just trying to understand, because the

4    Supreme Court has, I think, made it pretty clear that no-fault

5    statutes don't pass muster.

6            MR. ZUCKERMAN:  We agree with that, Your Honor.  We

7    do think that it's not a strict liability statute.  We think

8    that's the no-fault that the Supreme Court is saying is

9    disfavored.

10           THE COURT:  All right.  I understand.  And that, I

11   think, while there's a difference in state law about whether

12   invasion of privacy is a negligence tort or an intentional

13   tort, I don't think there's any that say it's a no-fault tort.

14           MR. ZUCKERMAN:  We agree.

15           THE COURT:  So we're all -- so we agree on that step

16   number one.  But then what is it?  And I'm just having trouble

17   saying that it's a negligence standard.  Simply saying that you

18   think that's what it is without any basis for it, it doesn't

19   help me.

20           MR. ZUCKERMAN:  So, Your Honor, I know that -- I have

21   two main sources of evidence.  One is the text, which I know I

22   haven't fully convinced you that the text gets you there.  But

23   we think that the text they used which doesn't include the word

24   "reasonableness" or "negligence," but also doesn't include the

25   word "purposeful" or "knowing," and then the purpose, which is

1    to protect people who are at risk from sort of large-scale

2    distribution of this information on the Internet, which won't

3    always be by a targeted bad actor who purposefully, in the most

4    specific form of intent, says I want to go out and, you know,

5    share Officer Smith's email address.

6            The harm to Officer Smith is the same whether a huge

7    company -- I don't want to name any of them, you know, most of

8    the defendants -- just leaves Officer Smith's email address --

9    or I'm sorry, home address, out on the Web for anyone to find

10   it.  The harm is the same as if the company deliberately posts

11   it and says here's Officer Smith's email address.  In either

12   case, Officer Smith is going to know that someone who wants to

13   do him harm is going to know where he and his family go to

14   sleep each night, so --

15           THE COURT:  But if they leave it on the Internet and

16   they've gotten notice, it certainly could be argued to a jury,

17   could it not, that they did it intentionally?

18           MR. ZUCKERMAN:  I don't know that --

19           THE COURT:  Because you have notice and you don't do

20   anything about it, I mean, it may depend.  Maybe everybody in

21   the company was out with COVID, nothing happened, and it

22   wasn't -- or everybody was on board, they got the notice and

23   they knew about it and didn't do anything.  A jury could

24   construe that as being intentional conduct.

25           MR. ZUCKERMAN:  So, Your Honor, I don't want to fight

1   it too hard because I think that for purposes of deciding their

2   facial motion to dismiss on their posture where they don't

3   have -- they're not bringing in extra facts, they're stuck with

4   the facts as the plaintiffs allege them, I don't know that any

5   of that necessarily has to be definitively decided here.  I do

6   think that --

7           THE COURT:  Well, I'm not sure you're right, because

8   I think the Supreme Court has said, in some facial challenges,

9   if it's a -- for example, the *Florida Star*, negligence per se,

10  the Supreme Court said that won't pass muster.  And that was a

11  facial challenge.

12          So I don't know that we can just kick the can down

13  the road here.

14          MR. ZUCKERMAN:  I do think that you would be able to

15  easily say whatever this is, it's not a strict liability

16  statute.  It's not a negligence per se like in *Florida Star*.

17  And whether it's negligence or whether it's some sort of

18  heightened purpose, some sort of specific intent, whether it's

19  either of those two things, it's not going to be facially

20  invalidated --

21          THE COURT:  But wouldn't I have to say that's -- to

22  say, well, it's not a strict liability statute, well, what is

23  it?

24          MR. ZUCKERMAN:  We think it's a negligence standard.

25          THE COURT:  I know.  But I would have to answer that,

```
 1   wouldn't I?  I can't say, well, it's not a strict liability
 2   statute and then just that's the end of the discussion.  That
 3   would be a rather unsatisfactory analysis, wouldn't it?  Well,
 4   it's not strict liability, I can't tell you what it is.
 5           MR. ZUCKERMAN:  Well, Your Honor, I think for a civil
 6   statute like this, it would be a totally satisfying answer than
 7   the Florida Star thing.  Because to me at least, the way I read
 8   those cases is the clear watershed is between the strict
 9   liability statutes and the statutes that embrace -- they're
10   civil at least, leave aside criminal where even negligence
11   would be a problem, but in civil where we are, having something
12   that's negligence all the way to purpose, all of those are okay
13   because all of those require something in the --
14           THE COURT:  We can move on.  But it just seems to me
15   I can't say, well, it's -- on what basis would I say that it's
16   not a strict liability statute, unless I had something to fill
17   the void?
18           MR. ZUCKERMAN:  I think there you would look to the
19   common law, you would look to the text.
20           THE COURT:  Well, that's right.  So I'd have to look
21   at the common law possibly and then I have to come up with a
22   standard.  I can't just say, well, the common law answers it
23   and then I say nothing more.  Not a strict liability, but
24   everybody in the future look at the common law and you figure
25   it out.
```

```
 1              MR. ZUCKERMAN:  I think you could note that the
 2   common law includes some variation between -- from negligence
 3   to higher forms of intent.
 4              THE COURT:  Okay.  I think I understand your
 5   argument.
 6              MR. ZUCKERMAN:  So, Your Honor, I just want to, I
 7   guess, I think close by saying that in a statute like Daniel's
 8   Law, I think Your Honor was 100 percent correct when you said
 9   that the argument that I've heard from defendants would really
10   prove too much.  There are always going to be ways for
11   defendants to poke holes in some sort of regime and say, well,
12   you haven't stopped people from going to the county deed office
13   and looking up the person's address in the, you know, in the
14   hard copy registry and therefore the address might still be
15   written down somewhere.  Of course that's true.  Addresses have
16   to be recorded somewhere.  We have to have a title system.
17              THE COURT:  Right.
18              MR. ZUCKERMAN:  We have to have a mortgage system.
19   But this is a very, very tailored statute.  We think it would
20   satisfy strict scrutiny for all the reasons already discussed.
21   We don't think strict scrutiny is the right standard.  We think
22   that whether you do it on the *Florida Star* standard, whether
23   you do it as commercial speech, content neutrality, this is
24   clearly not a law that's trying to meddle in the marketplace of
25   ideas.  The mine run of applications are not going to involve
```

1    any kind of matter of public significance and they're not going

2    to require anything like the level of least restrictive means

3    that I heard the defendants saying you would be applying.

4            THE COURT:  What about the fact that the statute

5    treats private entities differently than governmental entities,

6    governmental agencies?

7            MR. ZUCKERMAN:  So laws are permissibly allowed to do

8    that when the reasons make sense, and here there are good

9    reasons why those differences exist.  Again --

10           THE COURT:  What are those reasons?

11           MR. ZUCKERMAN:  So I'd have to go, I guess, point by

12   point.  But, for example, on the vendors, I think one of the

13   refrains I've heard a lot is that we allow ourselves to use --

14   to provide information to third parties and they can't transfer

15   the information to third parties, and that makes a ton of sense

16   because we can, first of all, regulate ourselves.  We are the

17   government.  And so we can work only with entities that we know

18   are trustworthy, we can monitor how those entities use the

19   information, and the government does have a need to be able to

20   conduct other businesses for the good of the public to be able

21   to occasionally work with vendors.

22           On the other side, it would be completely

23   unmanageable to have a loophole for business-to-business sales.

24   And I think you've seen actually other statutes called out for

25   having loopholes like that.  So it would be odd to say that we

1   should have had that kind of carve-out for business-to-business

2   transactions.  Because at that point once a company that's in

3   the business of selling huge tranches of data can just pass it

4   off to someone else, then you're basically playing Whac-A-Mole.

5   Because whenever you ask -- whenever the covered person -- when

6   Officer Smith says to Company A, hey, please stop disclosing

7   this, they've successfully gotten Company A to stop disclosing

8   it, but if Company A has already sold it to B, C, D, E, they're

9   going to have to chase after B, C, D and E and keep making

10  these requests until the cows come home.  So it doesn't really

11  work.

12          And I don't think they would actually want the level

13  of monitoring that it would require.  I think would probably

14  say that raises other constitutional problems that we can apply

15  to our own internal operations.  So I think that's one of the

16  key points.

17          They also raised our verification; that we verify

18  internally.  It's true that we don't subsidize their

19  verification of requests.  We don't think that we have to.

20  There are also really good reasons that we ourselves verify

21  requests.  Because when someone asks to be removed from public

22  documents by the government, it's usually going to affect their

23  other rights and privileges.  It might affect their

24  participation in the real estate market.  It might affect their

25  ability to sign petitions on matters of public concern.  It may

```
 1   affect their ability to receive relief in class action
 2   lawsuits.  There's all these other things that it's going to
 3   flow through to.
 4           THE COURT:  Well, the statute, does it permit
 5   somebody to remove the address from the Recorder of Deeds
 6   Office in the counties?
 7           MR. ZUCKERMAN:  So the statute permits you to -- just
 8   like you can go to the private entities and say, hey, please
 9   take my information down, you can also go to the public
10   agencies and say, hey, please redact my information.  You can't
11   have it removed from the Recorder of Deeds.  Somewhere there's
12   going to be a record that maintains the fact that you bought a
13   house.
14           THE COURT:  So could someone theoretically still go
15   into the Recorder of Deeds Office, say in Camden County or
16   Mercer County or Sussex County, and get the information even if
17   your name is supposedly removed or your address is removed from
18   public record?
19           MR. ZUCKERMAN:  The way I read the law basically, and
20   we haven't had a case that tees up this exact thing, the way I
21   understand the law is that that would be the one place that
22   there is some way you could obtain -- you could find the words,
23   the words of the address because there is somewhere going to be
24   that physical deed recorded in a hard copy location.  But,
25   again, the government doesn't have to forestall every possible
```

```
1    eventuality.
2              THE COURT:  Right.  I understand.
3              MR. ZUCKERMAN:  That's Williams-Yulee, just as Your
4    Honor mentioned it.
5              THE COURT:  Yeah.
6              MR. ZUCKERMAN:  It's way easier to Google someone
7    than to go and find what county they live in and then go to a
8    government office.  If you're trying to stalk someone, I'm not
9    sure you're going to be doing that.
10             THE COURT:  How do the voter registration lists work
11   in New Jersey?  In other words, there obviously have to be
12   voter registration lists with addresses, so there's some
13   identification of the individual; that they're voting in the
14   proper precinct and that they're whom they say they are.
15             Is there a statewide voter registration list so if
16   somebody wanted to find out how Mr. X -- whether Mr. X is
17   registered to vote in, say, Camden County, can you go somewhere
18   in New Jersey and look that up and get the name?  And of
19   course, there would be the address of the person too, of
20   course.
21             MR. ZUCKERMAN:  There wouldn't be, assuming if -- so
22   I do want to be clear --
23             THE COURT:  I just know how that works in New Jersey,
24   the voter registration.
25             MR. ZUCKERMAN:  The Legislature did take care of
```

1    that.  That's not a source of underinclusivity.  There are

2    protections around that kind of information.  So if someone

3    goes, just like they go to the private company and says, hey,

4    please take my information down, they go to the state and they

5    say hey, please redact my name from the voting books, someone

6    should not be able to obtain their address, their street

7    address from the voting information.  It would show up

8    redacted.  There are also sometimes alternate poling locations.

9    This isn't just actually for law enforcement officers and

10   judges.  Victims of domestic violence can also invoke some

11   protections to be able to have their addresses obscured, and I

12   think, again, you can understand why the Legislature would want

13   to protect that kind of information.

14           THE COURT:  Sure.

15           So if someone -- I don't know what the agency is in

16   New Jersey, whether it's a statewide agency or whether it's

17   done by county -- wanted to find out whether a particular

18   person was registered to vote, we'll just pick Camden County

19   because we're sitting in Camden County, wanted to know if a

20   certain person was registered to vote, could a stranger just

21   walk into the appropriate office in Camden County and say is

22   Mr. X or is Judge Y registered to vote?  We know she's a judge

23   in Camden County, so presumably lives there, and look it up and

24   say I want to know if Judge X is registered to vote.

25           MR. ZUCKERMAN:  So as I stand here, I don't know

```
 1   exactly how that would play out, but I can tell you how I think
 2   that would go.  I don't think they could get Judge X's street
 3   address.  I do think someone who said I'm a reporter or I'm
 4   not, I just want to know for public reasons whether this person
 5   is registered to vote here or not, they could get the basic
 6   information.
 7            THE COURT:  Right; that the person is registered.
 8            MR. ZUCKERMAN:  They're in that county, yeah.  They
 9   can understand the basic geographic fact that the person is
10   registered in that county or maybe even they live in that town.
11   I don't think they could find out, oh, Judge X lives at 123
12   Main Street.  That's what the law protects against.
13            THE COURT:  From the voter registration lists.
14            MR. ZUCKERMAN:  Again, Your Honor, I'm not a total
15   expert on the voting registration so I don't know exactly what,
16   you know, over request what would be just showing up and
17   asking.  But I don't understand Daniel's Law to in any way
18   prevent someone from figuring out --
19            THE COURT:  Right.
20            MR. ZUCKERMAN:  -- so-and-so's not registered here or
21   they are registered here or, oh, they don't live in that town.
22   All of that stuff would be fair game.  It's the street address
23   that's, you know, they're at 123 Main Street or 456 Main
24   Street, that's what's off limits.
25            THE COURT:  Okay.  All right.
```

| | |
|---|---|
| 1 | MR. ZUCKERMAN:  Thank you, Your Honor. |
| 2 | THE COURT:  All right.  Hear rebuttal.  Anybody? |
| 3 | REBUTTAL ARGUMENT |
| 4 | MR. DEGER-SEN:  Thank you, Your Honor.  I just want |
| 5 | to make four quick points. |
| 6 | The first one is about this negligence per se issue, |
| 7 | the strict liability issue.  You're absolutely right, Your |
| 8 | Honor, the Supreme Court has never upheld a statute that |
| 9 | suppresses speech in any context that has no mens rea |
| 10 | requirement, and the reason -- it is certainly not truthful |
| 11 | speech, and *Florida Star* explained this. |
| 12 | THE COURT:  Well, does it have to be -- it could be |
| 13 | negligence, couldn't it?  Or does it have to be -- in other |
| 14 | words, they struck down some strict liability no-fault |
| 15 | statutes, but have they ever said what the standard has to be? |
| 16 | MR. DEGER-SEN:  Well, so in *Florida Star* the Court |
| 17 | has this observation, which is that the negligence per se |
| 18 | standard would mean that the perverse results is the truthful |
| 19 | publications challenged pursuant to this cause of action are |
| 20 | less protected by the First Amendment than even the least |
| 21 | protected defamatory falsehoods. |
| 22 | And then if you look to the defamation cases like |
| 23 | *Gertz*, for something like presumed damages, which is like what |
| 24 | this is, liquidated damages, the standard is recklessness, so |
| 25 | higher than negligence.  And that's for completely unprotected |

 1    speech.

 2            In the criminal context for true threats, *Counterman*

 3    says the standard needs to be recklessness.  So even in the

 4    context of unprotected speech, let alone truthful protected

 5    speech, the Supreme Court has said you need to have at least,

 6    for something like presumed damages like this, recklessness,

 7    not just negligence.

 8            So the fact that they want to stand on negligence,

 9    that makes the statute unconstitutional.  The Supreme Court has

10    never upheld a statute like that.

11            I will add that this statute does not have any

12    mens rea requirement.  I mean, where they're getting this from

13    is the phrase in the statute "upon notification, pursuant to

14    paragraph 2 of this subsection, and not later than ten business

15    days following receipt thereof."  I think what they're trying

16    to say is there's a negligence -- there's a mens rea

17    requirement because you have to have received the notification.

18            But as Your Honor's hypothetical pointed out, there

19    are lots of situations where there can be no fault whatsoever

20    and you've received the information.  And just to use three

21    examples, it could be on the mailroom floor because someone had

22    posted it over the holidays and no one was in the office.

23            THE COURT:  Right.

24            MR. DEGER-SEN:  They could -- because there's no

25    verification requirement in the statute.  There could be two

1  John Smiths, and you receive a notice -- a takedown request,

2  and you do everything, you sincerely believe that you've taken

3  down John Smith's information but you got the wrong John Smith,

4  and that could be completely reasonable, and they sort of say

5  reasonableness should be the standard, but that's not the

6  statutory standard.  It says "receipt."

7         And then another example is, you can make your

8  absolute best efforts, like you can receive this information

9  and do everything you can to take something down in ten days.

10  They say the statute applies to high-tech data brokers.  We

11  have clients here who ship postcards.  This statute applies to

12  everyone.  There are tons of small enterprises that may

13  disclose information, may need to for their business purposes,

14  and when they receive a takedown request, it might just not be

15  possible for them to go through every single database they

16  have, go through everything they have and make sure they don't.

17         This statute imposes liability in all of those

18  situations.  That is negligence per se.  That is no fault.  And

19  so that I think under Your Honor's, you know, correct statement

20  about the Supreme Court precedent makes this statute

21  unconstitutional.

22         I think the correct -- sorry, Your Honor.

23         THE COURT:  Go ahead.

24         MR. DEGER-SEN:  I think the correct results in that

25  situation, as the Supreme Court has done, is to say the statute

1    is unconstitutional, and so the Legislature should go back and

2    write whatever it thinks the correct standard of fault is, as

3    in this Court probably should not be in the business of just

4    adding terms to the statute.  But if it is something that the

5    Court wants to do, you're, again, absolutely right, Your Honor,

6    you can't just pick it out of thin air.  The closest it can get

7    is something like the common law.  And as you point out, there

8    is no common law privacy tort that doesn't require intentional

9    conduct.

10           THE COURT:  Well, I think that's not quite right.

11           I think some states, invasion of privacy is

12   considered a negligence tort as opposed -- but most places I

13   think it's an intentional tort.  And to the extent that I

14   looked into it, I think New Jersey considers it an intentional

15   tort.

16           And if that's so, the common law would require you

17   could construe the statute, could you not, to require intent

18   before there's liability.

19           MR. DEGER-SEN:  I think, at a minimum, you would have

20   to do that.  But the way the Supreme Court has operated is it

21   doesn't do that.  It just strikes down the statute and allows

22   the Legislature to do that.  I think at a minimum you would

23   need to do that.  Because otherwise, just as the Supreme Court

24   said in *Florida Star*, it would mean that protected speech,

25   fully truthful information is being subject to a lower standard

```
1    than unprotected speech.

2              THE COURT:  Yeah.  But those cases got to the Supreme

3    Court before any lower court construed the statute to provide

4    for a fault-based liability.

5              So, in other words, the Supreme Court never said that

6    a trial court could not construe the statute so as to

7    incorporate the common law of the state which would require an

8    intent or negligence or something of that kind.  I've never

9    seen a case that did that.  You would agree with that?

10             MR. DEGER-SEN:  I agree with that, Your Honor.  The

11   Supreme Court often does, for constitutional avoidance reasons,

12   construe, you know, construe statutes in certain ways.  For

13   example, in immigration --

14             THE COURT:  To avoid the constitutional issue.

15             MR. DEGER-SEN:  Right.  Exactly.  I presume that's, I

16   think, what you would be doing in this situation.  You would be

17   trying to avoid the constitutional issue by construing the

18   statute, to have an intent element.

19             THE COURT:  Right.

20             MR. DEGER-SEN:  The Supreme Court does do that in the

21   first instance in the Zadvydas case, for example.  Justice

22   Breyer's opinion in the immigration context construed a time

23   limit on the amount of detention of the statute.

24             THE COURT:  Right.

25             MR. DEGER-SEN:  And so the Supreme Court does do
```

1    that.  I think it's telling, it's never done that in this

2    context.  In the First Amendment context, it basically says --

3              THE COURT:  So, I guess if the Supreme Court could do

4    it, we could do it, too.  Is that right?

5              MR. DEGER-SEN:  Well, yeah.  I don't think the

6    Supreme Court has less power to do it than you here, Your

7    Honor.

8              So I think -- the idea is I think the Supreme Court

9    doesn't want to add, you know, new terms and requirements into

10   the statute.  So I think that the appropriate course is to say

11   the statute is unconstitutional.

12             But, absolutely, you're correct, Your Honor, that if

13   this Court is going to add an intent requirement, it has to be

14   intent, it has to be intentional, because that at least matches

15   up with the common law, and it creates -- it reduces the

16   anomaly of having a situation where protected speech, truthful

17   speech is somehow protected less.

18             THE COURT:  Right.

19             MR. DEGER-SEN:  And so the only way to avoid that

20   anomaly is to have an intent requirement in the statute.

21             I would also point out that we haven't -- you know,

22   this has not been a big focus of the briefing.  So if this

23   Court wants supplemental briefing just on the specific intent

24   issue and how to construe the statute to avoid the

25   constitutional problems, we're absolutely happy to provide that

```
 1    briefing.  And I'm sure the other side would be, too.
 2              THE COURT:  Right.
 3              MR. DEGER-SEN:  So that's on the -- do you have any
 4    other -- I just want to make sure before I move on to something
 5    else.
 6              THE COURT:  Go ahead.
 7              MR. DEGER-SEN:  So just three other very quick points
 8    that arose.  So one is on this question of this sort of
 9    gateway, where we started the discussion about, you know,
10    should we go the Florida Star route or should we go the strict
11    scrutiny tailoring route.
12              THE COURT:  Right.
13              MR. DEGER-SEN:  And, Your Honor, I just want to point
14    you to one case because I think it's very helpful in framing
15    this, which is the Third Circuit's Schrader decision from last
16    year.  That's 74 F.4th 120 from 2023.
17              THE COURT:  Right.
18              MR. DEGER-SEN:  It's very helpful because actually
19    that involves a privacy statute situation.  The question was
20    whether you were allowed to willfully release information in
21    the statewide child abuse database.
22              THE COURT:  Right.  Right.
23              MR. DEGER-SEN:  So it's a privacy case.  And the
24    Court lays it out very nicely.  It says there are two lines of
25    doctrine here.  There's the Florida Star line of doctrine.
```

1   There's the strict scrutiny line of doctrine.
2               THE COURT:  Well, that doesn't help me, does it?
3               (Laughter.)
4               MR. DEGER-SEN:  But it does say, Your Honor, that
5   both can be applicable.  Both can be applicable.
6               THE COURT:  I thought it said we didn't have to
7   decide one way or the other.
8               MR. DEGER-SEN:  Exactly, because --
9               THE COURT:  So they were able to punt.
10              (Laughter.)
11              MR. DEGER-SEN:  Exactly, because -- because it was
12  unconstitutional under both lines of doctrine.  And I do think
13  though if this Court believes this is constitutional under the
14  *Florida Star* line, it still has to, just as the Court in
15  *Schrader* did, analyze it under the strict scrutiny line.  So
16  that's all I'll say about -- I don't want to rehash the strict
17  scrutiny stuff.  And then I think we rest on our briefs as to
18  the strict scrutiny arguments.
19              But I do think, you know, the question that you had
20  at the beginning which was, is it possible for me, given that
21  this is an asserted privacy interest, to apply the strict
22  scrutiny line.  I think binding Third Circuit precedent says
23  you can and that you should, and you could apply both, but I
24  don't think you should just choose one of them.  I don't think
25  that's the logic of *Schrader*.

1           Third, just quickly on the *Williams-Yulee* case.  So

2    *Williams-Yulee* does specifically note that it was not a

3    situation where the statute was riddled with exceptions.  That

4    is a line from the case.  And that's because the exception that

5    it was -- or the situation it was --

6           THE COURT:  Well, yeah.  But it just had -- it was

7    very limited.  You're talking about the *Williams-Yulee*, yeah,

8    it was very limited.  And the whole idea was to, I guess,

9    insulate judges and judicial candidates from -- well, the whole

10   problem with election of judges, which you don't have in New

11   Jersey, it was to avoid unseemly conduct and conflict of

12   interest where a judge is getting a contribution from a lawyer

13   and would the judge tend to be more favorable toward a lawyer

14   who contributed than one who didn't?  And the statute clearly

15   didn't solve that problem because it didn't require recusal of

16   lawyers -- or the judge in the case where the lawyer made a

17   contribution.

18          All it did was say that the candidate couldn't

19   solicit the lawyer for money.  But they're all -- but the whole

20   system was such that the candidate would know who contributed

21   because they could write "thank you" notes and you could get a

22   committee to obtain contributions from lawyers, and there's

23   nothing to prevent the candidate from talking to the committee,

24   who's giving and who isn't giving.  So, I mean, it really -- it

25   only went a short way in solving the problem.  But yet the

```
 1   Supreme Court upheld the Bar regulation.
 2            MR. DEGER-SEN:  And I think the reason, as the
 3   Supreme Court explained, is that the problem the Legislature
 4   had identified was personal solicitation.  So even if there
 5   were other ways in which politics might seem unseemly or even
 6   if there were other ways in which people could donate, such as,
 7   for example, through a political action committee, the big
 8   problem that Legislature said was that it was particularly bad
 9   when you had personal solicitation, and this did solve that
10   problem.
11            Now, it might not solve other related problems.  It
12   might not solve the broader problem of the unseemliness of
13   politics in general.
14            THE COURT:  Well, that's what the argument is about
15   Daniel's Law.  It doesn't solve all the problems, but it goes a
16   long way.  Because we know in the case that precipitated the
17   passage of the statute, the address of the judge was obtained
18   on the Internet.  And there are other cases where that has
19   happened.  That isn't a unique situation.
20            MR. DEGER-SEN:  But --
21            THE COURT:  More common than assailants going to the
22   local Recorder of Deeds Office and getting an address.  I've
23   never heard of that situation.  Maybe it's occurred.
24            MR. DEGER-SEN:  Right, Your Honor.  So -- but I do
25   think that it's a bit like in *Williams-Yulee*, if they buy
```

```
1   personal solicitation at the doorstep but not personal

2   solicitation over email.  And then it would really make no

3   sense to say your goal is personal solicitation.  Here they're

4   saying to prevent this information coming out, we're going to

5   stop private companies from sending these addresses to private

6   vendors.  No disclosure at all, just another private vendor.

7   And then they do -- with respect to the government they say,

8   but the government can send that exact same information to that

9   exact same private vendor.  And so that is I think much closer

10  to the doorstep versus email solicitation.

11          If you really believe the personal solicitation is a

12  problem in this way, you can't allow it in that way.  And I do

13  think that is the nub of the underinclusive analysis.  I also

14  think it's not -- you know, as the Supreme Court has made

15  clear, it's not just underinclusiveness, it's also

16  overinclusiveness.  So just because a statute -- you know, a

17  statute could be not underinclusive at all.  This is, I think,

18  Packingham, for example, but it could be overinclusive.  It

19  just sweeps in way too much speech.  And that's an independent

20  problem.  So even if there's no underinclusiveness problem --

21          THE COURT:  Right.  This statute sweeping too much or

22  too little.  It can't be both.

23          MR. DEGER-SEN:  Well, I think that's the tailoring.

24  It often is both.  It often is both.  That's how the Supreme

25  Court looked at it in Stevens, in Brown, you know, and in
```

1    *Florida Star*.  It's frequently both, but it doesn't have to be

2    both.  And here, at a minimum, we have overinclusiveness.  We

3    have it sweeps in way too much speech, speech that's completely

4    unnecessary.

5           And you mentioned that is a great example, that they

6    found this information on the Internet.  But this statute

7    doesn't even have an Internet nexus.  We have these clients

8    here who ship postcards.  You know, why are they even within

9    the sweep of the statute?  There are so many provisions of the

10   statute that is so far afield from that interest that it's too

11   overinclusive, and that's an independent constitutional

12   problem.

13          And the final thing very quickly, I'll say, I know

14   we've been here a long time, is about the public interest

15   element.  And that's that, you know, there are lots of public

16   interest reasons why people might really want to know this

17   information.  I'll just give you another couple.

18          THE COURT:  But isn't that really, as we said

19   earlier, that's a constitutional as-applied issue, isn't it, or

20   unconstitutional as-applied issue?

21          MR. DEGER-SEN:  I'm not sure, Your Honor.  And this

22   is the reason why.  So to use these two examples, you know, it

23   might be that someone might, you know, find out when the

24   information is out there that someone has, you know, lives in

25   an address which is a huge, giant house, and that makes no

1    sense as a public servant, so maybe he perhaps is taking bribes

2    and you can start the investigative process about that.  Or

3    maybe someone has three or four phone numbers and maybe that's

4    suspicious, and that could be the basis for the investigative

5    process again.

6              And the reason for all of that is when you have

7    public servants, information about them is itself something

8    that could start the process of figuring out, you know,

9    important things about them.  And it's not really -- you know,

10   you can't know how it's all going to end.  You can't sort of

11   know you're going to need this information for this particular

12   public interest.  But that's why when it's true information,

13   when it's -- you know, and the courts have been incredibly

14   reluctant to say, well, we're going to suppress that because

15   you never know what your information leads you.  The First

16   Amendment allows people to have true information and to use it

17   how they want to use it, and it allows the government to

18   suppress it only when it is narrowly tailored in the least

19   restrictive means.  This is neither narrowly tailored, nor the

20   least restrictive means.  We know that from all of the other

21   statutes.  We're not saying there's no way to regulate here,

22   but they don't have to do it in this incredibly extreme and

23   overbroad fashion.

24              THE COURT:  All right.  Thank you.

25              MR. DEGER-SEN:  Thank you, Your Honor.

1          THE COURT:  Anyone else for the defendants?

2          (No response.)

3          THE COURT:  Anything else for the good of the Order?

4    Yes, sir.

5          MR. PALMER:  I just have a few quick points to make.

6          THE COURT:  All right.  That's fine.

7          MR. PALMER:  Thank you, Your Honor.

8          So, Your Honor, I wanted to address the point about

9    the elements of the statute once again and how it can be

10   reconciled with the common law and to make a couple points

11   about *Florida Star*.

12         So to begin with, I wanted to note, Your Honor, that

13   *Florida Star* did not involve a facial challenge.  It involved

14   an as-applied challenge.  And at the end of the opinion, the

15   Court says that it decided that the statute is unconstitutional

16   as a means of imposing liability under the facts of this case.

17         And that's because the *Florida Star* standard is

18   inherently as applied, because it requires a case-specific

19   judgment of whether each disclosure involves speech on a matter

20   of public concern.

21         THE COURT:  Yeah.  But didn't the Court also take

22   issue with the statute itself because it was a negligence

23   per se statute?  So there's no way in the world that it would

24   ever have sustained any liability under that statute.

25         MR. PALMER:  Right.  But under the *Florida Star*

1   standard, you only get into the question of whether there's a

2   state interest of the highest order, and the statute is

3   narrowly tailored as applied in punishing that person for that

4   disclosure once you've established that that speech is not a

5   matter of public concern.  Otherwise you're in a territory

6   where the individual's privacy interest justifies imposing

7   liability.  Because we're dealing with low-value speech.  And

8   the whole point of the *Florida Star* statute -- standard is to

9   avoid just invalidating privacy torts whenever --

10          THE COURT:  Well, that wasn't low-value speech, was

11  it?  *Florida Star* was highly significant to the public.

12          MR. PALMER:  Right.

13          THE COURT:  The name of the rape victim --

14          MR. PALMER:  Absolutely, there, which is why it's

15  critical to the Court's holding that it was speech on a matter

16  of public concern.

17          THE COURT:  Right.

18          MR. PALMER:  In other instances like, for example,

19  the D.C. Circuit's *Transunion* case, they say names, addresses

20  and credit reports.  That's not speech on a matter of public

21  concern.  And the Court says that under a *Florida Star*-type

22  analysis, that speech is not subject to strict scrutiny.

23          And the same is true in a variety of cases cited in

24  our brief.  The *Dun & Bradstreet* case from the Supreme Court

25  applies this in a context of defamation as well.

1          THE COURT:  We also didn't have any discussion of

2     whether this was content neutral or content based.  Your

3     position is it's content neutral?

4          MR. PALMER:  We do take that position.  Though we

5     think that under the *Florida Star* standard, it doesn't even

6     matter, because the statute, as I noted the last time I was up,

7     forbid disclosing names and addresses of victims of sexual

8     assault.

9          Defendants' view is if you regulate names and

10    addresses, your statute is content based, and that would mean

11    *Florida Star* should have applied strict scrutiny rather than a

12    test tailored to address whether the speech is --

13         THE COURT:  Well, I'm not sure about that, because,

14    again, I think the Court has set a different standard on

15    privacy statutes.  They don't use the term "strict scrutiny."

16         MR. PALMER:  I agree.

17         THE COURT:  At least in the cases I looked at.  Maybe

18    in other cases they have.  Anyway.

19         MR. PALMER:  I agree with that, it's not strict

20    scrutiny.

21         THE COURT:  I don't see why it wouldn't be content

22    based if we're talking about the name and address of

23    individuals.

24         MR. PALMER:  Right.

25         THE COURT:  That's not content neutral.

1          MR. PALMER:  Your Honor, we'll preserve our argument

2     on that based on *City of Austin*.  But, you know, I think the

3     real point is --

4          THE COURT:  I don't think the City of -- that case

5     regulated signs, the size of the sign, whether it could be

6     illuminated, and that sort of thing.

7          MR. PALMER:  Sure.

8          THE COURT:  It didn't -- it had nothing to do with

9     the content.  The Court said there the content was agnostic.

10     So I don't know that that case really applies here.

11          MR. PALMER:  Well, Your Honor, I -- I would rather

12     emphasize now that under *Florida Star*, the key question is not

13     whether the statute is content based.  If it's a privacy

14     statute, we apply a framework where a threshold question is

15     whether the statute regulates speech on a matter of public

16     concern.

17          In the overwhelming majority of applications, this

18     statute does not regulate speech on a matter of public concern,

19     which means it creates a facially legitimate privacy tort.

20          THE COURT:  Right.

21          MR. PALMER:  And that is game over, in our view.

22          But I wanted to say something about the elements

23     issue, because it occurred to me that, Your Honor, the statute

24     does involve an intent requirement with respect to the

25     disclosure or redisclosure element.  So this really is an

```
 1   intentional tort.
 2            They have to disclose the information during the
 3   intentional act, then they have to give a notice that at least
 4   puts them in a position where they would be negligent if they
 5   didn't respond to that because it gives them notice of a duty.
 6            THE COURT:  Well, now, see, you're conflating again
 7   intentional tort with negligence.  There are two different
 8   concepts here.  It's either one or the other.  Go ahead.
 9            MR. PALMER:  I would say it's intentional with
10   respect to the act of disclosure and then it's negligent after
11   that.  But *Florida Star* nowhere says that ordinary negligence
12   is an inappropriate standard.
13            THE COURT:  I agree with that.  It just says that
14   negligence per se won't do it.
15            MR. PALMER:  Right.
16            THE COURT:  And it was a no-fault statute.
17            MR. PALMER:  Right.  And I think that resolves that
18   issue.  And then --
19            THE COURT:  Still, the question is, what is the
20   standard?
21            (Laughter.)
22            THE COURT:  Which we don't have to go over that
23   again, but we've talked about that.
24            MR. PALMER:  Right.  But we just want to note, it
25   is -- it does still have the critical ingredient of an
```

```
 1    intentional sort similar to the public disclosure, giving

 2    publicity to public facts tort.

 3              THE COURT:  Right.

 4              MR. PALMER:  Which is different in how it's

 5    intentional than an intrusion upon seclusion tort.  And this

 6    statute in many ways, though it has parts of both of those

 7    privacy torts in its sort of thinking behind it, that's, in

 8    many ways, the closer analogy.

 9              And I wanted to sort of note further that the

10    Schrader case they bring up, it said we don't have to figure

11    out which of these applies to this statute.  I think the Court

12    there was concerned that Reed vs. Town of Gilbert had created

13    this idea that content based automatically means strict

14    scrutiny regardless, and they didn't want to confront the

15    question.

16              But Bowley, the Third Circuit case that Whitepages

17    has emphasized, already did apply this to what according to

18    defendants would be a content-based statute involving reporting

19    of information about a juvenile's criminal record.

20              So there's already a Third Circuit precedent that

21    says on a statute like this, you should be applying the Florida

22    Star-type framework and not the content-based in terms of

23    scrutiny framework.  That's our view.

24              THE COURT:  Right.

25              MR. PALMER:  And then finally, I want to note they
```

```
 1   tried to get around Williams-Yulee vs. Florida Bar by saying
 2   that we have both underinclusivity and overinclusivity problems
 3   here, and they made an argument for why the statute is
 4   overinclusive is to say that it doesn't have an Internet nexus.
 5   I want to note again, their Publius case, as well as Florida
 6   Star itself, take issue with statutes as underinclusive because
 7   they don't cover methods of disseminating sensitive information
 8   other than publication.
 9          In Florida Star, the Court says the statute is
10   underinclusive because it doesn't reach gossip and other
11   informal ways that that kind of information can spread through
12   the public.
13             THE COURT:  Right.
14             MR. PALMER:  Daniel's Law doesn't have that problem.
15             THE COURT:  Pretty hard to regulate gossip.
16             (Laughter.)
17             MR. PALMER:  Right.  Indeed it would be.  And
18   Daniel's Law maybe has a gap on that because you need to have a
19   ten-day period with the request and so forth.  But the statute
20   is designed to cover business-to-business transfers, and
21   properly so, to deal with precisely the kind of
22   underinclusivity problem that their cases identified with
23   similar statutes.
24             THE COURT:  All right.  Thank you.
25             MR. PALMER:  That's all I got.
```

```
 1              THE COURT:  Anyone else have anything to say before
 2    we --
 3              MR. PARIKH:  Yes.  Your Honor, just need to add two
 4    things for my colleague, very, very briefly.
 5              THE COURT:  All right.  Go ahead.
 6              MR. PARIKH:  First, Your Honor, just to zoom out for
 7    one second, the type of speech here, it's not names.  It's just
 8    the home address and the unpublished home phone numbers.  So if
 9    the data brokers wanted to publish --
10              THE COURT:  No, no, no, no.  It's -- you're right.
11    But this, the reason why it's, it seems to me, content-based
12    because it attaches the name to the home address and phone
13    number.  If a company just wants to publish every address in
14    the city of Camden or every unlisted phone number in Camden
15    just maybe to a mass marketer who wants to send something to
16    everybody, that's quite different than what we have here.
17              MR. PARIKH:  I understand that, Judge, right.  And I
18    understand that, Your Honor.
19              And look, at the end of the day, all we're asking,
20    and all the plaintiffs are asking the defendants to do are
21    something that pretty much every single one of them offers to
22    do on their website anyway, right.  You've seen it in the
23    briefs that they have you should go through our opt-out
24    pathway, we'll remove your information.  You know, I really
25    want to point that out, because we are literally asking them to
```

1  do what they already offer publicly to do for anyone, because

2  they are regulated by California and other jurisdictions around

3  the country where tens of millions of Americans have the

4  ability under their own state privacy laws to request that this

5  information be removed.

6          I also want to point out, I know Your Honor had asked

7  some questions of the Attorney General about why the state is

8  treated differently, and I want to zoom out again there as

9  well, Your Honor.

10          Daniel's Law, which everyone refers to kind of

11  colloquially as one law, really is a modification by the

12  Legislature of three separate, distinct statutes.  The first

13  which deals with government records is Title 47, which is New

14  Jersey's Open Public Records Act.  The statute that the

15  plaintiffs here have sued under is Title 56, which is the

16  Unfair Trade Practices Act.  And then there's a third component

17  that we don't talk about much in this litigation, which is

18  Title 2C, which is a criminal code.

19          And so when we talk about that and we talk about why

20  the government is provided more time, you can actually see by

21  looking at the legislative history with how much the

22  Legislature struggled with how to deal with government records,

23  and the reason for that is that the private data broker

24  defendants here are very different than the government of the

25  state of New Jersey.

1    If I as a covered person send a takedown notice to a

2  data broker, they go to their one or two or maybe even ten

3  websites or systems that that company has and they remove the

4  information.

5    The government of New Jersey is not a monolith.

6  There are almost 700 different school districts in New Jersey.

7  There are 564 towns after -- it was 565, but the two Princetons

8  decided to merge.  There are 21 counties.  There are thousands

9  of government agencies.  And I think the best illustrative

10  point to that, Your Honor, is that the governor of the state of

11  New Jersey has the ability to appoint more people into

12  positions than the President of the United States.

13    So when we talk about the vastness of the government

14  of New Jersey, it is not one place that has to be redacted for

15  that one individual covered person.  It is thousands of

16  different places.  And the solution that the Legislature put in

17  place in their third iteration of Daniel's Law was to actually

18  create, for better or for worse, a whole new government office,

19  the Office of Information Privacy, to actually manage that

20  process.

21    So when we talk about the state having 30 days as

22  opposed to ten business days for one private data broker is

23  because we're talking in the governmental purpose of having to

24  go to thousands of different data systems, managed by thousands

25  of different people, different IT systems, et cetera, it's not

```
1    just a push of one button.  And so that extra time is to make
2    sure that those protections are in place.
3           In addition, once a covered person requests redaction
4    of their information from government records, their deed, their
5    mortgage information, it is not supposed to be publicly
6    available, and it should not be publicly available.  And the
7    government institutions have the obligation to redact that
8    information from public access.  There are exceptions built
9    into the law, which I know the defendants spent much time
10   talking about.
11          THE COURT:  Right.
12          MR. PARIKH:  But those exceptions are because we live
13   in a civil society.
14          THE COURT:  Right.
15          MR. PARIKH:  The government has to have access to
16   certain information, as Your Honor mentioned earlier.
17          Finally, just the last point, Judge, that I will
18   make -- two, I'm sorry, two last points.  One is on
19   business-to-business transfers, I want to point out that in two
20   specific circumstances, the murder of Danny Anderl and also the
21   murder of Judge Wilkerson -- Wilkinson, excuse me, in Maryland,
22   which is about a year ago.
23          THE COURT:  Right.
24          MR. PARIKH:  In both of those cases, the murderers
25   were business owners, right.  In the case of Danny Anderl, it
```

```
 1    was a lawyer who had a law firm in New York.

 2              THE COURT:  Right.

 3              MR. PARIKH:  Which law firms in New York either have

 4    to be registered as a sole proprietorship or as a law firm with

 5    the state.

 6              And in Judge Wilkinson's case, the person was

 7    actually the owner of a data and digital marketing business,

 8    which is the exact example the defendants use here of some

 9    business-to-business transfer that may be okay.  And so when we

10    talk about business-to-business restrictions, you know, it's --

11    the idea of restricting those is because to prevent these types

12    of tragedies.

13              There are other judges in this district who have had

14    issues with business owners that have been litigants before

15    their Court who have threatened to kill them, and those people

16    were arrested, prosecuted by the U.S. Attorney's Office and put

17    in jail.  There was one in late 2020.  I can give Your Honor

18    the exact name of that person, which was William Cates, who

19    threatened a judge.  A gun was found in his home, but he was

20    luckily arrested and prosecuted before any harm could befall

21    the judge.  And this is an individual who posted the judge's

22    home address on social media.

23              With respect to the last point, Your Honor, just -- I

24    think counsel for defendants mentioned, you know, they have

25    this problem, well, what if they identify the wrong John Smith.
```

1    But every covered person in the cases here provided the

2    specific information that they wanted redacted.  They said, I'm

3    a covered person, my name is John Smith and I live at 123 Main

4    Street and please accept this as a takedown notice pursuant to

5    Daniel's Law.

6          So the defendants were already provided with the

7    information.  And perhaps this gets into an as-applied arena,

8    but were already provided with the information of this is the

9    person's name and this is the information that they wish to

10   have redacted in every single instance of notices that were

11   provided and received here by the defendants.

12         THE COURT:  All right.

13         MR. PARIKH:  That's all I have, Your Honor.  Thank

14   you.

15         THE COURT:  Thank you.

16         Now, we've talked a little bit about strict liability

17   and someone mentioned maybe filing supplemental brief.  I'll be

18   happy to receive any supplemental brief on the issue of strict

19   liability and under the statute within ten days.  So that would

20   be October 11th.  No briefs should be longer than 10 pages.

21   And anybody that wants to file one, I'd be happy to receive it.

22   And no reply briefs, just each side, everybody gets one brief,

23   one bite at the apple.

24         All right.  Is there anything else we need to do on

25   this subject today?

```
 1              (No response.)
 2              THE COURT:  Before we leave, two things.  Mr. Stio, I
 3    received a letter from you on September 27th dealing with
 4    certain discovery issues.  We're not going to deal with those
 5    today.  But I will be happy to come in here 1:30 on Thursday.
 6    So anybody who wants to appear and discuss the contents of your
 7    letter at that time, unless it can be resolved.
 8              MR. SHAW:  Your Honor, we had worked with Mr. Stio
 9    and think it's resolved.  But hopefully we'll be able to get
10    consent from him that it's resolved regarding the discovery
11    issue.
12              MR. STIO:  Your Honor, what letter are you referring
13    to?
14              THE COURT:  Your letter of September 27, 2024.
15              MR. STIO:  Oh, Your Honor, we resolved that issue.
16              THE COURT:  Oh, it has been?  Very good.  I won't
17    visit with you on Thursday.
18              Finally, when anybody has a sealed document, if you
19    could send it to us with a PDF as well as a hard copy, all
20    right.
21              MR. PARIKH:  Your Honor, may I ask one housekeeping
22    question on the sealing issue?
23              THE COURT:  Sure.
24              MR. PARIKH:  So in this case the defendants filed
25    their consolidated brief on the motion to dismiss, the facial
```

```
 1   challenge, in the Lightbox case.
 2              THE COURT:  Right.
 3              MR. PARIKH:  And they had attached some records that
 4   they had filed under seal.  We filed a motion to seal in that
 5   docket only, but there are multiple defendants who filed
 6   letters joining in that brief, they're not actually filing the
 7   sealed records on other dockets.  So, you know, out of an
 8   abundance of caution, we didn't want to overload the Court with
 9   75 motions to seal that are identical.
10              THE COURT:  I'm glad.
11              MR. PARIKH:  Right.  Wanted to make sure.
12              So what we did, Your Honor, was in the proposed
13   order, we just put the caption of all of the cases, assuming
14   that if anything goes up on appeal or whatever it may be, that
15   that will all then just be translated, and I want to make sure
16   that was okay with the Court.
17              THE COURT:  Right.  That's fine.
18              MR. PARIKH:  Thank you, Judge.
19              THE COURT:  Mr. Stio.
20              MR. STIO:  Your Honor, yes.  Second, there was two
21   letters that we filed.  There was one from September 27th and
22   then there was a response on September 30th.
23              THE COURT:  Well, I -- yeah.  Is that the one -- I
24   thought you worked out -- this is the --
25              MR. STIO:  Dealing with the lists.
```

1          THE COURT:  Yeah.

2          MR. STIO:  That wasn't worked out.  There was one

3     before that.  That issue was not worked out.  So we can -- I'll

4     confer with them before Thursday, but we can appear --

5          THE COURT:  All right.  What I'll do is I'm planning

6     on being here 1:30 on Thursday in this courtroom to deal with

7     your -- I don't have the docket number on the copy that I have,

8     but it has attached Exhibit A.  That's the one?

9          MR. STIO:  Correct.

10         THE COURT:  Okay.  So if you could work it out, fine,

11    let me know before, by 11:30 on Thursday.

12         MR. STIO:  Thank you, Your Honor.

13         THE COURT:  So I won't be coming over here.

14         If you can't, I'll be here to deal with it.  I'm not

15    going to deal with that this afternoon.

16         MR. SHAW:  Thank you, Your Honor.  I just want to

17    note that we did file a letter last night in response to that.

18         THE COURT:  I haven't received it yet.

19         All right.  Thank you all for coming.  This matter

20    will be taken under advisement.

21         THE COURTROOM DEPUTY:  All rise.

22         (Proceedings concluded at 3:59 p.m.)

23    - - - - - - - - - - - - - - - - - - - - -
      **FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**
24    - - - - - - - - - - - - - - - - - - - - -

25         I certify that the foregoing is a correct transcript

1    from the record of proceedings in the above-entitled matter.

2

3    /S/John J. Kurz, RDR-RMR-CRR-CRC                October 3, 2024

4    Court Reporter/Transcriber

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. DEGER-SEN:**
**[102]** 22/24 24/4 25/17
25/19 25/21 26/5 26/10
26/20 26/22 27/3 27/9
28/2 28/11 28/17 28/20
28/25 29/16 29/19 29/23
30/12 30/16 30/20 30/24
31/14 31/22 32/18 32/20
32/24 33/10 33/21 34/2
34/21 34/25 35/3 35/5
35/17 36/7 36/21 36/24
37/2 37/17 38/8 39/3 39/6
39/11 41/1 41/10 41/13
41/25 43/7 43/21 43/24
44/8 44/21 44/23 45/16
45/20 45/24 46/3 46/21
48/20 49/3 51/1 51/6
51/10 51/14 51/17 51/19
52/6 52/15 52/17 52/20
52/23 53/3 54/19 55/12
55/21 110/4 110/16
111/24 112/24 113/19
114/10 114/15 114/20
114/25 115/5 115/19
116/3 116/7 116/13
116/18 116/23 117/4
117/8 117/11 119/2
119/20 119/24 120/23
121/21 122/25
**MR. KIMREY: [46]**
55/25 56/2 56/5 56/9
56/14 56/18 56/21 57/5
57/7 58/5 58/11 58/17
58/19 59/1 59/5 59/9
59/13 59/17 59/21 60/6
60/14 60/17 60/25 61/6
61/16 62/9 62/11 62/14
62/23 63/4 63/8 63/11
63/15 63/21 64/3 64/19
65/6 65/17 65/25 66/4
66/11 66/17 66/24 67/16
68/5 69/8
**MR. PALMER: [70]**
70/11 72/13 72/17 72/24
73/10 73/17 73/22 74/2
74/10 74/15 75/11 77/11
78/19 78/22 79/3 79/16
79/19 79/21 79/24 80/3
80/18 80/21 80/23 81/12
81/20 81/24 82/7 82/11
82/15 83/2 83/8 83/13
83/17 83/25 84/6 84/10
84/13 84/22 85/1 85/6
85/9 85/16 85/22 86/2
86/5 86/9 86/18 123/5
123/7 123/25 124/12
124/14 124/18 125/4
125/16 125/19 125/24
126/1 126/7 126/11
126/21 127/9 127/15
127/17 127/24 128/4
128/25 129/14 129/17
129/25
**MR. PARIKH: [28]**
86/20 86/23 87/2 87/11
87/13 87/17 87/20 87/22

88/4 88/11 89/13 89/21
90/4 90/20 91/1 130/3
130/6 130/17 133/12
133/15 133/24 134/3
135/13 136/21 136/24
137/3 137/11 137/18
**MR. SHAW: [2]** 136/8
138/16
**MR. STIO: [11]** 22/12
22/14 22/18 22/21 136/12
136/15 137/20 137/25
138/2 138/9 138/12
**MR. YUDELSON: [4]**
69/12 69/15 69/21 70/3
**MR. ZUCKERMAN:**
**[45]** 91/5 91/7 91/14 92/6
93/1 94/1 94/23 95/2
95/11 95/17 95/24 96/16
96/20 97/3 97/10 97/19
97/22 97/25 98/6 98/17
99/6 99/14 99/20 100/18
100/25 101/14 101/24
102/5 102/18 103/1 103/6
103/18 104/7 104/11
106/7 106/19 107/3 107/6
107/21 107/25 108/25
109/8 109/14 109/20
110/1
**THE COURT: [312]**
**THE COURTROOM**
**DEPUTY: [4]** 22/4
90/12 90/14 138/21

**/**

**/S/John [1]** 139/3

**0**

**07052 [1]** 17/16
**07068 [1]** 19/18
**07102 [3]** 18/7 19/9 19/15
**08101 [1]** 1/13
**08543 [1]** 17/20

**1**

**10 [1]** 135/20
**100 [1]** 18/7
**100 percent [2]** 36/24
103/8
**1000 [1]** 19/3
**10017 [1]** 18/11
**10018 [1]** 18/3
**10019 [1]** 20/6
**10020 [1]** 18/19
**10036 [1]** 20/3
**101 [1]** 17/16
**1037 [2]** 19/8 19/14
**11 [1]** 88/1
**110 [1]** 21/9
**1100 [1]** 19/21
**11:30 [1]** 138/11
**11th [1]** 135/20
**120 [1]** 116/16
**1200 [1]** 17/9
**122.8 [1]** 57/3
**12207 [1]** 17/3
**123 [5]** 21/10 92/9 109/11
109/23 135/3

7/17
**12th [1]** 17/3
**130 [1]** 21/11
**141 [1]** 19/24
**1520 [1]** 19/8
**18 [1]** 87/25
**1:24-cv-03993-HB [1]**
1/4
**1:24-cv-03998-HB [1]**
1/8
**1:24-cv-04000-HB [1]**
2/3
**1:24-cv-04037-HB [1]**
2/7
**1:24-cv-04041-HB [1]**
2/12
**1:24-cv-04045-HB [1]**
2/16
**1:24-cv-04073-HB [1]**
2/21
**1:24-cv-04075-HB [1]**
3/3
**1:24-cv-04077-HB [1]**
3/8
**1:24-cv-04080-HB [1]**
3/12
**1:24-cv-04095-HB [1]**
3/17
**1:24-cv-04096-HB [1]**
3/22
**1:24-cv-04098-HB [1]**
4/3
**1:24-cv-04103-HB [1]**
4/8
**1:24-cv-04104-HB [1]**
4/12
**1:24-cv-04105-HB [1]**
4/17
**1:24-cv-04106-HB [1]**
4/21
**1:24-cv-04107-HB [1]**
5/3
**1:24-cv-04110-HB [1]**
5/8
**1:24-cv-04111-HB [1]**
5/12
**1:24-cv-04112-HB [1]**
5/17
**1:24-cv-04113-HB [1]**
5/22
**1:24-cv-04114-HB [1]**
6/3
**1:24-cv-04141-HB [1]**
6/7
**1:24-cv-04143-HB [1]**
6/12
**1:24-cv-04160-HB [1]**
6/16
**1:24-cv-04168-HB [1]**
6/21
**1:24-cv-04171-HB [1]**
7/3
**1:24-cv-04174-HB [1]**
7/8
**1:24-cv-04175-HB [1]**
7/12
**1:24-cv-04176-HB [1]**
14/7

7/17
**1:24-cv-04178-HB [1]**
7/21
**1:24-cv-04181-HB [1]**
8/3
**1:24-cv-04182-HB [1]**
8/7
**1:24-cv-04184-HB [1]**
8/12
**1:24-cv-04217-HB [1]**
8/16
**1:24-cv-04227-HB [1]**
8/21
**1:24-cv-04230-HB [1]**
9/3
**1:24-cv-04233-HB [1]**
9/7
**1:24-cv-04256-HB [1]**
9/12
**1:24-cv-04261-HB [1]**
9/17
**1:24-cv-04269-HB [1]**
9/21
**1:24-cv-04271-HB [1]**
10/3
**1:24-cv-04288-HB [1]**
10/7
**1:24-cv-04292-HB [1]**
10/12
**1:24-cv-04298-HB [1]**
10/16
**1:24-cv-04299-HB [1]**
10/21
**1:24-cv-04324-HB [1]**
11/3
**1:24-cv-04345-HB [1]**
11/7
**1:24-cv-04354-HB [1]**
11/12
**1:24-cv-04380-HB [1]**
11/16
**1:24-cv-04383-HB [1]**
11/21
**1:24-cv-04385-HB [1]**
12/3
**1:24-cv-04389-HB [1]**
12/7
**1:24-cv-04390-HB [1]**
12/12
**1:24-cv-04392-HB [1]**
12/17
**1:24-cv-04434-HB [1]**
12/21
**1:24-cv-04442-HB [1]**
13/3
**1:24-cv-04447-HB [1]**
13/7
**1:24-cv-04566-HB [1]**
13/12
**1:24-cv-04571-HB [1]**
13/17
**1:24-cv-04609-HB [1]**
13/21
**1:24-cv-04664-HB [1]**
14/3
**1:24-cv-04696-HB [1]**
14/7

**1:24-cv-04770-HB [1]**
14/12
**1:24-cv-04850-HB [1]**
14/16
**1:24-cv-04949-HB [1]**
14/21
**1:24-cv-05334-HB [1]**
15/3
**1:24-cv-05600-HB [1]**
15/8
**1:24-cv-05656-HB [1]**
15/12
**1:24-cv-05658-HB [1]**
15/17
**1:24-cv-05775-HB [1]**
15/21
**1:24-cv-06160-HB [1]**
16/2
**1:24-cv-07324-HB [1]**
16/7
**1:24-cv-08075-HB [1]**
16/12
**1:28 [1]** 1/14
**1:28 p.m. as [1]** 22/3
**1:30 [2]** 136/5 138/6

**2**

**20004 [1]** 19/3
**201 [1]** 17/12
**2020 [2]** 89/3 134/17
**2021 [1]** 88/1
**2023 [1]** 116/16
**2024 [3]** 1/14 136/14
139/3
**2029 [1]** 19/21
**2055 [1]** 19/24
**21 [2]** 45/19 132/8
**22 [1]** 21/4
**222 [1]** 17/24
**27 [1]** 136/14
**27th [1]** 136/3
**2800 [1]** 18/13
**28202 [1]** 19/12
**2:53 [1]** 90/13
**2C [1]** 131/18

**3**

**30 [3]** 17/3 24/18 132/21
**301 [1]** 17/19
**30th [1]** 137/22
**32nd [1]** 18/3
**330 [1]** 18/13
**33301 [1]** 17/9
**33602 [1]** 17/12
**390 [1]** 18/10
**3:01 [1]** 90/13
**3:59 p.m [1]** 138/22

**4**

**400 [1]** 17/19
**401 [1]** 17/9
**40A:14-122.8 [1]** 57/3
**41st [1]** 17/6
**44 [1]** 17/6
**456 [1]** 109/23
**47 [1]** 131/13
**4th [1]** 1/13

**5**
52-14-7 [1] 57/5
52:14-7 [2] 87/4 87/11
55 [1] 21/5
555 [1] 19/3
56 [1] 131/15
564 [1] 132/7
565 [1] 132/7
576-7094 [1] 1/22

**6**
60601 [1] 17/25
60604 [1] 19/24
60611 [1] 18/14
620 [2] 18/3 19/11
65 [1] 19/17
6SENSE [1] 4/14

**7**
70 [1] 21/6
700 [1] 132/6
7094 [1] 1/22
74 [1] 116/16
75 [1] 137/9
77-page decision [1]
 87/25
787 [1] 20/6
7th [1] 17/12

**8**
800 [1] 19/11
856 [1] 1/22
86 [1] 21/7

**9**
900 [1] 19/14
90067 [1] 19/21
91 [1] 21/8
92 [1] 67/7
94104 [1] 17/6

**A**
A.G [1] 19/23
ability [5] 35/14 105/25
 106/1 131/4 132/11
able [19] 31/16 41/23
 42/14 49/1 54/22 55/1
 55/13 55/14 62/11 70/19
 90/17 96/10 101/14
 104/19 104/20 108/6
 108/11 117/9 136/9
abortion [1] 52/18
above [1] 139/1
above-entitled [1] 139/1
abridgment [1] 33/23
absent [1] 86/14
absolute [2] 84/11 112/8
absolutely [17] 23/7 27/9
 28/17 29/16 30/20 37/17
 38/8 39/9 40/12 43/7 68/7
 80/22 110/7 113/5 115/12
 115/25 124/14
abundance [1] 137/8
abuse [1] 116/21
accept [1] 135/4
access [4] 19/22 46/15
 133/8 133/15

accordance [1] 80/8
according [2] 72/4
 128/17
ACCURATE [1] 7/23
ACCUZIP [1] 11/22
acknowledge [1] 66/7
acknowledged [1] 91/15
across [2] 32/5 43/13
act [13] 45/3 70/22 80/8
 82/10 87/6 96/11 97/15
 97/17 97/18 127/3 127/10
 131/14 131/16
acted [1] 97/17
acting [4] 78/10 82/16
 82/16 94/20
action [78] 1/3 1/7 2/2
 2/6 2/11 2/15 2/20 3/2 3/7
 3/11 3/16 3/21 4/2 4/7
 4/11 4/16 4/20 5/2 5/7
 5/11 5/16 5/21 6/2 6/6
 6/11 6/15 6/20 7/2 7/7
 7/11 7/16 7/20 8/2 8/6
 8/11 8/15 8/20 9/2 9/6
 9/11 9/16 9/20 10/2 10/6
 10/11 10/15 10/20 11/2
 11/6 11/11 11/15 11/20
 12/2 12/6 12/11 12/16
 12/20 13/2 13/6 13/11
 13/16 13/20 14/2 14/6
 14/11 14/15 14/20 15/2
 15/7 15/11 15/16 15/20
 16/1 16/6 16/11 106/1
 110/19 119/7
activities [1] 54/6
activity [1] 54/1
actor [1] 100/3
actual [9] 78/10 78/13
 78/17 79/9 82/12 83/9
 86/7 89/25 97/13
actually [13] 25/10 38/15
 46/10 92/14 104/24
 105/12 108/9 116/18
 131/20 132/17 132/19
 134/7 137/6
ACXIOM [2] 5/4 17/20
Ad [1] 19/25
ADAM [1] 17/2
ADAMS [1] 19/10
add [7] 41/17 69/11
 86/20 111/11 115/9
 115/13 130/3
adding [1] 113/4
addition [1] 133/3
additional [1] 22/18
address [73] 29/21 31/1
 33/4 36/5 36/13 37/10
 37/19 37/20 37/24 38/2
 38/24 39/8 39/20 40/19
 41/4 41/8 41/22 44/6
 44/16 44/22 46/15 46/19
 49/2 51/14 51/15 51/17
 51/19 57/2 57/13 58/22
 58/23 59/3 59/14 61/12
 61/16 70/20 70/23 70/23
 71/13 71/19 72/10 72/25
 74/2 74/7 75/3 83/17 87/5
 92/2 92/8 100/5 100/8

100/9 100/11 103/13
 103/14 106/5 106/17
 106/23 107/19 108/6
 108/7 109/3 109/22
 119/17 119/22 121/25
 123/8 125/12 125/22
 130/8 130/12 130/13
 134/22
addressed [3] 60/20 61/1
 72/9
addresses [34] 27/25
 28/16 30/10 30/14 31/6
 36/13 36/14 36/23 57/14
 57/15 59/22 59/25 60/10
 62/24 64/23 67/12 70/17
 71/1 71/16 74/5 74/12
 74/16 82/23 85/11 88/7
 89/17 96/10 103/15
 107/12 108/11 120/5
 124/19 125/7 125/10
addressing [2] 60/6
 72/24
administrative [2] 25/1
 49/22
adopted [1] 57/10
advance [1] 48/24
advances [4] 45/11 48/23
 49/6 77/19
advancing [1] 25/5
advisement [1] 138/20
affect [5] 54/9 105/22
 105/23 105/24 106/1
affirm [1] 44/10
afield [1] 121/10
after [11] 33/2 34/15
 45/3 67/6 76/23 76/23
 80/12 85/4 105/9 127/10
 132/7
afternoon [10] 22/5 22/6
 22/12 22/13 22/23 56/1
 91/5 91/6 91/9 138/15
AG [1] 23/14 50/20
again [17] 52/21 55/25
 56/2 57/21 76/13 104/9
 106/25 108/12 109/14
 113/5 122/5 123/9 125/14
 127/6 127/23 129/5 131/8
against [3] 76/19 76/20
 109/12
agencies [4] 64/8 104/6
 106/10 132/9
agency [5] 24/20 57/17
 58/14 108/15 108/16
aggregating [1] 24/8
aggressive [1] 32/4
agnostic [1] 126/9
ago [2] 94/11 133/22
agree [20] 29/15 34/1
 34/17 36/24 41/18 50/16
 62/1 64/19 67/22 94/21
 96/15 96/16 99/6 99/14
 99/15 114/9 114/10
 125/16 125/19 127/13
ahead [11] 35/4 56/20
 64/8 69/14 74/1 80/22
 80/22 112/23 116/6 127/8
 130/5

aided [1] 1/23
aimed [1] 74/20
air [1] 113/6
akin [1] 79/8
al [143]
Albany [1] 17/3
ALESCO [2] 15/14 19/15
all [81] 22/4 24/24 29/15
 32/19 33/13 33/25 35/10
 36/11 37/19 39/15 42/21
 42/21 47/22 48/14 48/21
 49/5 50/6 50/25 51/16
 53/14 54/13 58/8 65/22
 66/7 68/20 69/7 69/25
 70/6 70/8 70/17 72/11
 74/19 78/14 86/1 86/6
 86/17 88/9 90/7 90/12
 90/14 90/18 92/19 98/5
 99/10 99/15 102/12
 102/12 102/13 103/20
 104/16 106/2 109/22
 109/25 110/2 112/17
 117/16 118/18 118/19
 119/15 120/6 120/17
 122/6 122/10 122/20
 122/24 123/6 129/24
 129/25 130/5 130/19
 130/20 135/12 135/13
 135/24 136/19 137/13
 137/15 138/5 138/19
 138/19 138/21
allege [1] 101/4
ALLIANCE [1] 4/4
allow [3] 47/18 104/13
 120/12
allowed [5] 24/18 24/20
 34/7 104/7 116/20
allowing [1] 38/24
allows [4] 91/15 113/21
 122/16 122/17
almost [3] 48/21 76/5
 132/6
alone [2] 25/8 111/4
along [2] 69/16 70/4
already [18] 23/18 39/19
 44/14 45/9 46/7 46/9
 56/22 75/21 75/24 91/9
 93/18 103/20 105/8
 128/17 128/20 131/1
 135/6 135/8
also [26] 20/8 23/20
 35/14 58/25 64/3 66/4
 67/25 68/21 75/1 78/2
 84/4 89/7 91/18 99/24
 105/17 105/20 106/9
 108/8 108/10 115/21
 120/13 120/15 123/21
 125/1 131/6 133/20
alternate [1] 108/8
alternative [1] 28/7
alternatives [2] 23/22
 46/13
although [2] 65/22 66/13
always [5] 33/17 35/1
 35/10 100/3 103/10
am [2] 26/21 90/20
Amazon [1] 59/10

Amendment [26] 26/18
 30/2 31/15 33/12 33/24
 33/25 34/19 34/24 38/10
 38/11 45/5 50/23 50/24
 53/23 53/25 54/10 55/3
 64/21 67/17 69/2 69/5
 71/21 78/25 110/20 115/2
 122/16
amendments [3] 67/20
 88/25 89/2
AMERICA [7] 11/4
 18/16 18/21 19/5 19/22
 29/18 69/18
AMERICAN [1] 15/4
Americans [1] 131/3
Americas [1] 18/18
AMERILIST [1] 15/23
ammunition [1] 71/1
amount [2] 23/6 114/23
amounts [1] 31/24
amplifying [1] 24/8
analogue [1] 50/18
analogy [1] 128/8
analysis [21] 28/9 33/17
 38/17 40/10 40/22 42/21
 43/9 50/3 52/13 52/24
 53/9 55/6 66/12 66/21
 67/9 67/13 67/17 84/16
 102/3 120/13 124/22
analyze [1] 117/15
analyzed [1] 40/8
Anderl [2] 133/20 133/25
Anderl's [1] 49/1
Angeles [1] 19/21
ANGELO [1] 17/18
anomaly [2] 115/16
 115/20
anonymity [2] 74/22
 74/24
another [8] 38/21 47/22
 64/3 72/8 93/15 112/7
 120/6 121/17
answer [8] 49/3 51/4
 69/25 80/19 81/5 98/16
 101/25 102/6
answered [1] 88/15
answers [1] 102/22
any [35] 23/12 23/20
 33/11 36/17 38/3 47/15
 48/11 50/17 51/4 53/24
 53/25 60/11 60/15 69/25
 70/3 71/13 77/18 84/15
 85/2 85/3 85/24 99/13
 99/18 100/7 101/4 104/1
 109/17 110/9 111/11
 114/3 116/3 123/24 125/1
 134/20 135/18
anybody [5] 46/18 110/2
 135/21 136/6 136/18
anymore [1] 37/13
anyone [10] 40/5 52/9
 55/22 69/10 70/6 95/4
 100/9 123/1 130/1 131/1
anything [20] 41/17 44/7
 55/9 63/16 73/5 76/5
 79/25 82/4 85/7 86/17
 92/7 93/3 96/5 100/20

**A**

**anything... [6]** 100/23 104/2 123/3 130/1 135/24 137/14
**anyway [2]** 125/18 130/22
**Apartment [1]** 19/8
**appeal [3]** 69/1 90/23 137/14
**appealed [4]** 88/3 88/4 90/22 90/22
**appear [2]** 136/6 138/4
**appearances [2]** 18/23 20/18
**appeared [1]** 48/12
**appears [1]** 73/11
**appellate [4]** 72/14 72/20 73/10 90/24
**APPEND [1]** 7/23
**apple [1]** 135/23
**applicable [2]** 117/5 117/5
**application [2]** 54/10 54/11
**applications [10]** 52/3 53/25 54/13 55/15 55/16 68/20 80/25 93/8 103/25 126/17
**applied [19]** 25/15 50/8 51/3 51/7 51/8 52/9 52/11 71/18 71/19 72/3 73/2 73/3 121/19 121/20 123/14 123/18 124/3 125/11 135/7
**applies [14]** 28/4 40/3 49/10 49/12 65/15 65/21 71/7 75/14 78/9 112/10 112/11 124/25 126/10 128/11
**apply [25]** 26/4 26/14 26/25 27/1 27/2 27/22 28/8 65/8 65/21 65/25 66/1 66/2 66/4 67/22 71/24 72/6 73/18 73/20 75/12 77/12 105/14 117/21 117/23 126/14 128/17
**applying [3]** 25/5 104/3 128/21
**appoint [1]** 132/11
**appreciably [1]** 49/19
**appropriate [6]** 48/19 52/23 65/7 95/13 108/21 115/10
**appropriately [1]** 81/4
**are [102]** 20/18 22/10 22/14 23/21 27/12 27/17 28/6 28/15 28/17 29/17 30/10 32/5 32/16 32/17 34/6 34/12 34/12 36/15 37/17 38/13 39/12 39/14 42/7 42/25 43/12 44/23 45/21 47/9 48/5 50/11 52/3 54/21 55/1 55/15 55/16 56/25 57/3 58/20 58/20 59/23 60/10 63/12 65/10 65/22 70/17 71/6

73/9 74/17 75/4 78/23 79/1 86/16 88/18 89/1 90/1 90/18 92/12 92/16 92/18 93/6 96/14 96/23 100/1 102/11 102/12 103/10 103/25 104/7 104/8 104/10 104/16 104/18 105/20 107/14 108/1 108/8 109/21 110/19 111/19 112/12 116/24 119/18 121/8 121/9 121/15 127/7 130/20 130/20 130/25 131/2 131/24 132/6 132/7 132/8 132/8 133/2 133/8 133/12 134/13 136/12 137/5 137/9
**area [4]** 23/13 27/10 38/11 55/3
**areas [2]** 24/24 44/23
**aren't [7]** 32/17 38/19 63/24 73/8 83/6 84/20 96/8
**arena [1]** 135/7
**argue [2]** 22/10 78/20
**argued [3]** 59/19 87/3 100/16
**arguer [1]** 22/16
**arguing [3]** 32/16 32/16 51/8
**argument [33]** 21/2 22/6 22/19 22/25 30/12 38/9 41/13 51/10 51/21 55/24 60/21 61/4 61/6 65/4 65/5 65/14 68/17 70/10 72/10 72/18 74/3 77/3 77/9 77/14 91/4 91/21 95/8 103/5 103/9 110/3 119/14 126/1 129/3
**arguments [5]** 25/13 25/14 53/13 71/5 117/18
**arisen [1]** 76/14
**arose [1]** 116/8
**around [3]** 108/2 129/1 131/2
**arrested [2]** 134/16 134/20
**article [1]** 73/5
**articulate [1]** 97/6
**as-applied [9]** 51/3 51/7 51/8 73/2 73/3 121/19 121/20 123/14 135/7
**aside [1]** 102/10
**ask [4]** 46/19 78/18 105/5 136/21
**asked [4]** 67/17 87/2 90/21 131/6
**asking [6]** 92/12 98/5 109/17 130/19 130/20 130/25
**asks [1]** 105/21
**aspect [1]** 62/7
**aspects [2]** 35/15 95/9
**assailant [3]** 33/3 36/18 49/1
**assailants [1]** 119/21
**assassination [1]** 43/3

**assassinations [1]** 43/1
**assault [1]** 125/8
**assert [1]** 35/6
**asserted [7]** 23/16 32/2 34/6 47/25 53/4 80/6 117/21
**assess [1]** 25/24
**assignment [1]** 64/25
**association [1]** 59/13
**assume [1]** 73/17
**assumed [1]** 73/11
**assuming [3]** 41/1 107/21 137/13
**assumption [1]** 98/2
**ATDATA [2]** 13/9 17/21
**ATLAS [75]** 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 16/1 16/6 16/11
**attach [1]** 82/10
**attached [2]** 137/3 138/8
**attaches [1]** 130/12
**Attachment [1]** 20/18
**attempt [1]** 72/7
**attempting [1]** 38/19
**attempts [2]** 25/3 76/17
**Attorney [7]** 20/11 20/13 90/9 91/2 91/8 93/20 131/7
**Attorney's [1]** 134/16
**ATTORNEYS [1]** 21/3
**auditing [1]** 58/21
**AUSTIN [3]** 20/5 76/16 126/2
**authoritative [1]** 93/19
**automatic [1]** 82/22
**automatically [2]** 71/7 128/13
**availability [1]** 64/7
**available [7]** 41/4 41/5 46/5 47/1 57/16 133/6 133/6
**Avenue [6]** 18/3 18/10 18/13 18/18 19/17 20/6
**avoid [6]** 114/14 114/17 115/19 115/24 118/11 124/9
**avoidance [1]** 114/11
**award [1]** 89/25
**awarding [1]** 89/23
**aware [2]** 83/3 88/5
**awareness [1]** 80/5
**away [1]** 63/17
**AXLE [1]** 8/4

**B**

**B.J.F [4]** 56/7 56/11 60/3 66/1
**back [8]** 44/3 54/18 54/19 63/4 65/9 68/17 78/6 113/1
**backdrop [1]** 76/21
**background [2]** 81/16 87/6
**bad [2]** 100/3 119/8
**balance [1]** 93/7
**ban [2]** 23/10 51/22 53/18 54/12 54/13 54/22 55/19 67/11 67/11
**Bar [3]** 48/4 119/1 129/1
**BARTLE [2]** 1/16 22/2
**Bartnicki [1]** 92/22
**based [27]** 23/3 27/11 28/4 28/8 30/14 34/8 35/7 37/7 43/10 51/21 61/10 71/8 71/17 72/3 75/12 77/14 78/13 114/4 125/2 125/10 125/22 126/2 126/13 128/13 128/18 128/22 130/11
**basic [3]** 86/3 109/5 109/9
**basically [7]** 46/7 49/7 53/7 53/21 105/4 106/19 115/2
**basis [8]** 32/7 87/4 96/19 97/24 98/4 99/18 102/15 122/4
**BATON [1]** 19/7
**because [114]** 23/22 23/24 24/13 26/6 26/23 28/20 33/7 34/6 35/15 36/15 37/9 38/16 39/7 39/9 40/2 40/6 42/1 42/9 42/12 43/4 43/8 44/15 45/5 45/13 45/14 45/18 45/21 46/15 49/4 49/5 53/18 55/18 57/9 57/23 58/1 58/9 59/24 61/17 62/2 62/4 63/16 64/6 65/7 65/17 66/20 67/9 68/11 68/13 69/1 70/17 71/10 73/13 76/10 78/9 79/4 80/19 81/21 82/15 84/1 85/6 85/25 90/1 90/23 94/13 95/3 95/22 96/11 96/21 98/23 99/3 100/19 101/1 101/7 102/7 102/13 104/16 105/2 105/5 105/21 106/23 108/19 111/17 111/21 111/24 113/23 115/14 116/14 116/18 117/8 117/11 117/11 118/4 118/15 118/21 119/16 120/16 122/14 123/17 123/18 123/22 124/7 125/6 125/13 126/23 127/5 129/6 129/10 129/18 130/12 130/25 131/1 132/23 133/12 134/11

**B.J.F [4]** (continued on right column)
35/8 35/10 37/11 38/9 39/22 53/14 59/22 62/17 70/19 72/11 83/3 90/17 95/4 115/22 121/14 122/13 134/14 136/16
**befall [1]** 134/20
**before [13]** 22/1 44/9 51/2 113/18 114/3 116/4 130/1 134/14 134/20 136/2 138/3 138/4 138/11
**begin [1]** 123/12
**beginning [1]** 117/20
**behalf [5]** 70/12 86/21 86/24 91/7 93/20
**behaves [1]** 68/3
**behavior [2]** 41/7 41/21
**behind [1]** 128/7
**being [16]** 29/24 32/1 40/16 44/20 52/2 54/22 61/17 63/25 67/1 69/1 75/15 77/6 82/12 100/24 113/25 138/6
**believe [7]** 32/7 44/11 44/14 50/2 53/14 112/2 120/11
**believes [2]** 88/7 117/13
**BELLES [1]** 14/22
**belong [1]** 73/14
**belt [1]** 68/15
**benefit [1]** 36/15
**BERNSTEIN [1]** 19/10
**best [2]** 112/8 132/9
**better [1]** 132/18
**between [10]** 31/25 34/14 38/10 59/13 66/5 71/20 93/7 94/25 102/8 103/2
**beyond [2]** 44/24 84/18
**big [3]** 37/1 115/22 119/7
**binding [1]** 117/22
**bit [9]** 38/13 45/15 54/18 54/19 83/9 87/5 91/10 119/25 135/16
**bite [1]** 135/23
**BLACK [3]** 9/9 18/8 18/8
**BLACKBAUD [2]** 1/5 19/12
**BLAINE [2]** 17/23 56/2
**blanket [3]** 34/19 67/11 67/11
**blinkard [1]** 95/2
**Blvd [3]** 17/9 19/14 19/24
**board [4]** 87/9 87/24 90/21 100/22
**body [1]** 73/15
**BOIES [4]** 17/2 17/5 17/8 70/12
**Boland [1]** 17/16
**Bonta [1]** 55/8
**book [1]** 63/3
**books [8]** 37/12 37/13 37/14 37/18 54/23 63/5 63/12 108/5
**both [17]** 28/6 65/6 69/5 72/3 76/4 117/5 117/5 117/12 117/23 120/22 120/24 120/24 121/1 121/2 128/6 129/2 133/24

**B**

**bought [1]** 106/12
**Boulevard [1]** 19/8
**BOULTON [1]** 17/15
**Bowley [7]** 56/10 60/2 66/2 68/1 68/12 71/23 128/16
**Bowley/Daily [2]** 56/10 60/2
**BOXER [1]** 19/17
**Bradstreet [1]** 124/24
**Brayshaw [4]** 65/18 70/22 77/24 78/8
**breaches [1]** 78/4
**breadth [1]** 23/12
**Breyer's [1]** 114/22
**bribes [1]** 122/11
**brief [11]** 22/19 57/6 57/7 61/2 74/8 124/24 135/17 135/18 135/22 136/25 137/6
**briefing [11]** 51/7 56/10 56/15 60/21 60/21 60/25 67/24 69/17 115/22 115/23 116/1
**briefly [2]** 69/12 130/4
**briefs [5]** 30/13 117/17 130/23 135/20 135/22
**bring [3]** 92/17 93/9 128/10
**bringing [1]** 101/3
**brings [1]** 72/8
**broad [1]** 23/23
**broadbrush [1]** 76/9
**broadcast [1]** 84/2
**broader [4]** 23/12 47/5 83/9 119/12
**broadly [2]** 45/12 93/21
**broker [3]** 131/23 132/2 132/22
**brokering [1]** 96/9
**brokers [4]** 88/20 88/24 112/10 130/9
**BROOKS [1]** 19/19
**Brown [2]** 53/11 120/25
**Bruey [1]** 20/9
**Bruni [4]** 51/25 52/1 53/14 68/18
**Brunswick [1]** 91/25
**BRYAN [1]** 17/24
**buffer [2]** 52/15 52/17
**Building [1]** 1/12
**built [1]** 133/8
**burden [4]** 42/10 45/6 47/7 61/22
**business [23]** 78/4 78/4 96/9 104/23 104/23 105/1 105/1 105/3 111/14 112/13 113/3 129/20 129/20 132/22 133/19 133/19 133/25 134/7 134/9 134/9 134/10 134/10 134/14
**businesses [1]** 104/20
**button [1]** 133/1
**buy [1]** 119/25

**C**

**cached [2]** 63/17 64/3
**California [4]** 17/6 19/21 70/25 131/2
**call [2]** 80/9 89/24
**called [3]** 40/16 92/19 104/24
**Camden [9]** 1/13 106/15 107/17 108/18 108/19 108/21 108/23 130/14 130/14
**came [3]** 67/6 69/21 72/14
**CAMP [1]** 14/22
**can [83]** 23/24 25/9 28/25 29/15 30/6 31/6 31/7 31/9 33/12 36/25 37/22 38/11 38/23 38/23 41/6 47/15 48/15 49/16 49/17 50/21 52/9 52/11 58/23 59/2 61/11 62/8 62/25 63/18 64/19 65/8 65/25 65/25 66/2 66/4 67/22 67/25 68/15 68/21 68/23 74/18 75/17 76/12 76/22 78/2 78/4 78/5 78/13 80/21 82/15 93/7 97/5 101/12 101/12 102/14 104/16 104/17 104/18 105/3 105/14 106/8 106/9 107/17 108/10 108/12 109/1 109/9 111/19 112/7 112/8 112/9 113/6 117/5 117/5 117/23 120/8 122/2 123/9 129/11 131/20 134/17 136/7 138/3 138/4
**can't [31]** 23/19 41/5 47/14 49/3 50/12 51/11 51/23 61/8 64/11 64/17 71/10 74/6 77/16 83/21 83/22 85/4 85/10 97/11 98/17 102/1 102/4 102/15 102/22 104/14 106/10 113/6 120/12 120/22 122/10 122/10 138/14
**candidate [6]** 48/7 48/9 48/10 118/18 118/20 118/23
**candidates [1]** 118/9
**cannot [1]** 43/12
**canon [1]** 48/4
**caption [15]** 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 137/13
**captured [1]** 68/8
**CARCO [2]** 3/9 17/20
**care [2]** 96/4 107/25
**carefully [2]** 67/5 67/6
**caring [1]** 61/18
**Carnegie [1]** 17/19
**Carolina [1]** 19/12
**carry [1]** 95/8
**carve [1]** 105/1
**carve-out [1]** 105/1
**case [92]** 22/8 23/21 26/18 26/19 27/5 27/6 28/14 29/12 30/19 31/16 32/22 33/12 33/16 34/4 34/15 34/15 34/16 35/1 36/18 37/22 43/1 45/5 48/3 48/11 50/4 50/24 52/14 52/15 52/17 53/18 56/12 61/19 64/11 65/19 65/20 65/20 65/23 65/23 66/5 66/6 67/2 67/2 67/4 67/5 67/7 69/3 71/10 71/22 72/8 72/14 74/7 74/15 74/25 75/1 75/6 76/15 78/7 78/8 79/9 79/22 86/14 87/9 87/23 88/12 90/21 91/23 92/1 92/7 98/9 100/12 106/20 114/9 114/21 116/14 116/23 118/1 118/4 118/16 119/16 123/16 123/18 124/19 124/24 126/4 126/10 128/10 128/16 129/5 133/25 134/6 136/24 137/1
**case-specific [1]** 123/18
**cases [42]** 22/7 26/7 26/12 26/17 27/13 29/6 29/24 30/3 33/8 33/18 33/19 34/1 34/17 34/22 34/24 42/21 42/22 47/23 48/21 53/14 65/22 65/22 70/21 77/5 77/23 77/24 92/19 92/24 93/1 94/5 94/17 102/8 110/22 114/2 119/18 124/23 125/17 125/18 129/22 133/24 135/1 137/13
**cast [1]** 61/17
**catalyst [1]** 62/4
**categories [1]** 23/4
**Cates [1]** 134/18
**cause [1]** 110/19
**caution [1]** 137/8
**cautioned [1]** 80/16
**censoring [1]** 67/1
**Center [2]** 17/19 18/6
**Century [1]** 19/21
**certain [7]** 23/4 35/12 58/3 108/20 114/12 133/16 136/4
**certainly [8]** 23/24 29/14 38/6 43/12 86/12 86/16 100/16 110/10
**CERTIFICATE [1]** 138/23
**certification [1]** 91/24
**certify [1]** 138/25
**cetera [2]** 58/21 132/25
**challenge [11]** 51/3 51/3 51/5 51/11 70/16 73/2 73/3 101/11 123/13 123/14 137/1
**challenged [1]** 110/19
**challenges [1]** 101/8
**chance [1]** 72/18
**chances [1]** 69/1
**change [2]** 38/6 67/13
**character [1]** 70/24

**Charlotte [1]** 19/12
**chase [1]** 105/9
**CHEIFETZ [1]** 18/10
**Chicago [3]** 17/25 18/14 19/24
**chief [2]** 92/2 92/4
**child [3]** 72/1 89/7 116/21
**choice [6]** 54/4 54/9 67/4 75/15 75/17 88/19
**choose [1]** 117/24
**chooses [1]** 89/8
**CHOREOGRAPH [1]** 10/4
**CHRISTIE [2]** 18/6 87/7
**Circuit [13]** 27/5 51/24 52/1 65/19 66/2 71/22 74/8 74/21 75/2 75/23 117/22 128/16 128/20
**Circuit's [2]** 116/15 124/19
**circuits [1]** 66/8
**circumstances [10]** 38/2 52/10 70/19 73/4 80/7 83/21 86/11 90/1 91/20 133/20
**cite [3]** 74/7 76/15 92/23
**cited [3]** 87/14 92/22 124/23
**citizenry [1]** 57/10
**Citrus [1]** 19/25
**city [4]** 91/25 126/2 126/4 130/14
**civil [81]** 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/13 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 16/1 16/6 16/11 16/2 102/5 102/10 102/11 133/13
**claim [4]** 42/2 60/9 71/7 74/5
**claims [3]** 50/14 92/17 92/17
**CLARITAS [1]** 7/14
**CLARK [1]** 17/24
**class [1]** 106/1
**Clause [1]** 69/6
**clear [14]** 60/20 61/7 77/12 80/15 82/5 92/6 92/8 93/2 94/18 95/19 99/4 102/8 107/22 120/15
**clearly [9]** 25/7 50/15 50/16 60/20 62/3 66/6 71/10 103/24 118/14

**Clerk [1]** 20/10
**clients [2]** 112/11 121/7
**clients' [1]** 68/3
**close [2]** 23/14 52/18 80/10 103/7
**closer [3]** 80/9 120/9 128/8
**closest [1]** 113/6
**CO [2]** 14/18 18/11
**code [1]** 131/18
**coexistence [1]** 38/9
**Cohen [1]** 1/12
**Cohn [2]** 57/19 66/1
**colleague [3]** 68/23 86/21 130/4
**COLLINS [1]** 18/13
**colloquially [1]** 131/11
**Colorado [3]** 43/24 44/9 65/2
**come [15]** 23/14 26/2 26/12 33/17 34/18 42/22 59/12 59/15 69/14 69/14 70/19 98/2 102/21 105/10 136/5
**comes [1]** 31/17
**coming [3]** 120/4 138/13 138/19
**Commencing [1]** 1/14
**COMMERCE [1]** 6/18
**commercial [2]** 2/22 103/23
**commitment [1]** 25/5
**committee [4]** 48/9 118/22 118/23 119/7
**common [26]** 34/11 37/20 37/22 38/4 73/15 79/17 82/6 83/14 83/16 95/14 97/1 98/13 98/13 98/25 102/19 102/21 102/22 102/24 102/4 103/2 113/7 113/8 113/16 114/7 115/15 119/21 123/10
**communication [1]** 58/13
**COMMUNICATIONS [1]** 14/22
**communities [1]** 37/19
**community [2]** 31/5 41/17
**companies [5]** 66/22 66/22 67/10 89/17 120/5
**company [19]** 24/22 47/14 47/19 49/18 49/23 94/6 94/7 94/18 96/7 100/7 100/10 100/21 105/2 105/6 105/7 105/8 108/3 130/13 132/3
**compared [1]** 77/22
**compelling [9]** 28/21 31/11 31/12 31/14 31/17 31/18 43/5 43/8 68/10
**compels [1]** 72/11
**compilation [1]** 64/12
**compiled [2]** 24/1 64/18
**complete [1]** 62/20
**completely [9]** 38/17 49/16 53/8 61/6 70/13 104/22 110/25 112/4

**C**

**completely...** [1] 121/3
**compliance** [2] 24/19 94/15
**comply** [4] 94/4 94/9 94/19 96/10
**component** [1] 131/16
**computer** [1] 1/23
**computer-aided** [1] 1/23
**concede** [5] 49/12 68/5 68/6 68/7 77/1
**concept** [1] 88/6
**concepts** [3] 79/12 96/14 127/8
**concern** [16] 27/12 27/14 45/4 70/18 70/21 72/19 73/19 80/25 81/1 105/25 123/20 124/5 124/16 124/21 126/16 126/18
**concerned** [2] 36/5 128/12
**concerning** [2] 32/11 72/1
**concession** [1] 61/1
**concluded** [1] 138/22
**conclusion** [1] 98/21
**concrete** [2] 33/3 86/12
**concurrence** [1] 50/5
**conduct** [6] 79/10 97/6 100/24 104/20 113/9 118/11
**confer** [1] 138/4
**confess** [1] 69/2
**conflating** [2] 96/13 127/6
**conflict** [2] 71/19 118/11
**confront** [2] 74/23 128/14
**confused** [1] 69/3
**conjunction** [1] 81/15
**connected** [1] 59/3
**consent** [1] 136/10
**consider** [1] 81/22
**considerably** [1] 69/3
**considered** [2] 96/24 113/12
**considers** [1] 113/14
**consistent** [3] 83/15 95/14 97/2
**consistently** [1] 98/25
**consolidated** [4] 1/6 22/14 61/2 136/25
**CONSTANGY** [1] 19/19
**constantly** [1] 63/25
**constitute** [2] 38/2 97/12
**constitutes** [2] 61/1 70/21
**constitutional** [17] 25/24 26/14 52/8 54/7 65/5 65/10 74/11 74/18 79/1 105/14 114/11 114/14 114/17 115/25 117/13 121/11 121/19
**constitutionality** [1] 26/4
**constitutionally** [1] 52/9
**construction** [4] 82/12 88/15 93/19 97/1
**constructive** [4] 78/17

79/9 82/19 97/14
**constructively** [1] 80/5
**construe** [10] 55/13 95/14 98/1 98/12 100/24 113/17 114/6 114/12 114/12 115/24
**construed** [5] 83/15 85/18 98/25 114/3 114/22
**construing** [2] 93/16 114/17
**contains** [2] 13/10 23/18
**contemplate** [1] 90/2
**content** [27] 23/3 27/11 28/4 28/8 30/14 34/8 43/10 51/21 53/19 67/1 71/8 71/17 72/5 103/23 125/2 125/2 125/3 125/10 125/21 125/25 126/9 126/19 126/13 128/13 128/18 128/22 130/11
**content-based** [12] 23/3 27/11 28/4 28/8 30/14 34/8 43/10 51/21 71/8 128/18 128/22 130/11
**contention** [1] 78/24
**contents** [3] 67/1 71/25 136/6
**contest** [2] 52/21 61/8
**context** [8] 81/3 110/9 111/2 111/4 114/22 115/2 115/2 124/25
**contexts** [1] 76/15
**continue** [2] 77/8 78/5
**continued** [19] 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 18/1 18/23 19/1 20/1 82/24
**continues** [1] 80/12
**contractor** [2] 47/14 47/17
**contractors** [1] 24/22
**contrary** [1] 51/24
**contributed** [4] 48/8 48/12 118/14 118/20
**contribution** [2] 118/12 118/17
**contributions** [2] 48/6 118/22
**convenience** [2] 25/1 49/22
**Conversant** [1] 19/25
**conveyed** [1] 75/13
**convicted** [2] 72/1 74/10
**convinced** [1] 99/22
**Cooper** [2] 1/13 20/15
**copy** [6] 63/5 63/12 103/14 106/24 136/19 138/7
**CORELOGIC** [2] 9/4 17/22
**CORP** [5] 10/13 14/13 18/16 18/21 19/5
**CORPORATION** [84] 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/14 3/16 3/21 4/2 4/7 4/11

4/16 4/20 5/2 5/7 5/11 5/16 5/18 5/21 6/2 6/6 6/11 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 9/23 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/5 15/7 15/11 15/16 15/20 16/1 16/6 16/8 16/11 17/21 18/15 18/20 19/5
**correct** [30] 26/22 29/18 31/22 32/24 33/9 33/10 34/20 35/2 35/24 43/1 45/15 46/2 58/4 70/13 71/4 72/20 77/11 85/1 87/22 88/11 88/23 89/21 103/8 112/19 112/22 112/24 113/2 115/12 138/9 138/25
**correction** [1] 90/20
**COSTAR** [7] 5/14 18/14 18/14 18/19 18/19 19/4 19/4
**could** [67] 29/4 34/4 35/20 38/2 42/19 44/9 44/13 44/16 45/14 45/17 45/22 45/22 46/4 46/4 46/15 46/19 48/20 48/21 50/6 54/6 63/23 65/11 68/9 72/21 76/5 77/7 79/3 82/8 88/9 92/3 92/10 93/19 98/12 98/23 100/16 100/17 100/23 103/1 106/14 106/22 106/22 108/20 109/2 109/5 109/11 110/12 111/21 111/24 111/25 112/4 113/17 113/17 114/6 115/3 115/4 114/7 114/9 118/21 118/21 119/6 118/18 118/25 119/6 123/10
**couldn't** [6] 45/6 45/8 49/20 94/14 110/13 118/18
**counsel** [4] 20/18 69/22 89/1 134/24
**Counterman** [1] 111/2
**counties** [3] 45/19 106/6 132/8
**country** [3] 32/6 43/13 131/3
**county** [15] 46/17 87/23 103/12 106/15 106/16 106/16 107/7 107/17 108/17 108/18 108/19 108/20 108/23 109/8 109/10
**couple** [3] 56/23 121/17 123/10

**course** [14] 31/15 37/18 63/22 67/20 74/15 82/15 83/5 92/3 93/17 98/3 103/15 107/19 107/20 115/10
**court** [123] 1/1 1/21 22/1 22/6 23/1 24/2 24/6 25/2 25/23 25/25 26/16 27/1 27/3 27/7 27/9 28/12 32/10 32/22 32/23 34/13 34/15 34/18 40/23 47/22 48/4 48/13 50/2 52/12 53/8 53/16 53/22 54/2 55/3 55/4 55/8 55/13 55/14 56/5 56/15 56/18 57/19 61/9 64/10 65/11 65/19 66/9 66/14 66/20 67/5 67/6 67/8 68/24 69/16 69/21 70/1 70/4 70/11 71/11 71/18 71/24 72/21 74/10 76/16 78/8 78/23 80/16 81/21 83/20 84/13 87/7 87/22 88/2 88/5 89/25 91/24 93/2 93/17 99/4 99/8 101/8 101/10 110/8 110/16 111/5 111/9 112/20 112/25 113/3 113/5 113/20 113/23 114/3 114/3 114/5 114/6 114/11 114/20 114/25 115/3 115/6 115/8 115/13 115/23 116/24 117/13 117/14 119/1 119/3 120/14 120/25 123/15 123/21 124/21 124/24 125/14 126/9 128/11 129/9 134/15 137/8 137/16 138/23 139/4
**Court's** [5] 25/22 48/21 53/15 78/12 124/15
**Courthouse** [1] 1/12
**courthouses** [1] 64/15
**courtroom** [2] 20/9 138/6
**Courtrooms** [1] 29/17
**courts** [21] 31/5 42/4 66/8 73/13 73/17 77/12 91/23 92/16 93/5 93/6 93/7 93/18 95/18 95/20 96/1 96/11 97/4 98/1 98/15 98/18 122/13
**cover** [2] 129/7 129/20
**coverage** [2] 77/18 77/22
**covered** [18] 70/20 75/6 75/10 75/13 75/14 75/22 79/6 80/7 85/12 88/19 89/18 89/19 105/5 132/1 132/15 133/3 135/1 135/3
**covers** [1] 92/11
**COVID** [1] 100/21
**cows** [1] 105/10
**Cox** [3] 57/19 66/1 92/22
**CRC** [1] 139/3
**create** [1] 112/8
**created** [2] 79/11 128/12
**creates** [5] 54/5 75/23 79/10 115/15 126/19

**creating** [1] 54/2
**credit** [1] 124/20
**crime** [2] 29/13 29/13
**criminal** [7] 55/10 75/9 75/11 102/10 111/2 128/19 131/18
**criminality** [1] 31/5
**critical** [3] 30/2 124/15 127/25
**criticizing** [1] 41/20
**CRR** [1] 139/3
**crux** [1] 29/24
**culpability** [2] 32/8 44/2
**curtails** [1] 23/6
**cut** [1] 76/6
**cv** [75] 1/4 1/8 2/3 2/7 2/12 2/16 2/21 3/3 3/8 3/12 3/17 3/22 4/3 4/8 4/12 4/17 4/21 5/3 5/8 5/12 5/17 5/22 6/3 6/7 6/12 6/16 6/21 7/3 7/8 7/12 7/17 7/21 8/3 8/7 8/12 8/16 8/21 9/3 9/7 9/12 9/17 9/21 10/3 10/7 10/12 10/16 10/21 11/3 11/7 11/12 11/16 11/21 12/3 12/7 12/12 12/17 12/21 13/3 13/7 13/12 13/17 13/21 14/3 14/7 14/12 14/16 14/21 15/3 15/8 15/12 15/17 15/21 16/2 16/7 16/12

**D**

**D.C** [2] 19/3 124/19
**Daily** [8] 42/22 56/10 56/11 56/11 60/2 66/1 68/1 68/12
**damaged** [1] 49/19
**damages** [7] 89/23 90/1 90/1 90/4 110/23 110/24 111/6
**dangerous** [2] 23/4 42/10
**Daniel** [1] 48/25
**Daniel's** [29] 22/7 32/3 36/9 41/11 41/19 43/13 43/14 44/17 44/24 45/1 47/4 57/18 61/10 65/11 74/20 79/25 84/16 85/11 88/25 89/2 92/10 103/7 109/17 119/15 129/14 129/18 131/10 132/17 135/5
**Danny** [2] 133/20 133/25
**data** [100] 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/13 6/15 6/20 6/22 7/2 7/4 7/7 7/11 7/16 7/18 7/20 8/2 8/4 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/13 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16

**D**

**data... [38]** 12/20 13/2 13/6 13/11 13/13 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 16/1 16/3 16/6 16/8 16/11 19/25 73/7 76/10 78/4 88/20 88/24 94/6 96/9 105/3 112/10 130/9 131/23 132/2 132/22 132/24 134/7
**database [3]** 46/10 112/15 116/21
**dataset [2]** 76/11 76/23
**DAVID [4]** 18/10 19/20 20/9 69/16
**day [7]** 40/16 63/4 85/19 94/13 94/19 129/19 130/19
**days [10]** 24/18 85/4 94/4 94/17 94/19 111/15 112/9 132/21 132/22 135/19
**de [1]** 57/20
**deadline [1]** 85/19
**deal [10]** 26/8 35/23 37/1 45/23 129/21 131/22 136/4 138/6 138/14 138/15
**dealing [9]** 26/17 33/5 44/15 48/17 72/7 76/16 124/7 136/3 137/25
**deals [1]** 131/13
**debate [2]** 30/5 81/7
**decades [1]** 37/12
**decide [3]** 35/18 80/7 117/7
**decided [6]** 34/16 36/3 67/3 101/5 123/15 132/8
**deciding [1]** 35/1 101/1
**decision [7]** 53/15 66/14 66/15 72/20 87/25 88/5 116/15
**decisions [3]** 27/8 27/10 78/23
**deed [5]** 45/18 46/16 103/12 106/24 133/4
**Deeds [4]** 106/5 106/11 106/15 119/22
**deem [1]** 98/11
**deemed [2]** 56/22 57/8
**deeming [1]** 23/4
**deep [1]** 39/13
**deeply [1]** 40/18
**defamation [2]** 110/22 124/25
**defamatory [1]** 110/21
**default [2]** 42/16 42/17
**defendant [11]** 18/11 19/12 19/15 19/18 20/4 20/7 80/12 82/25 89/9 89/19 95/15
**defendants [109]** 1/6 1/10 2/5 2/9 2/14 2/18 2/23 3/5 3/10 3/14 3/19 3/24 4/5 4/10 4/14 4/19 4/23 5/5 5/10 5/14 5/19

5/24 6/5 6/9 6/14 6/18 6/23 7/5 7/10 7/14 7/19 7/23 8/5 8/9 8/14 8/18 8/23 9/5 9/10 9/14 9/19 9/23 10/5 10/9 10/14 10/18 10/23 11/5 11/9 11/14 11/18 11/23 12/5 12/10 12/14 12/19 12/23 13/5 13/9 13/14 13/19 13/23 14/5 14/9 14/14 14/18 14/23 15/5 15/10 15/14 15/19 15/23 16/4 16/9 16/14 17/20 17/25 18/4 18/8 18/14 18/19 19/4 19/9 19/22 19/25 22/10 55/23 60/23 69/10 78/20 88/24 89/24 92/12 93/21 100/8 103/9 103/11 104/3 123/1 128/18 130/20 131/24 133/9 134/8 134/24 135/6 135/11 136/24 137/5
**defendants' [3]** 72/4 89/11 125/9
**defense [3]** 46/6 46/10 80/11
**defenses [1]** 73/20
**defers [1]** 55/4
**definitely [2]** 42/19 84/1
**definition [2]** 49/4 98/13
**definitively [2]** 98/1 101/5
**DEGER [11]** 18/18 21/4 21/9 22/15 22/21 23/1 61/4 62/1 65/14 67/22 68/2
**DEGER-SEN [5]** 18/18 21/4 21/9 22/15 23/1
**degree [3]** 33/14 50/22 77/19
**deliberately [1]** 100/10
**delivered [3]** 59/10 59/11 59/25
**DELUXE [2]** 3/14 17/21
**DELVEPOINT [1]** 3/23
**demonstrate [1]** 25/4
**denied [1]** 90/23
**depend [1]** 100/20
**depends [1]** 41/25
**Deputy [2]** 20/9 20/11
**described [7]** 31/20 32/10 47/1 52/1 54/2 79/4 80/3
**describes [4]** 37/25 50/2 50/8 74/21
**describing [1]** 46/24
**deserve [1]** 61/19
**designed [2]** 71/19 129/20
**detail [4]** 35/21 36/1 38/22 40/13
**details [3]** 36/11 36/12 39/12
**detention [1]** 114/23
**determine [3]** 26/14 30/8 57/12
**determining [1]** 26/4

**diabolical [1]** 64/25
**dicey [1]** 61/16
**dichotomy [1]** 94/25
**did [28]** 24/22 52/14 52/19 52/20 55/14 66/25 67/6 68/24 71/24 72/22 75/7 83/1 84/15 92/20 92/21 97/5 97/7 97/8 100/17 107/25 114/9 117/15 118/18 119/9 123/13 128/17 137/12 138/17
**didn't [32]** 27/1 27/4 32/22 37/1 48/7 48/9 48/10 52/25 53/8 53/24 55/8 69/25 71/18 75/22 78/14 84/19 92/22 92/23 95/6 96/11 97/7 100/23 117/6 118/14 118/15 118/15 123/21 125/1 126/8 127/5 128/14 137/8
**differ [3]** 32/19 32/21 98/8
**difference [4]** 24/9 86/5 89/11 99/11
**differences [1]** 104/9
**different [47]** 24/15 29/21 30/6 34/3 34/13 36/3 38/13 38/17 40/10 42/2 42/22 43/17 44/25 46/24 47/12 49/16 53/8 53/18 54/4 54/7 58/11 58/22 59/21 59/22 64/13 69/2 76/13 85/3 85/3 85/25 86/7 86/9 88/17 88/22 96/14 96/17 97/6 125/14 127/7 128/4 130/16 131/24 132/6 132/16 132/24 132/25 132/25
**differently [2]** 104/5 131/8
**difficult [3]** 33/1 73/2 73/3
**digital [3]** 6/9 14/13 134/7
**dimension [1]** 75/19
**direct [1]** 54/3
**direction [1]** 42/23
**directly [2]** 51/24 91/12
**directories [1]** 37/12
**disagree [2]** 34/8 41/9
**disclose [10]** 24/17 24/20 39/19 78/10 80/12 84/14 85/4 85/11 112/13 127/2
**disclosed [5]** 46/19 78/14 80/14 82/24 91/17
**disclosing [7]** 37/24 70/20 71/12 71/25 105/6 105/7 125/7
**disclosure [8]** 24/17 74/12 120/6 123/19 124/4 126/25 127/10 128/1
**disclosures [3]** 71/15 76/8 78/13
**discourse [1]** 91/19
**discovery [4]** 55/10 67/13

136/4 136/10
**discretion [2]** 53/21 67/10
**discrimination [1]** 77/15
**discuss [2]** 51/3 136/6
**discussed [1]** 103/20
**discusses [1]** 50/6
**discussing [1]** 61/4
**discussion [3]** 102/2 116/9 125/1
**disfavored [1]** 99/9
**dismiss [6]** 1/5 1/10 22/8 22/14 101/2 136/25
**dismissal [1]** 60/21
**dispute [2]** 60/15 79/18
**disputes [2]** 25/11 92/3
**disseminated [1]** 75/16
**disseminating [1]** 129/7
**dissemination [3]** 30/4 50/9 64/18
**distinct [1]** 131/12
**distinction [2]** 24/2 24/5
**distinctions [1]** 27/11
**distinguish [3]** 66/5 68/24 84/1
**distinguished [2]** 67/5 67/7
**distracted [1]** 96/8
**distributed [1]** 76/10
**distributing [1]** 78/3
**distribution [1]** 100/2
**district [8]** 1/1 1/1 1/16 22/2 65/20 66/8 67/3 134/13
**districts [1]** 132/6
**dive [1]** 91/10
**diverse [1]** 54/6
**division [2]** 72/14 73/10
**division's [1]** 72/20
**DM [2]** 3/4 17/21
**docket [4]** 20/18 87/24 137/5 138/7
**dockets [1]** 137/7
**doctors [1]** 53/4
**doctrinal [1]** 38/17
**doctrine [17]** 27/4 28/6 30/14 34/3 34/7 65/21 65/25 66/5 66/20 68/18 68/18 95/20 98/23 116/25 116/25 117/1 117/12
**doctrines [4]** 65/11 66/6 69/2 82/6
**document [1]** 136/18
**documents [1]** 105/22
**does [49]** 24/13 25/7 31/24 32/19 32/21 35/18 36/10 41/19 42/3 47/21 54/5 54/8 58/25 61/21 64/24 65/1 65/17 65/17 65/18 65/18 65/21 66/19 73/4 78/16 80/14 81/12 82/1 83/23 83/23 84/1 87/4 87/12 95/9 97/18 97/19 104/19 106/4 110/12 110/13 111/11 114/11 114/20 114/25 117/2 117/4 118/2 126/18

126/24 127/25
**doesn't [54]** 24/2 24/9 24/16 26/23 32/13 34/15 41/5 41/14 41/17 44/13 47/23 48/14 48/24 49/13 50/1 50/2 50/13 53/16 59/1 64/8 64/17 65/2 65/2 66/5 68/9 78/16 79/14 79/25 80/1 80/25 81/10 82/4 83/11 84/17 89/17 95/13 95/22 97/17 99/18 99/23 99/24 105/10 106/25 113/8 113/21 115/9 117/2 119/15 121/1 121/7 125/15 129/4 129/10 129/14
**doing [7]** 33/16 36/8 77/17 96/8 98/21 107/9 114/16
**domain [10]** 23/19 23/24 45/10 45/13 45/22 47/20 50/7 75/5 75/18 76/4
**domestic [1]** 108/10
**DOMINO [1]** 20/5
**donate [1]** 119/6
**done [6]** 67/19 108/17 112/25 115/1
**door [1]** 59/7
**doorstep [2]** 120/1 120/10
**doorsteps [1]** 63/6
**doubt [1]** 60/11
**dovetails [1]** 61/24
**down [17]** 28/5 31/17 34/18 38/16 51/2 52/12 53/9 67/6 79/6 101/12 103/15 106/9 108/4 110/14 112/3 112/9 113/21
**drafted [2]** 61/23 68/21
**Drake [1]** 87/24
**draw [1]** 81/7
**drawing [1]** 46/22
**drive [2]** 17/16 58/23
**driving [1]** 62/15
**dropped [1]** 63/5
**drumbeat [1]** 92/19
**Dun [1]** 124/24
**during [1]** 127/2
**duties [1]** 86/16
**duty [7]** 80/6 80/8 85/10 85/12 86/10 86/13 127/5
**dynamic [1]** 76/20

**E**

**E-MERGES.COM [1]** 12/23
**each [10]** 32/4 34/16 47/8 53/20 54/8 76/24 93/1 100/14 123/19 135/22
**earlier [3]** 92/21 121/19 133/16
**easier [1]** 107/6
**easily [2]** 59/2 101/15
**East [2]** 17/9 19/21
**easy [1]** 23/21
**editorial [5]** 53/21 54/4

**E**

editorial... [3]  54/9 66/21 67/10
EDPA [1]  1/16
Education [3]  87/9 87/24 90/21
effect [1]  84/23
effective [1]  44/18
effort [2]  33/1 64/22
efforts [3]  64/17 64/19 112/8
Eighth [1]  18/3
either [4]  100/11 101/19 127/8 134/3
elaborate [1]  62/25
elected [1]  29/3 48/11
election [2]  48/5 118/10
elects [1]  89/20
element [3]  114/18 121/15 126/25
elements [3]  98/22 123/9 126/22
eleventh [2]  19/3 94/13
eliminate [1]  64/5
else [12]  40/5 55/22 56/19 64/16 69/10 70/6 105/4 116/5 123/1 123/3 130/1 135/24
email [6]  36/12 100/5 100/8 100/11 120/2 120/10
embarrassing [2]  39/13 39/16
embrace [1]  102/9
empathetic [1]  62/16
emphasize [1]  126/12
emphasized [2]  71/23 128/17
emphasizes [1]  78/7
employ [1]  65/11
employee [1]  80/13
employees [1]  87/15
enact [1]  43/12
enacted [3]  23/9 23/12 43/14
end [7]  40/8 61/8 76/22 102/2 122/10 123/14 130/19
enforce [1]  58/20
enforcement [4]  57/1 71/25 89/7 108/9
ENFORMION [2]  5/9 17/21
engage [1]  67/9
engaged [4]  37/23 37/23 66/22 66/25
ENGLISH [1]  18/5
enhance [1]  35/12
enhances [1]  50/22
ensure [1]  23/6
enterprises [2]  12/9 112/12
enters [1]  76/7
entire [1]  32/23
entities [9]  24/14 24/21 58/20 84/20 104/5 104/5 104/17 104/18 106/8

entitled [1]  139/1
entity [3]  42/11 57/18 58/14
entry [1]  20/18
EPSILON [2]  6/22 19/25
equally [1]  47/21
EQUIFAX [1]  10/18
EQUIMINE [1]  9/18
equities [1]  92/18
equivalent [1]  45/7
ERIC [2]  17/8 70/11
ESQUIRE [28]  17/2 17/5 17/8 17/11 17/14 17/15 17/15 17/18 17/19 17/23 17/24 18/2 18/6 18/10 18/13 18/18 19/2 19/7 19/11 19/14 19/17 19/20 19/20 19/23 20/2 20/5 20/15 20/16
essential [2]  39/7 47/9
essentially [7]  53/14 54/24 64/1 70/16 71/6 72/21 87/15
establish [1]  38/14
established [2]  73/14 124/4
establishing [1]  48/9
estate [2]  2/22 105/24
esteemed [1]  68/23
et [145]
evaluate [2]  41/23 42/1
evaluating [2]  41/20 42/1
even [36]  24/21 29/3 47/14 51/21 53/25 54/9 54/21 55/5 55/16 61/7 62/25 63/18 66/9 67/19 75/24 77/3 77/13 80/9 84/19 84/24 85/25 92/6 92/7 92/10 102/10 106/16 109/10 110/20 111/3 119/4 119/5 120/20 121/7 121/8 125/5 132/2
evenhanded [4]  24/11 47/23 50/11 50/13
evenhandedly [1]  25/6
evenhandedness [1]  24/12
event [2]  69/21 86/12
eventuality [1]  107/1
ever [6]  26/8 33/20 37/21 37/22 110/15 123/24
every [17]  31/15 35/21 35/22 40/16 45/14 49/4 49/7 50/23 75/14 89/18 106/25 112/15 130/13 130/14 130/21 135/1 135/10
everybody [6]  38/22 100/20 100/22 102/24 130/16 135/22
everyone [10]  39/19 39/23 39/24 58/6 85/10 86/6 88/23 89/4 112/12 131/10
everyone's [1]  37/19
everything [4]  48/15 112/2 112/9 112/16

evidence [2]  40/14 99/21
evident [1]  97/9
EWING [1]  19/7
exact [13]  24/13 29/9 41/13 47/16 47/16 47/16 92/2 92/8 106/20 120/8 120/9 134/8 134/18
exactly [16]  31/3 36/21 37/2 42/12 50/15 55/2 75/5 90/3 94/14 97/11 98/18 109/1 109/15 114/15 117/8 117/11
examination [1]  71/12
example [23]  23/17 29/1 34/4 43/24 44/9 45/1 47/13 47/22 49/17 52/25 72/13 76/15 93/4 101/9 104/12 112/7 114/13 114/21 119/7 120/18 121/5 124/18 134/8
examples [2]  111/21 121/22
exception [8]  23/18 45/7 45/16 45/25 46/3 46/5 46/10 118/4
exceptions [6]  24/16 25/1 45/1 118/3 133/8 133/12
excessive [1]  74/12
EXCHANGE [1]  2/22
excuse [1]  133/21
exempt [2]  73/8 73/11
exemption [5]  46/22 47/2 49/21 49/25 55/2
exemptions [3]  47/3 47/24 54/25
Exhibit [1]  138/8
exist [3]  64/14 86/15 104/9
exists [3]  46/17 81/22 88/24
expert [2]  62/18 109/15
explain [2]  25/14 45/6
explained [2]  110/11 119/3
explicit [1]  76/18
expressive [2]  53/24 54/5
extends [1]  84/18
extensive [2]  50/17 50/18
extent [3]  49/6 81/9 113/13
extra [2]  101/3 133/1
extraordinary [3]  23/11 25/3 31/24
extreme [1]  122/22

**F**

F.4th [1]  116/16
face [5]  22/9 26/15 43/23 71/5 91/16
facial [13]  51/3 51/7 51/11 52/2 55/4 70/16 93/10 93/13 101/2 101/8 101/11 123/13 136/25
facially [8]  51/23 53/9 54/23 61/10 65/12 69/5 101/19 126/19
facilitates [1]  64/6

facility [1]  52/18
fact [24]  24/7 40/13 40/17 40/19 41/3 47/12 50/10 50/14 55/9 57/16 59/9 59/23 64/13 64/15 69/4 72/22 75/3 80/6 92/15 92/18 104/4 106/12 109/9 111/8
fact-finding [1]  55/9
fact-specific [1]  92/15
facto [1]  57/20
factor [1]  40/24
factors [5]  27/23 28/15 28/15 30/18 61/12
facts [12]  33/3 33/5 34/16 35/2 48/16 48/17 92/17 93/4 101/3 101/4 123/16 128/2
fail [1]  97/16
failed [2]  79/6 83/1
failing [1]  97/18
fails [5]  25/24 52/7 67/25 68/10 68/12
failure [1]  97/15
fair [1]  109/22
fall [2]  54/6 80/1
false [1]  94/25
falsehoods [1]  110/21
family [1]  100/13
far [4]  23/12 50/17 50/18 121/10
Farmer [1]  74/7
fashion [1]  122/23
fault [19]  77/5 83/23 83/24 84/8 84/9 84/12 84/18 85/15 85/19 85/20 99/4 99/8 99/13 110/14 111/19 112/18 113/2 114/4 127/16
fault-based [1]  114/4
favor [2]  33/17 34/18
favorable [1]  118/13
fear [3]  35/15 62/8 62/12
February [1]  88/1
February 11 [1]  88/1
federal [15]  1/21 43/14 45/1 45/4 45/25 46/23 47/5 50/18 58/17 58/19 65/1 68/24 93/17 93/17 138/23
feed [1]  54/3
feedback [2]  53/2 54/15
feel [3]  39/22 55/8 95/7
feels [1]  40/18
Feigenbaum [1]  20/13
few [2]  94/11 123/5
fight [1]  100/25
figure [4]  42/5 57/12 102/24 128/10
figure [2]  109/18 122/8
file [4]  58/4 58/10 135/21 138/17
filed [6]  69/17 136/24 137/4 137/4 137/5 137/21
files [1]  58/6
filing [3]  58/21 135/17 137/6

fill [3]  81/9 81/10 102/16
final [1]  121/13
finally [4]  55/5 128/25 133/17 136/18
FINANCIAL [2]  12/14 15/4
find [16]  59/2 59/8 61/9 63/23 65/11 67/18 67/23 67/25 69/14 100/9 106/22 107/7 107/16 108/17 109/11 121/23
finding [3]  35/8 55/9 87/25
findings [1]  35/11
fine [4]  51/16 123/6 137/17 138/10
finished [1]  90/18
firm [2]  134/1 134/4
firms [1]  134/3
first [38]  15/4 26/17 27/17 30/2 31/15 33/11 33/24 33/25 34/18 34/24 38/10 38/11 45/5 50/22 50/24 53/23 53/25 54/10 55/3 60/8 64/21 67/17 69/2 69/5 70/7 71/7 71/21 78/25 87/2 87/6 104/16 110/6 110/20 114/21 115/2 122/15 130/6 131/12
First Amendment [1]  34/24
five [1]  90/8
flat [5]  51/21 53/18 54/12 54/22 55/18
flew [1]  69/24
FLEXNER [4]  17/2 17/5 17/8 70/12
flips [1]  42/10
floor [6]  17/3 17/6 17/12 18/3 90/4 111/21
Florida [68]  17/9 17/12 24/6 25/2 26/12 26/18 27/13 28/14 29/6 29/8 29/12 30/19 30/25 31/10 32/10 32/13 38/10 40/11 40/12 41/14 42/18 48/4 50/4 56/7 56/11 60/2 65/20 66/1 70/14 70/15 71/11 71/17 74/4 77/3 77/5 77/25 79/22 80/24 84/1 85/10 92/20 92/22 101/9 101/16 102/7 103/22 110/11 110/16 113/24 116/10 116/25 117/14 121/1 123/11 123/13 123/17 123/25 124/8 124/11 124/21 125/5 125/11 126/12 127/11 128/21 129/1 129/5 129/9
Florida Star [1]  77/3
flow [1]  106/3
focus [3]  51/6 89/24 115/22
focused [4]  56/16 61/2 61/3 65/14

**F**

**focuses [1]** 56/17
**focusing [1]** 33/6
**folks [1]** 69/24
**follow [1]** 82/23
**following [1]** 111/15
**follows [2]** 22/3 71/17
**footnote [3]** 67/7 67/8 71/11
**forbid [1]** 125/7
**fore [1]** 93/9
**foregoing [1]** 138/25
**foreseeable [1]** 79/11
**forestall [1]** 106/25
**forever [1]** 54/24
**forget [1]** 96/5
**form [3]** 31/8 64/4 100/4
**Former [2]** 59/18 59/19
**forms [1]** 103/3
**Fort [1]** 17/9
**forth [4]** 30/13 35/25 67/24 129/19
**FORTNOFF [1]** 12/14
**foster [1]** 35/14
**found [8]** 37/21 37/22 50/21 50/21 79/4 87/8 121/6 134/19
**four [4]** 18/6 34/12 110/5 122/3
**framework [10]** 70/14 71/19 72/4 72/6 74/5 74/13 77/20 126/14 128/22 128/23
**framing [1]** 116/14
**Francisco [1]** 17/6
**Franklin [1]** 17/12
**frankly [1]** 64/24
**free [2]** 34/14 69/6
**freely [1]** 71/21
**frequently [1]** 121/1
**friends [1]** 71/23
**front [2]** 58/23 77/4
**fulfill [1]** 31/18
**fulfilling [1]** 47/25
**fulfillment [1]** 32/1
**fully [2]** 99/22 113/25
**FULTON [1]** 19/11
**function [1]** 53/22
**further [6]** 20/18 23/15 33/14 86/17 91/18 128/9
**future [1]** 102/24

**G**

**game [3]** 93/11 109/22 126/21
**gap [2]** 81/9 129/18
**gaps [2]** 77/18 81/9
**garbage [1]** 93/12
**gateway [3]** 18/6 67/1 116/9
**general [14]** 20/11 20/11 20/13 20/13 29/11 31/2 52/1 90/9 91/8 93/20 95/24 95/24 119/13 131/7
**General's [1]** 91/3
**generality [3]** 29/6 30/25 31/6

**generally [4]** 30/1 42/12 43/1 70/18
**generic [1]** 81/8
**geographic [1]** 109/9
**Gertz [1]** 110/23
**gets [11]** 44/5 44/6 63/16 63/17 63/18 76/10 76/23 96/7 99/22 135/7 135/22
**getting [8]** 41/20 47/20 75/18 83/5 94/18 111/12 118/12 119/22
**giant [1]** 121/25
**Gilbert [1]** 128/12
**give [10]** 36/1 37/20 38/11 42/16 74/23 76/3 80/21 121/17 127/3 134/17
**given [3]** 53/5 75/4 117/20
**gives [4]** 84/17 84/23 85/11 127/5
**giving [5]** 49/18 86/13 118/24 118/24 128/1
**glad [1]** 137/10
**glaring [1]** 77/18
**goal [18]** 35/11 35/19 38/15 38/20 39/6 39/10 39/11 39/25 40/1 40/8 40/20 47/9 48/23 48/24 49/7 50/21 50/22 120/3
**goals [1]** 45/11
**goes [6]** 31/19 63/17 83/18 108/3 119/15 137/14
**GOHUNT [1]** 11/18
**good [19]** 22/5 22/12 22/13 22/17 22/20 22/22 27/5 56/2 72/25 90/7 90/25 91/5 91/13 96/8 104/8 104/20 105/20 123/3 136/16
**goodness [1]** 94/12
**Google [1]** 107/6
**gossip [2]** 129/10 129/15
**got [12]** 32/3 38/14 83/4 85/9 86/9 86/10 86/13 96/3 100/22 112/3 114/2 129/25
**gotten [3]** 50/7 100/16 105/7
**govern [1]** 80/25
**governed [1]** 74/4
**governing [1]** 70/14
**government [51]** 23/20 24/10 24/13 24/20 24/20 24/21 24/24 25/9 27/15 31/16 33/12 33/18 37/8 42/7 42/10 43/14 45/4 46/8 46/9 47/13 47/15 47/21 47/23 49/5 49/15 49/20 49/25 50/1 50/10 50/14 50/20 58/19 104/17 104/19 105/22 106/25 107/8 120/7 120/8 122/17 131/13 131/20 131/22 131/24 132/5 132/9 132/13 132/18 133/4

133/7 133/15
**government's [8]** 23/16 45/6 45/7 45/11 47/18 49/7 50/18 54/20
**governmental [5]** 51/22 53/11 104/5 104/6 132/23
**governor [2]** 87/7 132/10
**granted [1]** 91/24
**grappling [1]** 89/15
**grasping [1]** 75/20
**great [2]** 93/4 121/5
**GREENSPOON [1]** 19/13
**gross [1]** 80/14
**ground [1]** 22/8
**grounded [2]** 37/3 37/4
**GROUP [10]** 3/4 3/9 5/14 15/14 17/20 17/21 18/14 18/19 19/4 19/15
**guess [9]** 35/20 36/7 59/7 82/4 86/5 103/7 104/11 115/3 118/8
**guide [1]** 66/19
**gun [1]** 134/19

**H**

**hac [3]** 19/23 20/2 20/5
**hadn't [2]** 92/21 94/17
**HAMILTON [1]** 17/18
**hands [2]** 23/5 42/9
**happen [1]** 97/11
**happened [2]** 23/7 33/7 43/4 94/17 95/7 100/21 119/19
**happening [3]** 39/1 48/16 50/15
**happens [2]** 44/9 44/20
**happy [10]** 30/17 51/4 51/14 51/14 69/24 70/3 115/25 135/18 135/21 136/5
**hard [10]** 31/25 63/5 63/12 90/2 94/7 101/1 103/14 106/24 129/15 136/19
**harder [2]** 64/16 64/23
**harm [5]** 40/20 100/6 100/10 100/13 134/20
**HARRISON [1]** 19/23
**HARVEY [2]** 1/16 22/2
**has [93]** 23/12 24/11 25/23 27/14 28/20 28/23 30/1 30/3 32/3 32/7 33/7 33/11 33/13 34/16 34/18 35/8 35/10 36/3 36/18 37/10 37/23 39/22 42/11 43/25 44/6 44/14 44/22 45/1 45/3 46/10 46/10 47/24 49/5 52/12 54/23 56/22 57/8 57/9 57/16 59/9 59/13 59/19 59/23 61/22 62/17 64/10 64/24 74/6 75/10 75/15 75/20 75/23 76/14 76/20 77/17 77/22 80/16 82/9 85/17 87/8 88/19 99/4 101/5 101/8 105/8 110/8 110/9

110/15 110/17 111/5 111/9 112/25 113/20 115/6 115/13 115/14 115/22 117/14 119/18 120/14 121/24 122/3 125/14 128/6 128/17 129/18 132/3 132/11 132/14 133/15 136/16 136/18 138/8
**hasn't [1]** 99/2
**have [211]**
**haven't [9]** 37/14 63/3 63/14 72/8 99/22 103/12 106/20 115/21 138/18
**having [14]** 30/1 30/4 39/20 42/8 42/16 42/17 71/15 84/23 99/16 102/11 104/25 115/16 132/21 132/23
**HB [75]** 1/4 1/8 2/3 2/7 2/12 2/16 2/21 3/1 3/3 3/8 3/12 3/17 3/22 4/3 4/8 4/12 4/17 4/21 5/3 5/8 5/12 5/17 5/22 6/3 6/7 6/12 6/16 6/21 7/3 7/8 7/12 7/17 7/21 8/3 8/7 8/12 8/16 8/21 9/3 9/7 9/12 9/17 9/21 10/3 10/7 10/12 10/16 10/21 11/3 11/7 11/12 11/16 11/21 12/3 12/7 12/12 12/17 12/21 13/3 13/7 13/12 13/17 13/21 14/3 14/7 14/12 14/16 14/21 15/3 15/8 15/12 15/17 15/21 16/2 16/7 16/12
**he [4]** 92/3 100/13 122/1 134/19
**headline [1]** 82/2
**hear [8]** 51/12 70/6 70/8 90/9 90/17 90/18 91/2 110/2
**heard [8]** 69/22 91/9 91/25 94/24 103/9 104/3 104/13 119/23
**heightened [1]** 101/18
**heinous [1]** 62/5
**held [4]** 22/1 74/10 80/4 81/13
**Hello [1]** 55/25
**help [3]** 42/3 99/19 117/2
**helpful [2]** 116/14 116/18
**her [1]** 42/20
**here [82]** 23/8 24/1 24/12 24/13 25/15 27/22 31/23 32/1 35/11 38/15 39/25 40/1 40/8 40/20 42/24 43/3 45/7 45/10 45/16 45/17 46/4 48/16 49/10 49/13 50/15 51/9 54/21 55/5 55/18 60/12 64/6 67/9 67/11 69/9 105/10 70/15 71/5 72/6 75/6 77/2 77/21 78/11 83/22 88/19 88/24 90/10 93/3 93/16 93/16 93/20 95/2 97/1 97/6 101/5 101/13 104/8

108/25 109/5 109/20 109/21 112/11 115/6 116/25 120/3 121/2 121/8 121/14 122/21 126/10 127/8 129/3 130/7 130/16 131/15 131/24 134/8 135/1 135/11 136/5 138/6 138/13 138/14
**here's [3]** 38/5 80/23 100/11
**hey [5]** 105/6 106/8 106/10 108/3 108/5
**high [3]** 91/18 94/7 112/10
**high-risk [1]** 91/18
**high-tech [2]** 94/7 112/10
**higher [3]** 74/24 103/3 110/25
**highest [7]** 27/15 27/19 37/8 61/14 61/23 77/2 124/2
**highly [2]** 59/18 124/11
**him [2]** 100/13 136/10
**hire [1]** 35/21
**HIRSCH [1]** 19/2
**his [6]** 28/24 39/8 39/8 44/6 100/13 134/19
**historical [2]** 37/10 38/9
**historically [1]** 59/22
**history [1]** 131/21
**HIYA [6]** 2/4 17/25 56/3 60/22 87/3 87/14
**HOGAN [1]** 18/9
**holding [4]** 22/6 72/20 84/14 124/15
**HOLDINGS [7]** 13/18 18/15 18/16 18/20 18/21 19/5 19/5
**holes [1]** 103/11
**holidays [1]** 111/22
**home [31]** 27/24 29/21 30/10 36/4 36/22 37/10 41/4 41/8 41/22 46/15 46/18 57/2 57/13 57/14 57/15 58/22 58/23 59/3 59/22 62/23 74/5 87/5 88/7 95/5 100/9 105/10 130/8 130/8 130/12 134/19 134/22
**homes [1]** 95/4
**Honor [105]** 22/12 22/24 24/4 25/17 26/6 26/22 28/2 28/18 28/25 29/16 30/24 32/4 33/10 34/4 35/3 37/2 43/7 51/1 55/21 55/25 56/6 57/7 57/22 58/12 61/13 61/25 62/14 62/15 63/18 64/9 64/19 65/6 66/19 67/14 68/9 69/8 69/12 69/15 70/13 79/3 86/20 86/24 88/4 88/11 88/22 89/21 90/5 90/20 90/21 91/1 91/5 91/10 91/15 92/20 95/17 95/25 97/3 97/10 97/19 98/17 99/6 99/20 100/25 102/5 103/6 103/8 107/4

**H**

**Honor...** [38] 109/14 110/1 110/4 110/8 112/22 113/5 114/10 115/7 115/12 116/13 117/4 119/24 121/21 122/25 123/7 123/8 123/12 126/1 126/11 126/23 130/3 130/6 130/18 131/6 131/9 132/10 133/16 134/17 134/23 135/13 136/8 136/12 136/15 136/21 137/12 137/20 138/12 138/16
**Honor's** [6] 31/2 38/12 77/11 89/14 111/18 112/19
**HONORABLE** [2] 1/16 22/1
**hopefully** [1] 136/9
**hopelessly** [2] 43/15 48/1
**host** [2] 58/11 67/24
**house** [10] 45/18 58/23 58/24 59/10 59/11 59/14 59/15 59/24 106/13 121/25
**housekeeping** [1] 136/21
**houses** [1] 59/25
**HSIAO** [1] 17/5
**huge** [3] 100/6 105/3 121/25
**huh** [3] 78/22 79/24 82/7
**hurt** [1] 44/16
**HUTCHINS** [1] 19/11
**hypocrisy** [1] 71/2
**hypothetical** [1] 111/18
**hypotheticals** [1] 47/4

**I**

**I'd** [4] 56/16 102/20 104/11 135/21
**I'll** [15] 51/12 51/19 55/5 56/18 60/1 66/7 90/16 91/10 117/16 121/13 121/17 135/17 138/3 138/5 138/14
**I'm** [36] 26/3 26/13 30/17 41/18 44/15 46/22 47/3 51/4 51/14 58/2 62/16 65/15 70/3 85/15 88/5 92/6 94/12 95/25 96/4 98/5 99/3 99/16 100/9 101/7 107/8 109/3 109/3 109/14 116/1 121/21 125/13 131/18 135/2 137/10 138/5 138/14
**I've** [6] 34/17 68/15 103/9 104/13 114/8 119/22
**i360** [1] 11/9
**idea** [8] 63/20 77/19 81/15 95/5 115/8 118/8 128/13 134/11
**ideas** [2] 93/8 103/25
**identical** [1] 130/9
**identification** [1] 107/13
**identified** [2] 119/4

129/22
**identify** [3] 31/16 37/22 134/25
**identifying** [2] 71/13 84/3
**ignored** [1] 61/6
**III** [4] 1/16 17/18 18/13 22/2
**ill** [2] 43/15 48/1
**ill-tailored** [2] 43/15 48/1
**Illinois** [4] 17/25 18/14 19/24 76/15
**illuminated** [1] 126/6
**illustrative** [1] 132/9
**IMDb.com** [1] 65/18
**immigration** [2] 114/13 114/22
**imperfect** [1] 92/12
**imperfectly** [1] 64/20
**implemented** [1] 89/2
**implicate** [1] 85/18
**implications** [2] 54/17 54/20
**implicit** [1] 82/20
**implicitly** [1] 83/24
**import** [1] 97/4
**important** [1] 29/5 30/5 35/6 36/15 39/7 40/6 40/7 57/10 81/18 93/16 122/9
**importantly** [1] 94/2
**impose** [3] 78/1 85/12 98/5
**imposed** [1] 80/6
**imposes** [4] 82/9 83/22 85/10 112/17
**imposing** [1] 81/2 123/16 124/6
**inappropriate** [2] 93/10 127/12
**INC** [57] 1/5 1/10 2/4 2/23 3/4 3/9 3/18 4/9 4/14 5/14 5/23 7/4 7/9 7/18 7/23 8/4 8/9 8/13 8/18 8/22 9/4 9/14 9/18 10/18 10/22 11/22 12/9 12/23 13/4 13/23 14/9 14/22 15/9 15/18 15/23 17/20 17/21 17/21 17/21 17/22 17/25 17/25 18/8 18/14 18/15 18/16 18/16 18/19 18/20 18/21 18/21 19/4 19/4 19/5 19/6 19/12 20/15
**inception** [1] 67/19
**include** [2] 99/23 99/24
**includes** [1] 103/2
**income** [3] 58/3 58/4 58/6
**incompetent** [2] 80/13
**incorporate** [1] 114/7
**incorrect** [1] 90/22
**increased** [1] 74/23
**incredibly** [2] 122/13 122/22
**incremental** [1] 48/15
**Indeed** [1] 129/17
**independent** [2] 120/19 121/11

**INDEX** [1] 20/19
**indicate** [1] 83/24
**indicating** [1] 62/19
**individual** [5] 45/2 89/8 107/13 132/15 134/21
**individual's** [2] 37/9 124/6
**individually** [1] 54/24
**individuals** [4] 31/7 84/20 91/16 125/23
**infer** [2] 73/18 82/8
**INFOMATICS** [2] 2/13 18/4
**INFORM** [2] 2/9 18/4
**informal** [2] 77/7 129/11
**information** [132] 18/15 18/20 19/4 23/24 24/1 24/21 29/13 29/25 30/4 30/5 30/6 31/7 31/10 31/12 33/6 36/12 38/18 40/1 40/6 40/17 40/23 42/4 42/5 42/6 42/9 42/9 42/13 42/16 42/17 42/25 44/11 45/2 45/3 45/4 45/9 45/13 45/15 46/7 46/8 49/18 50/6 50/12 53/5 53/5 56/23 59/18 60/12 62/17 62/18 64/4 64/6 64/7 64/12 64/13 64/14 64/15 64/18 70/23 71/13 75/4 75/7 75/15 75/18 75/21 75/24 76/1 76/4 76/7 76/12 76/17 76/18 76/22 76/25 77/7 78/3 78/5 78/13 84/3 84/3 84/15 87/5 88/20 89/10 89/20 91/17 91/18 91/19 95/3 100/2 104/14 104/15 104/19 106/9 106/10 106/16 108/2 108/4 108/7 108/13 109/6 111/20 112/3 112/8 112/13 113/25 116/20 120/4 120/8 121/6 121/17 121/24 122/7 122/11 122/12 122/15 122/16 127/2 128/19 129/7 129/11 130/24 131/5 132/4 132/19 133/4 133/5 133/8 133/16 135/2 135/7 135/8 135/9
**ingredient** [1] 127/25
**inherently** [1] 53/23 123/18
**inhibits** [1] 41/11
**initially** [1] 22/11
**INNOVIS** [1] 7/18
**INSIGHTS** [1] 4/14
**insofar** [1] 36/4
**instance** [6] 25/8 58/22 66/11 75/14 114/21 135/10
**instances** [1] 124/18
**instead** [4] 54/22 71/18 73/6 78/11
**institutions** [1] 133/7
**instructions** [6] 82/1 82/2

82/3 96/22 96/23 98/10
**instructive** [1] 88/6
**insulate** [1] 118/9
**Intelius** [3] 18/16 18/21 19/6
**intense** [1] 23/9
**intent** [23] 78/15 80/14 95/22 95/25 95/25 96/2 96/14 96/17 96/18 97/2 97/4 98/2 100/4 101/18 103/3 113/17 114/8 114/18 115/13 115/14 115/20 115/23 126/24
**intentional** [7] 79/18 81/23 82/3 82/9 82/10 82/11 82/15 95/10 95/12 95/15 96/24 98/8 98/11 98/22 98/22 99/12 100/24 113/8 113/13 113/14 115/14 127/1 127/3 127/7 127/9 128/1 128/5
**intentionally** [3] 83/1 83/1 100/17
**INTERACTIVE** [1] 14/9
**interest** [69] 23/16 23/20 24/10 25/5 27/15 27/19 28/21 28/23 29/9 29/10 29/14 30/1 30/3 30/11 30/22 31/1 31/7 31/9 31/10 31/11 31/13 31/15 31/17 31/18 32/2 33/13 34/3 34/5 37/4 37/5 37/8 40/5 43/5 43/8 45/7 47/25 49/19 50/2 51/23 53/4 53/7 53/11 61/13 61/23 68/5 68/7 68/10 68/14 71/20 71/20 72/8 74/6 74/11 74/18 74/21 74/22 75/3 75/25 77/2 77/19 88/7 117/21 118/12 121/10 121/14 121/16 122/12 124/2 124/6
**interested** [1] 29/5
**interesting** [2] 26/7 67/4
**intermediate** [4] 18/16 18/21 19/6 49/11
**internal** [1] 105/15
**internally** [1] 105/18
**INTERNATIONAL** [4] 5/18 18/15 18/20 19/5
**internet** [24] 33/4 33/6 45/3 47/2 49/2 63/17 63/22 63/24 63/25 66/22 76/7 76/8 76/10 76/21 88/21 94/11 94/13 96/10 100/2 100/15 119/18 121/6 121/7 129/4
**interpret** [1] 73/14
**interpretation** [1] 81/7
**Intervenor** [2] 20/12 20/14
**intimate** [3] 36/11 39/12 40/13
**intrusion** [1] 128/5
**invalidate** [1] 54/23
**invalidated** [3] 51/23 77/23 101/20

**invalidating** [1] 124/9
**invalidation** [3] 52/2 55/4 92/13
**invasion** [10] 38/3 81/23 94/21 95/5 95/7 95/10 96/23 98/11 99/12 113/11
**investigative** [2] 122/2 122/4
**investigators** [1] 89/7
**invoke** [1] 108/10
**involve** [9] 27/10 27/11 34/1 52/14 52/19 52/20 103/25 123/13 126/24
**involved** [8] 33/25 40/12 48/4 54/4 66/21 70/21 93/6 123/13
**involves** [3] 72/18 116/19 123/19
**involving** [4] 29/12 33/19 34/24 128/18
**isn't** [30] 23/23 29/21 33/7 35/10 36/5 38/25 39/1 40/24 43/5 44/4 44/7 44/17 48/15 48/18 48/19 48/23 58/9 62/10 62/13 74/3 82/4 85/20 95/10 95/21 98/9 108/9 118/24 119/19 121/18 121/19
**issue** [24] 27/13 29/7 34/6 44/3 51/9 77/6 84/2 93/15 110/6 110/7 114/14 114/17 115/24 121/19 121/20 123/22 126/23 127/18 129/6 135/18 136/11 136/15 136/22 138/3
**issued** [1] 87/25
**issues** [3] 67/14 134/14 136/4
**iteration** [3] 32/3 32/4 132/17
**its** [17] 22/9 23/11 24/17 26/14 28/11 30/7 34/16 43/22 47/25 49/22 53/16 54/13 57/10 61/22 67/19 77/18 128/7
**itself** [13] 24/13 24/15 24/18 35/11 49/15 49/21 49/25 64/6 85/25 94/2 122/7 123/22 129/6

**J**

**Jackson** [1] 19/24
**jail** [1] 134/17
**Jeremy** [1] 20/13
**JERSEY** [70] 1/1 1/13 17/16 17/20 18/7 19/9 19/15 19/18 20/11 20/13 23/9 43/15 45/19 46/19 56/22 57/2 57/8 57/9 57/15 58/3 58/15 61/21 62/18 62/19 69/6 72/11 72/14 73/10 73/13 73/17 81/8 82/13 83/15 87/6 87/8 87/21 87/23 88/9 89/5 89/19 90/10 91/8 91/23 91/24 93/5 93/18 93/20

**J**

**JERSEY... [23]** 95/10 95/18 95/20 96/1 96/22 97/4 97/25 98/8 98/9 98/14 98/18 98/24 107/11 107/18 107/23 108/16 113/14 118/11 131/25 132/5 132/6 132/11 132/14
**Jersey's [5]** 33/2 44/17 57/17 61/10 131/14
**JESSICA [1]** 17/15
**job [3]** 33/16 35/15 96/8
**jobs [2]** 62/8 62/12
**John [11]** 1/21 1/21 17/15 19/20 69/17 112/1 112/3 112/3 134/25 135/3 139/3
**join [1]** 69/23
**joined [1]** 60/22
**joining [1]** 137/6
**JOSEPH [1]** 17/11
**JOY [1]** 12/9
**judge [27]** 1/16 22/2 33/2 33/4 43/3 44/5 48/11 62/5 87/2 87/22 88/14 108/22 108/22 108/24 109/2 109/11 118/12 118/13 118/16 119/17 130/17 133/17 133/21 134/6 134/19 134/21 137/18
**judge's [1]** 134/21
**judged [1]** 52/3
**judges [18]** 27/25 35/25 40/4 41/6 41/20 48/5 57/1 57/23 61/18 68/6 72/11 74/16 88/9 89/6 108/10 118/9 118/10 134/13
**judgment [1]** 123/19
**judgments [1]** 66/21
**judicial [7]** 20/10 26/1 43/9 48/7 54/25 55/2 118/9
**jurisdictions [1]** 131/2
**jury [6]** 82/1 96/22 96/22 98/10 100/16 100/23
**just [105]** 24/7 24/8 24/24 28/2 32/9 37/21 39/20 40/19 41/25 42/19 43/16 44/18 46/7 47/3 47/19 50/21 54/12 54/16 55/5 55/14 60/20 62/10 64/8 65/9 66/6 67/3 71/11 73/1 74/19 76/23 77/17 81/1 84/2 85/3 85/10 85/18 85/20 86/15 88/1 88/14 88/16 90/5 90/20 91/24 93/8 93/12 94/19 95/2 95/7 96/7 99/3 99/16 100/8 101/12 102/2 102/14 102/22 103/6 105/3 106/7 107/3 107/23 108/3 108/9 108/18 108/20 109/4 109/16 110/4 111/7 111/20 112/14 113/3 113/6 113/21 113/23 115/23

**K**

**Kansas [1]** 43/25
**KATHERINE [1]** 19/23
**KAYLA [1]** 20/2
**keep [8]** 37/9 39/4 40/6 40/7 62/19 90/16 98/14 105/9
**keeping [2]** 38/25 40/1
**keeps [1]** 95/4
**KELLY [1]** 19/14
**key [5]** 42/3 52/7 75/19 105/16 126/12
**kick [1]** 101/12
**kill [1]** 134/13
**KIMREY [4]** 17/23 21/5 22/19 56/2
**kind [41]** 24/14 24/25 40/10 53/18 55/6 61/24 66/7 68/16 70/22 71/5 71/6 72/6 73/1 73/2 74/12 76/6 76/20 76/24 77/20 78/6 79/10 79/12 81/3 81/9 82/12 83/18 93/10 93/11 93/13 94/4 94/8 94/24 95/7 104/1 105/1 108/2 108/13 114/8 129/11 129/21 131/10
**kinds [4]** 36/11 77/23 78/5 78/14
**knew [3]** 37/19 44/16 100/23
**KNIGHT [3]** 9/9 18/8 18/8
**knock [3]** 59/7 76/11 76/24
**know [150]**
**knowing [4]** 29/9 41/7 41/8 99/25
**knowledge [5]** 79/10 83/9 86/13 97/13 97/14
**known [1]** 88/25
**knows [5]** 39/8 39/8 39/19 86/6 98/20
**Kratovil [4]** 91/25 92/11 92/14 93/4
**Krista [1]** 20/16
**Kurz [3]** 1/21 1/21 139/3

**L**

**L.L.C [1]** 15/14
**L.P [7]** 4/18 18/15 18/15 18/20 18/20 19/4 19/5
**LABELS [2]** 7/9 20/15
**LABS [1]** 7/4
**lack [2]** 91/14 94/15
**laid [1]** 66/6
**language [1]** 84/7
**large [1]** 100/1
**large-scale [1]** 100/1
**LAROSA [1]** 20/2
**Las [1]** 17/9
**LaSalle [1]** 17/24
**last [7]** 89/7 116/15 125/6 133/17 133/18 134/23 138/17
**late [3]** 44/4 44/7 134/17
**later [2]** 51/15 111/14
**LATHAM [5]** 18/12 18/17 19/2 22/15 23/1
**Lauderdale [1]** 17/9
**Laughter [6]** 37/16 59/6 117/3 117/10 127/21 129/16
**law [112]** 17/14 19/23 20/10 22/7 22/8 22/8 28/8 32/3 34/11 34/14 36/9 37/20 37/22 38/4 41/11 41/19 43/13 43/14 44/10 44/17 44/17 44/24 45/1 45/14 46/12 46/23 47/4 47/5 48/1 50/19 53/19 54/9 54/23 54/25 57/1 57/18 58/3 58/8 61/10 65/11 65/20 66/5 66/7 69/3 71/16 71/25 73/15 73/15 73/15 74/13 74/20 79/12 79/17 79/25 81/8 81/21 82/6 83/14 83/16 84/16 84/21 85/11 86/1 86/6 87/6 87/8 87/10 88/25 89/2 89/6 92/10 92/13 93/9 93/11 93/12 94/2 95/14 97/1 98/9 98/13 98/13 98/25 99/11 102/19 102/21 102/22 102/24 103/2 103/8 103/24 106/19 106/21 108/9 109/12 109/17 113/7 113/8 113/16 114/7 115/15 119/15 123/10 129/14 129/18 131/10 131/11 132/17 133/9 134/1 134/3 134/4 135/5
**law's [1]** 52/3
**Law-type [1]** 74/13
**lawfully [4]** 30/1 60/8 60/12 68/14
**laws [7]** 30/14 33/19 34/10 44/24 78/25 104/7 131/4
**lawsuits [1]** 106/2
**lawyer [6]** 48/12 118/12 118/13 118/16 118/19 134/1
**lawyers [3]** 48/10 118/16

118/22
**lays [1]** 116/24
**lead [4]** 22/21 39/25 47/20 49/24
**leads [1]** 122/15
**least [29]** 22/11 23/15 25/9 25/11 32/7 46/6 46/10 47/7 49/10 49/12 56/23 65/10 69/25 80/5 84/18 87/7 93/19 94/5 96/22 102/7 102/10 104/2 110/20 111/5 115/14 122/18 122/20 125/17 127/3
**leave [3]** 100/15 102/10 136/2
**leaves [1]** 100/8
**led [1]** 64/24
**legal [1]** 80/6
**legislative [3]** 35/8 35/11 131/21
**legislators [2]** 36/14 71/3
**Legislature [24]** 26/2 33/2 33/5 35/18 35/20 36/3 36/25 38/5 40/7 48/16 62/2 62/3 76/2 97/5 97/8 107/25 108/12 113/1 113/22 119/3 119/8 131/12 131/22 132/16
**Legislature's [2]** 70/25 98/2
**legitimate [8]** 52/4 52/11 55/17 55/18 74/17 75/3 75/25 126/19
**length [1]** 59/19
**less [4]** 23/21 110/20 115/6 115/17
**let [8]** 44/21 44/24 65/8 70/4 78/18 88/2 111/4 138/11
**let's [5]** 27/22 28/15 30/15 30/18 44/3
**letter [5]** 136/3 136/7 136/12 136/14 138/17
**letters [2]** 137/6 137/21
**level [9]** 29/6 30/24 31/6 49/12 74/24 82/16 84/18 104/2 105/12
**levels [1]** 54/4
**LEXISNEXIS [3]** 13/13 16/3 19/18
**liability [34]** 46/25 78/1 78/21 78/25 79/2 79/4 80/1 80/16 81/3 82/10 82/22 83/22 88/18 89/24 93/22 95/16 99/7 101/15 101/22 102/1 102/4 102/9 102/16 102/23 110/7 110/14 112/17 113/18 114/4 123/16 123/24 124/7 135/16 135/19
**liable [7]** 79/4 80/4 81/13 85/5 85/19 86/4 97/17
**life [5]** 36/19 39/12 40/13 49/24 74/22
**LIFETIME [2]** 14/18 18/11

**LIGHTBOX [8]** 4/18 18/15 18/15 18/20 18/20 19/4 19/4 137/1
**like [54]** 32/9 36/11 38/12 39/22 40/10 42/22 45/8 46/6 46/11 47/2 48/25 49/1 54/11 54/22 55/8 55/9 56/16 56/19 59/17 63/1 66/12 66/24 67/2 67/11 70/22 70/24 73/5 73/15 77/5 77/16 77/24 77/24 78/16 82/9 84/17 85/9 101/16 102/6 103/7 104/2 104/25 106/8 108/3 110/22 110/23 110/23 111/6 111/6 111/10 112/8 113/7 119/25 124/18 128/21
**limit [1]** 114/23
**limitations [1]** 23/10
**limited [5]** 42/18 53/21 89/6 118/7 118/8
**limits [1]** 109/24
**line [16]** 26/12 27/13 30/13 34/3 54/7 73/15 73/24 73/25 92/20 92/24 116/25 117/1 117/14 117/15 117/22 118/4 117/15 117/22 118/4
**lines [3]** 27/4 116/24 117/12
**LinkedIn [1]** 46/1
**liquidated [1]** 110/24
**list [2]** 46/17 107/15
**listed [1]** 20/18
**lists [6]** 7/9 20/15 107/10 107/12 109/13 137/25
**literally [1]** 130/25
**litigants [1]** 134/14
**litigate [1]** 55/2
**litigation [2]** 64/25 131/17
**little [11]** 23/23 38/13 44/4 44/7 54/18 54/19 64/16 83/8 87/5 120/22 135/16
**live [13]** 28/22 42/2 42/2 63/24 72/12 72/22 87/17 87/21 107/7 109/10 109/21 133/12 135/3
**lived [1]** 92/4
**lives [7]** 28/24 73/6 91/22 92/8 108/23 109/11 121/24
**living [1]** 29/2
**Livingston [1]** 19/17
**LLC [44]** 2/9 2/13 2/18 3/23 4/4 4/23 5/4 5/9 6/4 6/9 6/18 6/22 7/14 9/9 10/4 10/9 11/9 11/13 11/18 12/4 12/14 13/9 13/14 13/18 14/4 14/18 16/4 16/13 17/20 17/21 17/21 17/22 18/4 18/4 18/4 18/8 18/16 18/16 18/21 18/21 19/6 19/6 19/6 19/23 20/4
**LLP [17]** 17/2 17/5 17/8

**L**

**LLP... [14]** 17/14 17/18 18/2 18/5 18/9 18/12 18/17 19/2 19/7 19/10 19/16 19/19 20/2 20/5
**lobbying [1]** 23/9
**local [2]** 37/18 119/22
**location [1]** 106/24
**locations [2]** 64/14 108/8
**logic [2]** 71/15 117/25
**long [5]** 34/11 49/5 72/6 119/16 121/14
**longer [2]** 52/9 135/20
**longstanding [1]** 53/17
**look [21]** 26/18 28/14 29/7 43/11 50/5 55/7 55/8 55/12 55/14 66/24 68/23 71/11 98/10 102/18 102/19 102/20 102/24 107/18 108/23 110/22 130/19
**looked [3]** 113/14 120/25 125/17
**looking [5]** 53/10 83/14 93/11 103/13 131/21
**looks [2]** 30/25 71/22
**loophole [1]** 104/23
**loopholes [1]** 104/25
**looser [1]** 57/17
**Los [1]** 19/21
**losing [1]** 49/24
**lot [16]** 26/11 26/17 27/10 36/9 40/15 44/1 44/18 45/13 46/12 54/25 55/9 55/15 76/6 91/9 98/24 104/13
**lots [3]** 32/5 111/19 121/15
**Loud [2]** 53/2 54/15
**LOVELLS [1]** 18/9
**low [3]** 91/19 124/7 124/10
**low-value [3]** 91/19 124/7 124/10
**LOWENSTEIN [1]** 19/16
**lower [2]** 113/25 114/3
**LTD [1]** 12/18
**luckily [1]** 134/20
**LUSHA [1]** 8/13

**M**

**MACDONALD [2]** 19/20 69/17
**Machine [3]** 63/19 63/21 63/23
**made [13]** 41/14 58/9 64/17 64/20 67/19 71/5 71/6 72/11 77/12 99/4 118/16 120/14 129/3
**Madison [1]** 18/10
**MAGNUS [1]** 19/14
**Mail [8]** 42/22 56/10 56/11 56/11 60/2 66/1 68/1 68/12
**Mail/Bowley [1]** 68/1
**mailroom [1]** 111/21

**main [6]** 92/9 99/21 109/12 109/23 109/23 135/3
**mainly [1]** 48/18
**maintains [1]** 106/12
**majority [2]** 73/4 126/17
**make [22]** 24/2 24/9 37/1 39/12 60/20 64/22 75/15 75/17 77/10 85/3 104/8 110/5 112/7 112/16 116/4 120/2 123/5 123/10 133/1 133/18 137/11 137/15
**makes [11]** 39/22 43/22 57/15 57/25 57/25 62/4 91/20 104/15 111/9 112/20 121/25
**making [2]** 61/25 105/9
**malice [2]** 78/11 78/13
**malicious [1]** 78/15
**manage [1]** 132/19
**managed [1]** 132/24
**management [4]** 6/22 13/13 16/3 94/6
**MANATT [1]** 20/2
**mandated [1]** 58/8
**many [4]** 75/21 121/9 128/6 128/8
**MAO [1]** 17/5
**map [2]** 27/6 66/7
**MARDER [1]** 19/13
**MARK [1]** 17/5
**market [1]** 105/24
**marketer [1]** 130/15
**marketers [1]** 53/6
**marketing [2]** 53/6 134/7
**marketplace [2]** 93/8 103/24
**Marshall's [1]** 50/8
**Maryland [2]** 65/3 133/21
**mass [2]** 50/9 130/15
**matches [1]** 115/14
**material [1]** 23/18
**materials [1]** 53/6
**matter [22]** 27/24 29/14 38/2 68/10 70/21 72/19 73/19 80/24 81/1 84/15 92/15 93/6 104/1 123/19 124/5 124/15 124/20 125/6 126/15 126/18 138/19 139/1
**matters [4]** 27/12 70/18 95/3 105/25
**MATTHEW [1]** 19/17
**MAX [1]** 6/4
**maximize [1]** 68/25
**may [27]** 22/5 22/18 22/18 23/1 38/4 45/13 47/19 56/5 61/9 64/14 64/15 64/16 69/16 70/11 84/24 85/7 86/20 90/15 90/16 91/20 100/20 105/25 112/12 112/13 134/9 136/21 137/14
**maybe [15]** 39/16 49/24 80/10 81/25 100/20 109/10 119/23 122/1

**122/3 122/3 125/17 129/18 130/15 132/2 135/17
**McCARTER [1]** 18/5
**McGEE [1]** 17/11
**me [29]** 27/16 27/21 39/22 44/16 44/18 44/21 44/24 56/15 56/19 61/16 65/8 72/8 75/17 78/18 80/20 90/17 90/21 92/6 92/8 98/12 99/19 102/7 102/14 117/2 117/20 126/23 130/11 133/21 138/11
**mean [40]** 24/5 25/21 26/10 28/25 30/12 33/11 33/21 34/4 34/22 35/5 36/8 37/11 40/4 41/2 41/5 41/22 44/13 45/17 46/11 46/21 46/22 47/13 53/16 59/17 59/24 61/21 63/12 64/17 80/15 82/15 85/7 97/8 97/22 97/23 100/20 110/18 111/12 113/24 118/24 125/10
**meaningfully [1]** 25/10
**meaningless [1]** 63/15
**means [22]** 23/15 25/9 25/11 28/11 39/4 39/4 47/8 49/11 50/1 53/19 55/13 62/25 70/15 71/16 76/3 80/5 104/2 122/19 122/20 123/16 126/19 128/13
**meant [1]** 63/8
**measure [1]** 25/3
**mechanical [1]** 1/23
**meddle [1]** 103/20
**media [4]** 24/7 66/22 67/10 134/22
**Megan's [1]** 74/13
**MELISSA [1]** 10/13
**mens [7]** 32/8 44/2 78/17 82/9 110/9 111/12 111/16
**mens rea [1]** 111/12
**mentioned [6]** 57/6 107/4 121/5 133/16 134/24 135/17
**Mercer [1]** 106/16
**mere [1]** 38/1
**MEREJO [1]** 17/15
**merge [1]** 132/8
**MERGES.COM [1]** 12/23
**messages [1]** 54/3
**method [1]** 76/9
**methods [3]** 77/7 78/3 129/7
**MICHAEL [3]** 17/19 20/11 91/7
**microphone [2]** 53/2 54/15
**might [24]** 28/22 29/1 30/7 30/7 38/25 39/13 39/24 39/24 41/25 42/5 42/13 42/14 54/3 74/24 103/14 105/23 105/24

**112/14 119/5 119/11 119/12 121/16 121/23 121/23
**millions [2]** 86/15 131/3
**mind [1]** 62/20
**mine [1]** 103/25
**miners [1]** 73/7
**minimum [3]** 113/19 113/22 121/2
**minor [1]** 90/5
**minute [4]** 20/18 32/12 32/14 90/8
**misconduct [1]** 37/23
**missed [1]** 85/19
**misstate [1]** 68/19
**Mitchell [1]** 1/12
**model [3]** 82/1 96/22 98/10
**moderation [1]** 53/19
**modern [1]** 37/17
**modification [1]** 131/11
**Mole [1]** 105/4
**moment [2]** 70/2 86/19
**money [3]** 48/10 55/1 118/19
**monitor [1]** 104/18
**monitoring [1]** 105/13
**monolith [1]** 132/5
**Montgomery [1]** 17/6
**month [1]** 89/8
**months [1]** 94/11
**Moody [8]** 66/14 66/19 66/21 67/6 67/7 67/8 68/19 68/25
**moot [1]** 90/23
**more [22]** 23/6 32/3 32/4 36/11 40/4 44/18 49/13 50/17 50/18 55/22 62/10 62/13 67/2 78/2 83/18 86/12 93/19 102/23 118/13 119/21 131/20 132/11
**MORGAN [2]** 17/11 17/11
**mortgage [2]** 103/18 133/5
**most [12]** 44/1 63/2 63/12 75/6 80/25 93/8 94/2 94/5 94/17 100/3 100/7 113/12
**mother [1]** 40/16
**motion [9]** 1/5 1/10 22/7 22/14 80/18 83/19 101/2 136/25 137/4
**motions [2]** 69/23 137/9
**move [4]** 70/4 88/9 102/14 116/4
**moved [1]** 74/2
**Mr [9]** 21/4 21/5 21/6 21/7 21/8 21/9 21/10 21/11 90/19
**Mr. [16]** 22/10 22/15 22/19 22/21 61/4 62/1 65/14 67/22 68/2 88/15 107/16 107/16 108/22 136/2 136/8 137/19
**Mr. Deger-Sen [6]** 22/21 61/4 62/1 65/14 67/22

**68/2
**Mr. Kimrey [1]** 22/19
**Mr. Palmer [1]** 88/15
**Mr. Samir [1]** 22/15
**Mr. Stio [4]** 22/10 136/2 136/8 137/19
**Mr. X [3]** 107/16 107/16 108/22
**much [19]** 30/2 37/18 47/4 67/11 77/5 77/24 80/9 86/12 95/21 98/9 103/10 120/9 120/19 120/21 121/3 130/21 131/17 131/21 133/9
**Mulberry [1]** 18/7
**multiple [1]** 137/5
**municipality [1]** 72/23
**murder [4]** 33/2 62/5 133/20 133/21
**murderers [1]** 133/24
**must [4]** 24/19 25/4 57/1 89/10
**muster [2]** 99/5 101/10
**my [29]** 39/20 39/21 44/16 56/17 58/23 58/23 58/24 59/1 59/2 59/3 59/10 59/11 59/14 59/14 59/15 68/3 69/17 69/24 80/23 86/16 86/21 90/16 94/12 106/9 106/10 108/4 108/5 130/4 135/3
**MYHERITAGE [2]** 12/18 20/7

**N**

**N.J.S.A [4]** 57/3 57/5 87/4 87/11
**name [22]** 29/9 31/4 41/15 41/17 42/20 58/25 59/1 59/2 59/14 64/11 71/12 92/9 100/7 106/17 107/18 108/5 124/13 125/22 130/12 134/18 135/3 135/9
**names [5]** 85/11 124/19 125/7 125/9 130/7
**narrow [1]** 61/3
**narrowed [3]** 65/13 68/11 68/17
**narrowly [7]** 27/14 33/11 33/20 47/8 122/18 122/19 124/3
**nature [2]** 39/17 74/23
**necessarily [6]** 24/9 27/11 28/5 29/9 71/16 101/5
**necessary [6]** 23/7 42/11 49/14 49/16 49/17 49/19 62/16 67/14 67/18 74/24 76/24 80/24 81/13 84/17 91/21 104/19 111/5 112/13 113/23 122/11 129/18 130/3 135/24
**needed [1]** 55/8
**needs [5]** 40/8 42/20

**N**

**needs... [3]** 50/14 81/3 111/3

**negligence [44]** 32/9 32/13 79/9 79/15 79/20 79/23 80/15 81/25 83/6 84/5 84/8 93/23 93/24 94/8 95/13 95/22 96/13 96/17 96/18 98/5 99/12 99/17 99/24 101/9 101/16 101/17 101/24 102/10 102/12 103/2 110/6 110/13 110/17 110/25 111/7 111/8 111/16 112/18 113/12 114/8 123/22 127/7 127/11 127/14

**negligent [2]** 127/4 127/10

**neighbor [1]** 59/4

**neighbor's [1]** 59/7

**neither [2]** 23/14 122/19

**NetChoice [8]** 53/15 53/17 53/18 53/19 66/14 67/4 68/19 68/25

**neutral [3]** 125/2 125/3 125/25

**neutrality [1]** 103/23

**never [19]** 26/19 34/19 34/25 35/8 45/14 45/17 45/22 45/23 46/15 46/19 63/17 74/7 110/8 111/10 114/5 114/8 115/1 119/23 122/15

**new [92]** 1/1 1/13 17/3 17/16 17/20 18/3 18/3 18/7 18/11 18/11 18/19 18/19 19/9 19/15 19/18 20/3 20/3 20/6 20/6 20/11 20/13 23/9 33/2 43/15 44/17 45/19 46/19 56/22 57/2 57/8 57/9 57/15 57/17 58/2 58/14 61/9 61/21 62/18 62/19 69/6 72/11 72/14 73/10 73/13 73/17 81/8 82/1 83/15 87/6 87/8 87/21 87/23 88/9 88/10 89/5 89/18 90/9 91/8 91/23 91/24 91/25 93/5 93/18 93/20 95/10 95/17 95/20 96/1 96/22 97/3 97/25 98/8 98/9 98/13 98/18 98/24 107/11 107/18 107/23 108/16 113/14 115/9 118/10 131/13 131/25 132/5 132/6 132/11 132/14 132/18 134/1 134/3

**Newark [3]** 18/7 19/9 19/15

**news [1]** 73/5

**newspapers [1]** 73/8

**newsworthiness [1]** 73/19

**newsworthy [1]** 57/25

**next [15]** 1/19 2/25 3/25

4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 18/23

**nexus [4]** 33/13 43/25 121/7 129/4

**nicely [1]** 116/24

**night [3]** 42/15 100/14 138/17

**Ninth [1]** 65/19

**njd.uscourts.gov [1]** 1/21

**no [75]** 23/6 23/10 23/18 24/17 26/13 26/13 26/22 37/10 37/21 38/2 39/7 39/8 39/19 40/9 40/18 41/10 41/14 45/10 45/16 46/21 52/9 52/10 52/10 55/10 55/10 55/18 56/20 59/1 60/9 60/11 62/14 62/17 63/20 64/5 67/13 68/11 70/7 70/15 77/21 79/3 84/8 84/9 84/15 85/19 85/20 86/16 87/24 90/24 92/3 98/19 99/4 99/8 99/13 110/9 110/14 111/19 111/22 111/24 112/18 113/8 120/2 120/6 120/20 121/25 122/21 123/2 123/23 127/16 130/10 130/10 130/10 130/10 135/20 135/22 136/1

**no-fault [7]** 84/8 85/20 99/4 99/8 99/13 110/14 127/16

**noble [1]** 67/19

**nobody [2]** 92/10 98/20

**nondisclosure [2]** 39/2 39/4

**none [2]** 25/14 37/20

**North [3]** 17/24 18/13 19/12

**Northern [1]** 65/20

**not [179]**

**notable [1]** 75/1

**note [11]** 54/16 55/5 66/19 103/1 118/2 123/12 127/24 128/9 128/25 129/5 138/17

**noted [2]** 68/15 125/6

**notes [2]** 48/8 118/21

**nothing [7]** 46/11 49/21 59/24 100/21 102/23 118/23 126/8

**notice [45]** 75/13 78/17 79/5 79/8 80/4 80/8 80/12 81/13 82/13 82/17 82/18 82/21 82/23 83/2 83/4 83/23 83/25 84/17 84/19 84/24 84/25 85/2 85/8 85/13 85/23 86/1 86/7 86/9 88/16 89/4 89/8 89/9 94/3 94/3 94/16 94/19 96/4 100/16 100/19 100/22 121/2 127/3 127/5 132/1 135/4

**notices [1]** 135/10

**notification [2]** 111/13

111/17

**notify [1]** 88/20

**notion [3]** 61/11 65/7 66/12

**November [1]** 89/2

**now [34]** 27/24 28/15 31/11 34/17 43/5 44/15 45/9 51/14 51/17 51/19 61/9 63/3 63/11 64/11 66/5 67/17 70/8 79/2 79/22 83/5 85/20 88/13 89/7 90/9 91/2 91/23 93/5 93/17 94/10 99/2 119/11 126/12 127/6 135/16

**nowhere [2]** 60/25 127/11

**nuanced [2]** 66/21 67/9

**nub [2]** 50/3 120/13

**number [108]** 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 16/1 16/6 16/11 24/16 27/18 27/19 28/24 29/21 36/5 36/18 37/10 37/24 38/25 39/8 40/19 41/4 41/9 41/23 44/6 52/2 56/25 57/14 58/13 60/17 60/19 63/8 63/9 63/15 63/16 70/20 70/23 88/14 99/16 130/13 130/14 138/7

**numbers [23]** 24/18 27/25 28/16 30/9 36/13 36/14 36/23 37/1 37/11 60/9 62/24 63/1 63/3 64/22 67/12 70/17 71/16 74/16 82/24 88/8 89/18 122/3 130/8

**numerous [1]** 59/2

**NUWBER [1]** 13/23

**NW [1]** 19/3

**O**

**obligation [2]** 23/5 133/7

**obscured [1]** 108/11

**observation [1]** 110/17

**obtain [5]** 35/19 64/23 106/22 108/6 118/22

**obtained [7]** 29/25 33/4 36/18 60/9 60/13 118/14 119/17

**obtaining [2]** 33/6 36/22

**obvious [1]** 37/6

**obviously [6]** 29/8 33/13

35/22 54/10 69/22 107/11

**occasionally [1]** 104/21

**occurred [3]** 68/25 119/23 126/23

**occurs [2]** 44/19 89/11

**October [3]** 1/14 135/20 139/3

**October 11th [1]** 135/20

**odd [1]** 104/25

**off [5]** 30/16 76/6 88/21 105/4 109/24

**offenders [1]** 74/11

**offense [2]** 71/14 72/1

**offer [2]** 69/25 131/1

**offers [1]** 130/21

**office [13]** 20/11 20/13 91/3 103/12 106/6 106/15 107/8 108/21 111/22 119/22 132/18 132/19 134/16

**officer [11]** 29/22 35/22 72/22 73/6 92/8 100/5 100/6 100/8 100/11 100/12 105/6

**officers [10]** 28/1 30/10 40/4 41/21 57/24 61/18 68/6 72/12 74/17 108/9

**official [3]** 1/21 29/4 138/23

**officials [7]** 30/7 35/13 41/12 41/24 42/15 42/25 57/11

**often [4]** 28/20 114/11 120/24 120/24

**oh [14]** 38/8 47/18 51/2 51/16 51/19 77/16 80/20 90/25 94/12 95/5 109/11 109/21 136/15 136/16

**okay [16]** 30/21 35/17 51/19 58/16 60/17 66/5 76/3 89/5 89/12 94/15 102/12 103/4 109/25 134/9 137/16 138/10

**Oklahoma [1]** 26/19

**Olas [1]** 17/9

**once [9]** 63/16 63/16 75/4 77/1 84/16 105/2 123/9 124/4 133/3

**one [83]** 23/17 24/15 27/18 28/3 28/3 28/8 30/6 30/7 30/21 35/23 37/15 37/25 39/8 39/8 39/19 40/10 40/18 45/17 45/19 45/24 46/24 49/23 49/23 53/3 54/3 54/4 55/22 56/17 56/25 58/13 58/17 59/19 60/17 63/14 67/2 71/22 76/11 80/23 82/8 86/20 87/7 87/13 90/20 91/21 92/1 92/1 92/3 92/23 94/6 94/11 94/19 98/21 99/16 99/21 104/12 105/15 106/21 110/6 111/22 116/8 116/14 117/7 117/24 118/14 127/8 130/7 130/21 131/11 132/2 132/14

132/15 132/22 133/1 133/18 134/17 135/21 135/22 135/23 136/21 137/21 137/23 138/2 138/8

**one's [1]** 75/3

**online [1]** 71/1

**only [17]** 36/13 40/2 50/8 53/22 69/12 69/12 70/18 78/9 78/12 89/19 92/23 104/17 115/19 118/25 122/18 124/1 137/5

**open [6]** 22/1 29/17 31/4 92/16 93/7 131/14

**openly [1]** 39/18

**operated [1]** 113/20

**operations [1]** 105/15

**opinion [4]** 50/8 68/16 114/22 123/14

**opinions [1]** 31/8

**opposed [5]** 65/5 83/7 98/7 113/12 132/22

**opposite [1]** 23/7

**opposition [1]** 70/9

**opposition's [1]** 60/25

**opt [2]** 91/17 130/23

**opt-out [1]** 130/23

**option [4]** 38/21 44/25 75/4 75/10

**ORACLE [10]** 5/18 18/15 18/15 18/16 18/20 18/20 18/21 19/5 19/5 19/5

**oral [1]** 22/6

**Orange [1]** 17/16

**order [14]** 27/15 27/20 31/8 37/8 61/14 61/23 71/1 77/2 78/1 81/13 87/18 123/3 124/2 137/13

**ordinary [2]** 79/8 127/11

**organization [1]** 24/8

**other [65]** 23/12 24/21 25/10 30/13 33/7 35/6 35/20 36/10 36/12 38/23 43/18 43/19 44/5 44/18 44/24 47/6 47/11 47/15 48/25 50/6 50/17 53/13 54/5 60/22 64/15 69/22 71/13 74/25 75/19 76/14 78/5 82/23 85/12 85/18 86/18 88/17 89/16 97/5 98/24 104/20 104/22 104/24 105/14 105/23 106/2 107/11 110/13 114/5 116/1 116/4 116/7 117/7 119/5 119/6 119/11 119/18 122/20 124/18 125/18 127/8 129/8 129/10 131/2 134/13 137/7

**others [3]** 47/5 81/25 87/17

**otherwise [6]** 39/1 72/20 99/1 99/3 113/23 124/5

**our [32]** 25/1 25/21 30/12 33/13 37/20 55/17 56/7 56/14 57/7 59/18 59/19

**O**

**our... [21]** 59/24 59/25 59/25 60/20 61/6 63/5 67/24 71/23 73/13 74/8 83/10 93/21 98/6 105/15 105/17 117/17 124/24 126/1 126/21 128/23 130/23

**ourselves [3]** 104/13 104/16 105/20

**out [73]** 25/12 27/6 33/17 34/7 37/20 39/20 40/17 40/19 42/5 42/22 45/15 46/7 46/9 47/20 50/7 50/23 57/12 59/8 64/4 64/16 65/20 66/6 69/25 71/1 72/14 72/21 75/2 75/7 75/18 75/21 75/22 75/24 76/4 76/11 76/22 76/24 78/14 81/2 81/16 88/16 90/5 100/4 100/9 100/21 102/25 104/24 105/1 107/16 108/17 109/1 109/11 109/18 111/18 113/6 113/7 115/21 116/24 120/4 121/23 121/24 122/8 128/11 130/6 130/23 130/25 131/6 131/8 133/19 137/7 137/24 138/2 138/3 138/10

**outage [2]** 94/11 94/13

**outset [1]** 89/4

**outside [2]** 14/9 47/19

**over [15]** 32/20 63/22 64/1 66/7 67/20 75/21 76/12 76/13 93/11 109/16 111/22 120/2 126/21 127/22 138/13

**overall [1]** 34/22

**overbreadth [5]** 55/6 66/4 66/13 66/17 66/20

**overbroad [3]** 68/15 68/22 122/23

**overinclusive [3]** 120/18 121/11 129/4

**overinclusiveness [3]** 66/12 120/16 121/2

**overinclusivity [1]** 129/2

**overlap [1]** 69/3

**overload [1]** 137/8

**overrule [1]** 53/16

**overruled [1]** 53/15

**overwhelming [2]** 73/4 126/17

**own [11]** 25/1 34/16 45/18 46/1 71/15 75/3 75/17 77/5 93/21 105/15 131/4

**owner [1]** 134/7

**owners [2]** 133/25 134/14

**owns [2]** 46/16 46/18

**P**

**P.C [1]** 17/23

**p.m [4]** 1/14 90/13 90/13 138/22

**p.m. [1]** 22/3

**packages [1]** 59/11

**Packingham [2]** 53/12 120/18

**page [3]** 18/23 21/3 87/25

**pages [15]** 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 135/20

**painful [1]** 40/18

**PALMER [5]** 17/8 21/6 21/10 70/11 88/15

**paragraph [1]** 111/14

**PARENT [4]** 4/18 18/15 18/20 19/4

**PARIKH [5]** 17/14 21/7 21/11 86/24 90/19

**Park [1]** 19/21

**PARKER [1]** 19/10

**part [9]** 52/7 57/16 59/9 59/23 60/3 60/6 60/8 75/7 89/22

**partial [4]** 62/19 62/20 62/23 64/7

**participation [1]** 105/24

**particular [12]** 23/21 29/10 35/2 61/22 64/24 68/8 86/14 88/13 91/16 91/21 108/17 122/11

**particularly [3]** 56/15 66/8 119/8

**parties [4]** 53/22 90/23 104/14 104/15

**partner [1]** 69/17

**parts [1]** 128/6

**party [1]** 47/15

**pass [3]** 99/5 101/10 105/3

**passage [1]** 119/17

**passed [4]** 45/3 47/6 87/7 98/25

**passing [1]** 38/5

**pathway [1]** 130/24

**Paul [2]** 74/7 75/1

**PDF [1]** 136/19

**Pearl [1]** 17/3

**PEM [1]** 17/14

**penalty [1]** 44/10

**people [31]** 2/18 7/4 18/4 34/12 37/19 42/5 45/18 48/25 49/1 54/24 55/1 63/1 63/2 70/25 71/20 74/22 75/4 75/24 76/16 78/14 89/6 92/16 95/4 100/1 103/12 119/6 121/16 122/16 132/11 132/25 134/15

**PEOPLECONNECT [7]** 8/22 18/16 18/16 18/21 18/21 19/5 19/6

**PEPPER [1]** 17/18

**per [12]** 32/9 32/13 79/23 84/5 84/9 101/9 101/16 110/6 110/17 112/18 123/23 127/14

**per se [2]** 84/9 123/23

**percent [2]** 36/24 103/8

**perfect [1]** 33/16

**performance [3]** 41/6 41/21 41/23

**perhaps [2]** 122/1 135/7

**period [3]** 61/8 79/7 129/19

**periodically [1]** 63/22

**perjury [1]** 44/10

**permissibly [1]** 104/7

**permit [1]** 106/4

**permits [1]** 106/7

**person [41]** 39/7 39/22 40/14 44/15 46/17 70/20 75/10 75/13 75/14 79/6 80/7 83/3 83/7 85/12 85/12 85/22 86/10 86/13 86/14 88/19 89/18 89/20 91/21 91/22 94/5 96/2 105/5 107/19 108/18 108/20 109/4 109/7 109/9 124/3 132/1 132/15 133/3 134/6 134/18 135/1 135/3 135/9

**person's [4]** 38/1 38/24 103/13 135/9

**personal [6]** 119/4 119/9 120/1 120/1 120/3 120/11

**personally [1]** 48/5

**personnel [1]** 57/1

**persons [3]** 74/25 75/6 75/22

**perverse [1]** 110/18

**petitions [1]** 105/25

**PHELPS [1]** 20/2

**Philadelphia [1]** 88/10

**PHILLIPS [1]** 20/2

**phone [39]** 24/18 27/25 28/16 28/24 29/21 30/9 36/5 36/13 36/14 36/23 37/10 37/11 37/24 38/25 39/8 40/19 41/4 41/8 41/23 44/6 63/2 63/3 63/5 63/8 63/9 63/12 63/15 63/16 70/17 70/20 70/23 71/16 74/16 82/24 89/18 122/3 130/8 130/12 130/14

**photographed [1]** 63/23

**photographs [1]** 76/18

**phrase [1]** 111/13

**physical [1]** 106/24

**pick [2]** 108/18 113/6

**picked [1]** 69/1

**pizza [1]** 59/10

**place [6]** 42/2 72/22 106/21 132/14 132/17 133/2

**places [3]** 64/15 113/12 132/16

**plain [1]** 52/4

**plainly [1]** 55/17

**plaintiff [1]** 82/25

**plaintiffs [87]** 1/4 1/8 2/3 2/7 2/12 2/16 2/21 3/3 3/8 3/12 3/17 3/22 4/3 4/8 4/12 4/17 4/21 5/3 5/8 5/12 5/17 5/22 6/3 6/7 6/12 6/16 6/21 7/3 7/8

7/12 7/17 7/21 8/3 8/7 8/12 8/16 8/21 9/3 9/7 9/12 9/17 9/21 10/3 10/7 10/12 10/16 10/21 11/3 11/7 11/12 11/16 11/21 12/3 12/7 12/12 12/17 12/21 13/3 13/7 13/12 13/17 13/21 14/3 14/7 14/12 14/16 14/21 15/3 15/8 15/12 15/17 15/21 16/2 16/7 16/12 17/4 17/7 17/10 17/13 17/17 23/14 70/9 70/12 86/25 101/4 130/20 131/15

**planning [1]** 138/5

**play [1]** 109/1

**playing [1]** 105/4

**Plaza [1]** 19/8

**please [11]** 23/1 56/5 59/5 69/16 70/1 105/6 106/8 106/10 108/4 108/5 135/4

**POE [1]** 19/10

**point [27]** 37/21 44/4 61/2 61/24 62/16 71/1 72/21 75/22 81/19 88/16 90/5 93/15 104/11 104/12 105/2 113/7 115/21 116/13 123/8 124/8 126/3 130/25 131/6 132/10 133/17 133/19 134/23

**pointed [1]** 111/18

**points [9]** 57/22 71/6 75/2 105/16 105/16 116/7 123/5 123/10 133/18

**poke [1]** 103/11

**police [14]** 28/1 29/22 30/10 35/22 40/4 41/20 57/24 61/18 68/6 72/11 73/6 74/17 92/2 92/4

**policing [2]** 41/16 66/25

**policy [3]** 57/10 65/4 70/25

**poling [1]** 108/8

**political [2]** 70/24 119/7

**politics [2]** 119/5 119/13

**poorly [3]** 32/18 55/18 67/19

**population [1]** 40/3

**pornography [1]** 76/17

**poses [1]** 44/11

**positing [1]** 43/16

**position [7]** 30/23 54/20 55/17 83/10 125/3 125/4 127/4

**positions [1]** 132/12

**possible [5]** 55/15 93/18 106/25 112/15 117/20

**possibly [4]** 23/20 49/21 77/16 102/21

**post [1]** 76/17

**postcards [2]** 112/11 121/8

**posted [2]** 111/22 134/21

**posting [2]** 70/25 96/9

**posts [1]** 100/10

**posture [3]** 51/11 92/12

101/2

**potential [1]** 40/16

**potentially [1]** 73/3

**power [1]** 115/6

**practical [3]** 35/23 36/1 38/22

**Practices [1]** 131/16

**precedent [4]** 53/17 112/20 117/22 128/20

**precinct [1]** 107/14

**precipitated [1]** 119/16

**precisely [3]** 13/18 19/9 129/21

**premise [2]** 34/9 38/12

**prescribing [2]** 24/14 53/5

**present [3]** 20/8 76/21 83/19

**presented [1]** 51/20 83/21 92/18

**presents [1]** 75/16

**preserve [1]** 126/1

**President [2]** 59/18 132/12

**Presidents [1]** 59/19

**pressure [1]** 23/9

**presumably [3]** 44/14 81/16 108/23

**presume [2]** 84/11 114/15

**presumed [5]** 84/20 86/1 88/23 110/23 111/6

**presumption [2]** 84/11 86/6

**presumptively [1]** 68/13

**pretext [1]** 77/17

**pretty [10]** 32/25 43/5 54/21 76/9 77/22 94/18 95/21 99/4 129/15 130/21

**prevent [7]** 42/8 48/9 64/17 109/18 118/23 120/4 134/11

**preventing [1]** 74/11

**prevents [1]** 48/25

**PRICE [1]** 17/23

**primarily [1]** 61/3

**primary [5]** 22/15 30/12 55/17 57/2 57/21

**Princeton [1]** 17/20

**Princetons [1]** 132/7

**principal [1]** 75/25

**principle [2]** 82/4 86/3

**principles [3]** 73/18 81/8 81/16

**privacy [167]**

**privacy-based [2]** 35/7 72/3

**private [25]** 24/14 24/21 24/22 26/11 37/9 38/25 39/1 39/5 39/22 40/1 40/6 47/13 47/15 49/18 57/18 64/14 104/5 106/8 108/3 120/5 120/5 120/6 120/9 131/23 132/22

**privileges [1]** 105/23

**pro [3]** 19/23 20/2 20/5

**probably [6]** 49/8 67/16

**P**

**probably... [4]** 75/16 81/7 105/13 113/3
**problem [29]** 32/23 32/25 33/15 35/23 48/1 48/22 60/10 64/22 64/23 67/8 76/14 78/7 78/11 84/16 102/11 118/10 118/15 118/25 119/3 119/8 119/10 119/12 120/12 120/20 120/20 121/12 129/14 129/22 134/25
**problems [7]** 39/25 48/14 105/14 115/25 119/11 119/15 129/2
**procedure [1]** 31/5
**proceedings [4]** 1/23 22/1 138/22 139/1
**process [4]** 122/2 122/5 122/8 132/20
**produced [1]** 1/23
**product [1]** 54/5
**PRODUCTS [1]** 6/9
**profile [1]** 46/1
**prohibit [2]** 48/7 48/11
**prohibited [3]** 24/23 48/5 71/25
**prohibiting [1]** 77/7
**prohibition [2]** 23/11 25/6
**prohibits [1]** 71/12
**prong [1]** 31/19
**prongs [1]** 27/17
**propagate [1]** 76/12
**proper [7]** 25/16 25/18 25/19 25/22 25/23 72/6 107/14
**properly [6]** 26/2 31/18 41/23 51/22 53/10 129/21
**properly-tailored [1]** 26/2
**property [1]** 46/16
**PROPERTYRADAR [1]** 15/9
**PROPHETE [1]** 19/19
**proposed [1]** 137/12
**proprietorship [1]** 134/4
**prosecuted [2]** 134/19 134/20
**prosecution [2]** 29/13 55/10
**prosecutor [4]** 35/21 36/19 36/20 44/5
**prosecutors [10]** 27/25 41/6 41/20 57/1 57/24 61/19 68/6 72/12 74/16 89/6
**protect [7]** 35/25 36/4 36/10 36/10 43/6 100/1 108/13
**protected [8]** 61/20 74/18 110/20 110/21 111/4 113/24 115/16 115/17
**protecting [2]** 36/8 74/20
**protection [2]** 38/20 53/23
**protections [3]** 108/2

108/11 133/2
**protective [1]** 89/7
**protects [2]** 89/5 109/12
**prove [3]** 42/11 49/5 103/10
**provide [6]** 38/21 87/4 89/9 104/14 114/3 115/25
**provided [5]** 131/20 135/1 135/6 135/8 135/11
**provides [1]** 70/14
**providing [1]** 85/13
**provision [7]** 35/19 57/17 57/18 64/25 75/12 84/8 84/24
**provisions [4]** 32/6 33/14 47/9 121/9
**public [109]** 23/5 23/19 23/24 27/12 27/13 27/18 27/24 28/16 28/20 28/21 28/23 29/2 29/9 29/10 29/14 29/17 30/1 30/3 30/6 30/7 30/10 30/22 31/1 31/6 31/8 31/9 31/10 35/12 39/14 40/24 41/5 41/12 41/12 41/14 41/19 41/24 42/13 42/15 42/16 42/17 42/20 42/25 43/2 45/3 45/9 45/13 45/22 46/5 47/9 47/20 50/7 50/12 56/16 56/21 57/11 57/17 57/20 57/21 58/9 59/23 60/7 61/20 64/7 68/14 70/18 70/21 72/19 73/19 75/5 75/18 76/4 76/4 80/24 81/1 87/5 87/15 88/7 91/10 91/14 91/19 91/22 92/9 92/15 93/6 93/13 104/1 104/20 105/21 105/25 106/9 106/18 109/4 121/14 121/15 122/1 122/7 122/12 123/20 124/5 124/11 124/16 124/20 126/15 126/18 128/1 128/2 129/12 131/14 133/8
**publication [5]** 25/4 38/1 38/24 78/1 129/8
**publications [2]** 50/9 110/19
**publicity [1]** 128/2
**publicly [7]** 56/23 57/9 57/16 57/25 131/1 133/5 133/6
**publish [7]** 46/23 72/15 84/2 92/2 92/4 130/9 130/13
**published [2]** 29/25 46/1
**publishes [2]** 45/2 45/25
**publishing [1]** 46/7
**Publius [5]** 70/22 70/24 77/24 77/25 129/5
**pull [2]** 75/4 88/20
**punishing [2]** 25/4 124/3
**punt [1]** 117/9
**PURCARO [1]** 19/14
**purchased [1]** 71/1

**purpose [5]** 82/16 99/25 101/18 102/12 132/23
**purposeful [1]** 99/25
**purposefully [2]** 96/3 100/3
**purposes [2]** 101/1 112/13
**pursuant [4]** 74/12 110/19 111/13 135/4
**push [1]** 133/1
**put [5]** 30/13 76/23 132/16 134/16 137/13
**puts [5]** 76/22 85/25 89/9 90/4 127/4

**Q**

**qualifies [1]** 53/23
**qualify [1]** 64/8
**QUANTARIUM [1]** 4/4
**QUARRY [1]** 4/23
**question [30]** 31/2 38/12 40/23 51/6 51/7 53/20 54/8 55/12 69/13 77/21 80/19 81/5 83/12 83/17 83/23 85/14 85/24 87/3 88/14 91/11 92/3 116/8 116/19 117/19 124/1 126/12 126/14 127/19 128/15 136/22
**questioning [2]** 73/24 73/25
**questions [6]** 51/4 69/22 70/1 86/18 88/16 131/7
**quick [3]** 110/5 116/7 123/5
**quickly [2]** 118/1 121/13 130/16
**quite [3]** 76/2 113/10 130/16
**quotes [1]** 71/11

**R**

**radical [1]** 54/21
**raise [2]** 48/10 51/11
**raised [2]** 51/10 105/17
**raises [1]** 105/14
**Raj [1]** 86/24
**RAJIV [1]** 19/13
**rape [6]** 29/10 31/4 40/14 41/15 42/21 124/13
**rapidly [1]** 76/24
**rapist [1]** 40/16
**rather [4]** 24/18 102/3 125/11 126/11
**rational [1]** 76/2
**Raymond [2]** 19/8 19/14
**RDR [1]** 139/3
**RDR-RMR-CRR-CRC [1]** 139/3
**RE [1]** 6/4
**RE/MAX [1]** 6/4
**rea [7]** 32/8 44/2 78/17 82/9 110/9 111/12 111/16 129/10
**read [12]** 93/21 93/22 93/24 94/1 95/18 95/19 96/1 96/12 96/25 98/23

102/7 106/19
**readily [2]** 46/5 47/1
**real [5]** 2/22 70/15 77/3 105/24 126/3
**realize [2]** 61/9 86/10
**really [47]** 25/10 28/23 33/15 39/12 39/20 41/19 42/4 42/5 42/11 46/14 47/4 47/9 47/24 49/22 53/24 54/21 56/12 64/5 71/6 74/19 75/20 76/9 77/1 80/16 83/18 91/21 92/1 92/11 92/11 93/3 94/15 95/8 98/9 98/16 103/9 105/10 105/20 118/24 120/2 120/11 121/16 121/18 122/9 126/10 126/25 130/24 131/11
**realm [2]** 38/13 39/22
**Realty [3]** 18/14 18/19 19/4
**reappear [1]** 76/12
**reason [20]** 27/3 37/6 40/5 40/10 42/12 44/11 44/14 48/2 71/4 80/21 80/23 91/22 95/3 98/20 110/10 119/2 121/22 122/6 130/11 131/23
**reasonable [8]** 83/3 83/7 86/10 94/4 94/18 96/9 97/1 112/4
**reasonableness [4]** 52/8 97/20 99/24 112/5
**reasonably [2]** 94/20 96/11
**reasoning [2]** 72/5 72/25
**reasons [11]** 67/24 70/16 94/2 103/20 104/8 104/9 104/10 105/20 109/4 114/11 121/16
**rebuttal [2]** 110/2 110/3
**recall [1]** 64/11
**receipt [5]** 94/16 96/3 97/13 111/15 112/6
**receive [6]** 106/1 112/1 112/8 112/14 135/18 135/21
**received [12]** 45/4 46/8 79/5 80/13 83/2 85/22 94/3 111/17 111/20 135/11 136/3 138/18
**recently [1]** 66/14
**recess [2]** 90/9 90/13
**recklessness [3]** 110/24 111/3 111/6
**recognize [1]** 34/10
**recognizes [1]** 57/20
**reconciled [1]** 123/10
**record [8]** 40/15 61/7 72/1 90/24 106/12 106/18 128/19 139/1
**recorded [5]** 1/23 45/19 46/16 103/16 106/24
**Recorder [4]** 106/5 106/11 106/15 119/22
**records [7]** 76/5 131/13

131/14 131/22 133/4 137/3 137/7
**recurrences [1]** 76/25
**recusal [1]** 118/15
**recusing [1]** 48/11
**RED [2]** 5/23 17/21
**redact [3]** 106/10 108/5 133/7
**redacted [4]** 108/8 132/14 135/2 135/10
**redaction [2]** 76/5 133/3
**redisclosure [1]** 126/25
**reduce [1]** 49/13
**reduces [1]** 115/15
**Reed [2]** 53/11 128/12
**refer [1]** 60/1
**Reference [1]** 69/18
**referred [2]** 56/6 56/9
**referring [2]** 89/14 136/12
**refers [1]** 131/10
**reflected [1]** 30/3
**reflects [1]** 68/17
**refrains [1]** 104/13
**regard [1]** 68/2
**regarding [1]** 136/10
**regardless [1]** 128/14
**regime [2]** 77/22 103/11
**regiment [1]** 89/5
**registered [11]** 107/17 108/18 108/20 108/22 108/24 109/5 109/7 109/10 109/20 109/21 134/4
**registration [6]** 107/10 107/12 107/15 107/24 109/13 109/15
**registry [1]** 103/14
**regulate [8]** 47/23 50/13 73/5 104/16 122/21 125/9 126/18 129/15
**regulated [3]** 72/5 126/5 131/2
**regulates [3]** 23/3 49/15 126/15
**regulating [1]** 50/10
**regulation [3]** 54/6 68/13 119/1
**rehash [1]** 117/16
**rejecting [1]** 46/12
**related [1]** 119/11
**relation [1]** 52/3
**relationship [1]** 31/25
**release [1]** 116/20
**relevant [1]** 52/7
**relief [2]** 93/10 106/1
**relies [1]** 56/11
**reluctant [1]** 122/14
**rely [1]** 77/23
**remains [1]** 64/4
**remand [1]** 68/24
**remarks [1]** 53/3
**remember [1]** 88/17
**REMINE [2]** 8/9 17/21
**remove [5]** 89/10 89/17 106/5 130/24 132/3
**removed [6]** 89/20

**R**

**removed... [5]** 105/21 106/11 106/17 106/17 131/5
**renders [1]** 57/20
**repeat [1]** 69/11
**reply [1]** 135/22
**reporter [6]** 1/21 72/15 73/5 92/1 109/3 139/4
**REPORTER'S [1]** 138/23
**Reporter/Transcriber [1]** 139/4
**reporting [1]** 128/18
**reports [1]** 124/20
**represent [1]** 90/10
**reprisal [3]** 35/15 62/8 62/12
**request [10]** 24/19 91/17 96/4 97/14 97/14 109/16 112/1 112/14 129/19 131/4
**requests [4]** 105/10 105/19 105/21 133/3
**require [14]** 57/23 83/18 89/17 95/15 95/22 96/6 102/13 104/2 105/13 113/8 113/16 113/17 114/7 118/15
**required [5]** 40/22 58/9 58/20 78/1 79/6
**requirement [21]** 29/3 43/25 44/2 82/17 82/21 83/9 83/23 83/24 83/25 84/20 85/2 85/8 95/19 97/4 110/10 111/12 111/17 111/25 115/13 115/20 126/24
**requirements [4]** 32/8 32/9 87/15 115/9
**requires [5]** 76/8 82/17 89/19 94/3 123/18
**requiring [1]** 32/6
**RESEARCH [1]** 6/13
**reside [3]** 57/11 57/12 57/24
**residency [2]** 29/3 87/14
**resolve [1]** 34/13
**resolved [4]** 136/7 136/9 136/10 136/15
**resolves [1]** 127/17
**resources [1]** 55/1
**respect [12]** 24/2 26/17 38/6 57/14 66/20 67/11 87/4 88/14 120/7 126/24 127/10 134/23
**respond [1]** 127/5
**responded [1]** 92/21
**response [5]** 70/7 123/2 136/1 137/22 138/17
**rest [2]** 43/2 117/17
**restated [1]** 68/18
**Restatement [1]** 38/1
**RESTORATION [3]** 11/4 19/22 69/18
**restrict [7]** 24/10 41/19 45/23 46/15 49/6 49/16

49/17
**restricted [2]** 27/17 32/1
**restricting [2]** 31/12 134/11
**restriction [9]** 23/19 25/16 25/18 25/19 25/22 25/23 28/4 49/7 50/8
**restrictions [4]** 24/17 26/24 34/8 134/10
**restrictive [10]** 23/15 23/21 25/9 25/11 28/11 47/8 49/11 104/2 122/19 122/20
**results [2]** 110/18 112/24
**return [6]** 58/4 58/6 58/9 58/10 58/13 59/17
**returns [2]** 58/21 58/21
**REUTERS [1]** 9/23
**revealed [1]** 39/14
**revenge [1]** 76/16
**revenue [1]** 58/14
**review [1]** 52/9
**rewrite [1]** 25/25
**Reyes [2]** 67/2 67/7
**riddled [1]** 118/3
**right [155]**
**rights [1]** 105/23
**rise [5]** 22/4 90/12 90/14 91/16 138/21
**risk [9]** 13/13 16/3 61/17 75/16 75/23 79/10 79/11 91/18 100/1
**risks [1]** 74/23
**Riverfront [1]** 19/8
**RMR [1]** 139/3
**road [2]** 28/5 101/13
**ROBERT [2]** 18/2 18/13
**ROCKETREACH [2]** 14/4 17/22
**ROCKWELL [1]** 12/9
**role [2]** 25/21 25/23
**Rose [2]** 20/10 20/16
**Roseland [1]** 19/18
**route [3]** 38/16 116/10 116/11
**rubric [1]** 74/18
**rule [1]** 34/20
**rules [1]** 38/6
**run [3]** 43/9 61/17 103/25
**running [2]** 48/5 96/9
**RUTH [1]** 19/2
**RYAN [3]** 17/11 20/10 20/15

**S**

**safe [3]** 40/7 68/7 95/4
**safeguard [1]** 72/7
**safety [23]** 6/9 23/16 32/2 35/10 35/12 36/15 37/5 39/25 40/2 40/8 40/9 43/8 47/9 49/19 61/18 61/25 62/2 62/3 62/13 65/23 94/24 94/25 95/6
**said [34]** 24/6 25/2 36/14 48/13 50/10 51/24 52/6 53/4 53/22 62/2 62/3 64/10 64/12 67/8 72/21

75/24 84/2 85/21 89/1 92/1 101/8 101/10 103/8 109/3 110/15 111/5 113/24 114/5 117/6 119/8 121/18 126/9 128/10 135/2
**Salas [1]** 33/4
**Salas' [3]** 33/2 43/3 62/5
**sales [1]** 104/23
**same [18]** 24/25 31/9 40/18 40/21 42/18 47/16 47/16 48/20 72/21 76/11 76/12 76/20 95/21 100/6 100/10 120/8 120/9 124/23
**SAMIR [3]** 18/18 22/15 23/1
**San [1]** 17/6
**SANDERS [1]** 17/18
**SANDLER [1]** 19/16
**SARAH [1]** 19/11
**satisfied [3]** 45/8 60/18 61/22
**satisfies [1]** 61/23
**satisfy [3]** 49/8 60/3 103/20
**satisfying [1]** 102/6
**SAUL [1]** 19/7
**saving [1]** 64/4
**say [84]** 28/3 31/1 32/23 33/12 34/12 34/15 34/19 35/1 35/5 35/20 37/6 38/21 42/13 42/19 48/20 48/22 50/21 51/12 53/8 56/25 68/9 68/15 68/21 72/13 74/3 75/21 76/3 77/13 78/24 79/14 82/4 82/19 83/11 87/5 87/12 91/10 93/3 93/13 94/12 95/13 96/3 97/7 97/17 97/19 97/23 98/14 98/18 99/13 101/15 101/21 101/22 102/1 102/15 102/15 102/22 102/23 103/11 104/25 105/14 106/8 106/10 106/15 107/14 107/17 108/5 108/21 108/24 111/16 112/4 112/10 112/25 115/10 117/4 117/16 118/18 120/3 120/7 121/13 122/14 124/19 126/22 127/9 129/4 130/1
**saying [23]** 30/9 43/12 45/21 46/14 46/20 50/12 53/10 65/21 82/20 86/8 86/19 92/7 98/3 98/15 98/21 99/9 99/17 99/17 103/7 104/3 120/4 122/21 129/1
**says [33]** 24/24 28/12 35/11 42/7 44/10 46/5 47/22 58/3 65/17 65/18 65/18 78/8 83/20 84/14 85/4 89/25 93/2 97/16 100/4 100/11 105/6 108/3 111/3 112/6 115/2 116/24

117/22 123/15 124/21 127/11 127/13 128/21 129/9
**SCALABLE [1]** 6/18
**scale [1]** 100/1
**Scalia's [1]** 50/5
**scattered [2]** 23/25 64/14
**scenario [2]** 46/24 94/10
**scheme [1]** 77/3
**SCHILLER [4]** 17/2 17/5 17/8 70/12
**school [1]** 132/6
**Schrader [5]** 27/5 116/15 117/15 117/25 128/10
**Schuster [1]** 53/12
**SCHWARTZ [1]** 17/19
**scienter [9]** 79/12 82/12 82/16 82/18 91/11 93/15 95/19 95/22 95/23
**scienter-type [1]** 79/12
**scope [2]** 23/11 89/6
**SCOTT [1]** 18/6
**scrutinize [4]** 30/7 41/5 41/7 42/15
**scrutiny [40]** 25/25 26/5 26/9 26/16 26/19 27/2 27/4 28/9 33/23 41/12 43/11 49/9 49/9 49/11 49/12 52/8 61/3 65/8 65/13 66/11 67/23 68/11 71/7 71/18 71/24 77/13 103/20 103/21 116/11 117/1 117/15 117/17 117/18 117/22 124/22 125/11 125/15 125/20 128/14 128/23
**se [12]** 32/9 32/13 79/23 84/5 84/9 101/9 101/16 110/6 110/17 112/18 123/23 127/14
**seal [3]** 137/4 137/4 137/9
**sealed [2]** 136/18 137/7
**sealing [1]** 136/22
**SEARCH [1]** 4/23
**SEARCHBUG [1]** 15/18
**SEARCHERS [2]** 2/18 18/4
**seated [2]** 22/5 90/15
**seclusion [1]** 128/5
**second [7]** 60/6 62/7 65/9 74/3 89/22 130/7 137/20
**secure [1]** 76/5
**securities [1]** 79/12
**security [10]** 35/12 35/21 36/1 36/12 36/18 37/1 38/15 38/16 38/22 62/13
**see [14]** 23/21 31/25 41/3 42/19 42/24 56/2 85/24 92/19 94/8 94/15 96/13 125/21 127/6 131/20
**seek [1]** 54/25
**seem [3]** 33/24 78/24 119/5
**seemed [1]** 38/12
**seems [9]** 27/16 27/21 44/18 80/20 97/12 98/12

98/14 102/14 130/11
**seen [7]** 34/17 37/14 63/3 63/14 104/24 114/9 130/22
**self [1]** 66/25
**self-policing [1]** 66/25
**selling [1]** 105/3
**semantic [1]** 95/8
**seminal [1]** 56/12
**SEN [11]** 18/18 21/4 21/9 22/15 22/21 23/1 61/4 62/1 65/14 67/22 68/2
**send [4]** 120/8 130/15 132/1 136/19
**sending [2]** 48/8 120/5
**sense [7]** 62/4 82/11 82/18 104/8 104/15 120/3 122/1
**sensitive [3]** 59/18 62/16 129/7
**sent [1]** 94/3
**separate [1]** 131/12
**September [4]** 136/3 136/14 137/21 137/22
**September 27 [1]** 136/14
**September 27th [1]** 136/3
**September 27th and [1]** 137/21
**September 30th [1]** 137/22
**series [1]** 25/12
**servant [2]** 29/2 122/1
**servants [4]** 28/21 31/8 61/20 122/7
**serve [1]** 23/20
**set [9]** 33/3 33/5 34/16 35/2 48/16 52/10 67/24 77/17 125/14
**sets [1]** 94/4
**settled [1]** 90/23
**Seventh [1]** 20/6
**several [2]** 44/23 60/22
**severe [1]** 47/25
**severely [3]** 47/10 47/11 50/13
**sex [1]** 74/10
**sexual [2]** 71/14 125/7
**sexually [1]** 76/18
**SEYFARTH [1]** 18/2
**shameful [1]** 39/16
**share [1]** 100/5
**shared [2]** 62/17 62/18
**SHAW [2]** 17/2 18/2
**she's [1]** 108/22
**sheet [1]** 20/18
**ship [2]** 112/11 121/8
**short [1]** 118/25
**should [23]** 42/13 46/25 58/7 62/11 68/6 71/17 77/12 86/10 88/25 105/1 108/6 112/5 113/1 113/3 116/10 116/10 117/23 117/24 125/11 128/21 130/23 133/6 135/20
**shouldn't [3]** 38/16 46/25 68/12

# S

**show [8]** 33/15 47/7 49/10 49/13 61/22 68/20 82/25 108/7
**showing [2]** 23/14 109/16
**shows [6]** 25/8 37/3 46/11 72/5 77/15 92/14
**side [4]** 25/10 104/22 116/1 135/22
**side's [1]** 53/13
**sides [1]** 54/7
**SIDLEY [1]** 20/5
**sign [3]** 20/18 105/25 126/5
**sign-in [1]** 20/18
**significance [15]** 27/18 27/24 28/16 40/24 56/16 56/21 57/21 60/7 91/11 91/14 92/9 92/16 93/6 93/13 104/1
**significant [8]** 24/13 24/16 30/10 30/21 56/23 57/9 57/25 124/11
**signs [1]** 126/5
**silentio [1]** 53/16
**similar [4]** 76/19 81/17 128/1 129/23
**similarly [1]** 75/12
**Simon [1]** 53/12
**simple [1]** 63/11
**simply [5]** 37/24 45/21 76/9 80/19 99/17
**since [1]** 95/12
**sincerely [3]** 50/1 50/2 112/2
**single [5]** 50/24 58/14 112/15 130/21 135/10
**sir [2]** 58/1 123/4
**sit [1]** 51/2
**sitting [1]** 108/19
**situation [17]** 24/3 29/1 36/8 48/18 54/11 65/16 72/17 72/18 73/1 112/25 114/16 115/16 116/19 118/3 118/5 119/19 119/23
**situations [5]** 39/24 73/7 92/15 111/19 112/18
**six [1]** 90/8
**six-minute [1]** 90/8
**size [1]** 126/5
**sleep [1]** 100/14
**small [3]** 40/3 50/9 112/12
**smaller [1]** 37/18
**SMARTY [2]** 16/13 20/4
**SMITH [9]** 19/19 92/8 92/23 100/6 100/12 105/6 112/3 134/25 135/3
**Smith's [4]** 100/5 100/8 100/11 112/3
**Smiths [1]** 112/1
**snapshot [1]** 63/21
**so [213]**
**so's [1]** 79/20
**SOBIECH [1]** 19/23
**social [6]** 36/11 36/18

37/1 66/22 67/10 134/22
**society [1]** 133/13
**sold [1]** 105/8
**sole [1]** 134/4
**solicit [1]** 118/19
**solicitation [7]** 119/4 119/9 120/11 120/2 120/3 120/10 120/11
**soliciting [1]** 48/6
**Solicitor [2]** 20/11 20/13
**solution [2]** 36/2 132/16
**SOLUTIONS [1]** 7/18
**solve [10]** 32/23 33/1 33/15 48/14 48/14 118/15 119/9 119/11 119/12 119/15
**solving [1]** 118/25
**SOM [1]** 87/25
**SOM-L-465-18 [1]** 87/25
**some [43]** 31/16 31/25 33/14 34/12 39/22 39/24 43/12 43/17 48/23 48/25 49/6 50/22 53/8 70/22 75/16 77/15 79/10 79/12 79/18 81/6 81/22 82/16 82/18 84/18 85/18 88/17 90/16 91/22 94/8 97/13 101/8 101/17 101/18 103/2 103/11 106/22 107/12 108/10 110/14 113/11 131/7 134/8 137/3
**somebody [8]** 28/24 44/6 46/16 76/22 79/11 86/1 106/5 107/16
**somehow [2]** 47/19 115/17
**someone [31]** 29/4 32/7 37/23 44/9 44/13 44/22 45/25 46/6 46/8 49/24 74/6 76/19 78/10 91/20 97/11 100/12 105/4 105/21 106/14 107/6 107/8 108/2 108/5 108/15 109/3 109/18 111/21 121/23 121/24 122/3 135/17
**someone's [2]** 40/13 90/10
**Somerset [1]** 87/23
**Somerville [4]** 87/9 87/23 87/24 90/21
**something [35]** 29/4 39/16 39/17 39/18 39/21 39/24 40/12 45/8 46/6 47/1 47/2 56/19 57/20 69/11 70/24 71/2 74/6 76/9 81/17 97/8 98/15 102/11 102/13 102/16 110/23 111/6 112/9 113/4 113/7 114/8 116/4 122/7 126/22 130/15 130/21
**sometimes [2]** 29/4 108/8
**somewhat [1]** 74/24
**somewhere [8]** 45/15 45/18 64/16 103/15 103/16 106/11 106/23 107/17

**son [3]** 33/3 43/3 62/5
**Sorrell [4]** 26/10 34/4 52/25 65/17
**sorry [7]** 25/17 54/16 94/12 95/25 100/9 112/22 133/18
**sort [35]** 24/5 25/25 26/10 28/7 28/9 31/19 32/3 40/10 40/17 41/25 42/4 43/9 46/11 47/3 55/15 74/3 75/19 76/25 78/2 83/19 85/18 91/22 94/24 97/13 100/1 101/17 101/18 103/11 112/4 116/8 122/10 126/6 128/1 128/7 128/9
**sound [1]** 66/13
**sounds [2]** 56/15 66/12
**source [5]** 45/5 46/5 46/9 76/6 108/1
**sources [2]** 59/2 99/21
**South [2]** 17/3 19/11
**speak [4]** 45/12 69/10 70/25 71/20
**speaking [2]** 55/22 68/3
**speaks [1]** 99/1
**special [1]** 23/5
**specializes [1]** 94/6
**specific [25]** 31/1 31/3 32/6 33/5 41/15 44/1 48/16 48/18 72/24 76/8 92/7 92/15 92/17 93/4 95/25 96/2 96/16 96/18 97/4 100/4 101/18 115/23 123/18 133/20 135/2
**specific-intent [1]** 96/18
**specifically [8]** 22/7 58/20 79/23 84/4 87/3 99/1 99/2 118/2
**speech [61]** 23/4 23/6 23/11 23/19 24/8 24/9 24/10 24/14 24/25 27/17 31/24 32/1 34/14 42/8 42/17 45/5 45/10 45/23 49/6 49/8 49/13 49/17 50/11 50/16 51/22 52/18 54/12 54/13 54/22 55/19 68/14 69/6 70/21 72/19 73/19 80/24 81/1 103/23 110/9 110/11 111/1 111/4 111/5 113/24 114/1 115/16 115/17 120/19 121/3 121/3 123/19 124/4 124/7 124/10 124/15 124/20 124/22 125/12 126/15 126/18 130/7
**spent [1]** 133/9
**spoken [1]** 99/2
**SPOKEO [1]** 10/22
**spread [1]** 129/11
**Square [1]** 20/3
**squarely [1]** 61/11
**stage [1]** 83/19
**stalk [1]** 107/8
**stances [1]** 71/2
**stand [7]** 33/12 50/21 54/18 54/19 93/4 108/25

111/8
**standard [49]** 26/3 26/13 26/25 27/2 27/12 27/16 27/22 28/3 32/15 38/3 55/7 56/10 60/2 60/3 71/5 73/18 79/15 80/1 80/24 81/5 81/25 83/6 83/16 85/18 93/14 94/5 96/18 96/18 97/6 99/17 101/24 102/22 103/21 103/22 110/15 110/18 110/24 111/3 112/5 112/6 113/2 113/25 123/17 124/1 124/8 125/5 125/14 127/12 127/20
**standards [2]** 26/17 38/13
**Star [63]** 24/6 25/3 26/12 26/18 27/13 28/14 29/6 29/8 29/12 30/19 30/25 31/10 32/10 32/13 38/18 40/11 40/12 41/14 42/18 50/4 56/7 56/11 60/2 66/1 70/14 70/15 71/11 71/17 74/5 77/3 77/5 77/25 79/22 80/24 84/1 85/10 92/20 92/22 101/9 101/16 102/7 103/22 110/11 110/16 113/24 116/10 116/25 117/14 121/1 123/11 123/13 123/17 123/25 124/8 124/11 124/21 125/5 125/11 126/12 127/11 128/22 129/6 129/9
**Star-type [3]** 74/5 124/21 128/22
**start [5]** 56/16 56/18 56/19 122/2 122/8
**started [1]** 116/9
**starting [1]** 76/3
**state [47]** 23/3 23/12 25/3 27/19 29/2 31/12 31/13 31/14 35/22 43/12 46/18 50/17 56/22 57/2 57/8 57/9 57/10 57/11 57/12 57/14 57/20 57/24 58/4 58/6 58/14 61/13 61/21 62/18 62/19 72/12 75/8 79/25 87/18 88/6 89/18 93/16 93/18 99/11 108/4 114/7 124/2 131/4 131/7 131/25 132/10 132/21 134/5
**state's [2]** 77/19 93/21
**stated [1]** 53/3
**statement [2]** 23/23 112/19
**states [11]** 1/1 1/16 22/2 43/13 47/2 47/6 81/22 98/8 98/24 113/11 132/12
**statewide [3]** 107/15 108/16 116/21
**stating [1]** 70/16
**statistical [1]** 62/17
**statute [207]**
**statute's [1]** 52/4

**statutes [34]** 26/8 26/11 32/5 34/1 36/9 36/9 43/18 43/25 44/1 52/12 56/25 57/3 57/23 72/3 73/14 77/6 77/23 77/25 80/17 82/5 86/15 87/14 88/18 99/5 102/9 102/9 104/24 110/15 114/12 122/21 125/15 129/6 129/23 131/12
**statutory [7]** 79/7 81/7 81/10 81/12 88/15 97/1 112/6
**stay [1]** 54/23
**stenography [1]** 1/23
**step [1]** 99/15
**steps [2]** 42/7 45/23
**Stevens [5]** 55/7 55/9 55/14 64/12 120/25
**stick [2]** 30/15 30/18
**still [14]** 33/11 41/6 42/15 48/22 50/7 51/23 63/12 75/25 78/13 103/14 106/14 117/14 127/19 127/25
**STIO [5]** 17/18 22/10 136/2 136/8 137/19
**stipulate [1]** 61/20
**stop [3]** 105/6 105/7 120/5
**stopped [1]** 103/12
**straight [1]** 46/22
**straightforward [1]** 23/17
**stranger [1]** 108/20
**street [17]** 17/3 17/6 17/12 17/24 18/7 19/3 19/11 92/2 92/8 92/9 108/6 109/2 109/12 109/22 109/23 109/24 135/4
**Streets [1]** 1/13
**strict [56]** 26/5 26/9 26/16 26/19 27/2 27/4 28/9 33/23 43/10 49/9 52/8 61/3 65/8 65/13 66/11 67/23 68/11 71/7 71/18 77/13 78/21 78/25 79/2 79/4 80/1 80/16 82/22 83/9 88/18 89/24 93/22 99/7 101/15 101/22 102/1 102/4 102/8 102/16 102/23 103/20 103/21 110/7 110/14 116/10 117/1 117/15 117/16 117/18 117/21 124/22 125/11 125/15 125/19 128/13 135/16 135/18
**strikes [1]** 113/21
**struck [3]** 52/12 53/9 110/14
**struggled [1]** 131/22
**stuck [1]** 101/3
**stuff [2]** 109/22 117/17
**sub [1]** 53/16
**subject [6]** 42/25 43/10 95/15 113/25 124/22

**S**

subject... [1] 135/25
subsection [2] 40/3
111/14
subsidize [1] 105/18
substantial [1] 52/2
subtle [1] 78/2
successfully [1] 105/7
such [5] 32/6 52/8 54/9
118/20 119/6
suddenly [1] 34/6
sued [1] 131/15
suffered [1] 40/15
sufficient [1] 48/23
sufficiently [1] 67/23
suggest [3] 25/22 25/23
97/13
suggestion [1] 92/21
Suite [9] 17/9 17/16
17/19 18/13 19/3 19/11
19/14 19/21 19/24
summarized [2] 24/1
64/18
summary [1] 64/13
supplemental [6] 22/19
56/16 60/21 115/23
135/17 135/18
support [1] 69/4
supposed [2] 26/3 133/5
supposedly [1] 106/17
suppress [2] 122/14
122/18
suppressed [1] 63/18
suppresses [2] 50/16
110/9
suppressing [3] 42/8
45/10 50/11
suppression [3] 62/20
62/21 62/23
Supreme [63] 24/2 24/6
25/2 26/16 27/1 27/7 27/9
28/12 32/10 32/22 32/23
34/13 34/15 34/18 40/23
47/22 48/4 48/13 48/21
50/1 52/12 53/8 53/15
53/16 53/22 55/4 55/14
57/19 64/10 65/19 66/9
66/14 76/16 78/23 80/16
81/21 83/20 91/24 93/2
99/4 99/8 101/8 101/10
110/8 111/5 111/9 112/20
112/25 113/20 113/23
114/2 114/5 114/11
114/20 114/25 115/3
115/6 115/8 119/1 119/3
120/14 120/24 124/24
sure [20] 39/12 58/2
62/12 65/15 67/19 86/22
98/20 101/7 107/9 108/14
112/16 116/1 116/4
121/21 125/13 126/7
133/2 136/23 137/11
137/15
surgery [1] 26/1
suspenders [1] 68/16
suspicious [1] 122/4
Sussex [1] 106/16

sustained [1] 123/24
sweep [5] 52/4 52/11
55/17 55/18 121/9
sweeping [4] 23/10 46/12
93/3 120/21
sweeps [4] 31/23 44/24
120/19 121/3
SYNAPTIX [1] 12/4
synonymous [1] 66/13
system [4] 35/13 103/16
103/18 118/20
systems [6] 4/9 8/13 8/18
132/3 132/24 132/25
SZYBA [1] 18/2

**T**

table [1] 30/16
tact [1] 36/4
tailored [21] 26/2 27/14
31/18 32/18 33/11 33/20
43/11 43/15 47/8 48/1
49/5 51/22 53/10 55/18
67/24 81/4 103/19 122/18
122/19 124/3 125/12
tailoring [14] 33/17
47/25 48/22 49/4 50/3
61/4 65/7 65/13 68/11
68/17 77/4 84/16 116/11
120/23
take [15] 22/21 23/17
27/22 36/3 45/23 75/5
79/6 90/8 106/9 107/25
108/4 112/9 123/21 125/4
129/6
takedown [5] 24/19
112/1 112/14 132/1 135/4
taken [3] 90/13 112/2
138/20
taking [2] 30/16 122/1
talk [9] 27/7 87/14 91/11
131/17 131/19 131/19
132/13 132/21 134/10
talked [6] 24/6 43/18
79/23 84/4 127/23 135/16
talking [16] 26/13 33/22
33/23 34/23 40/25 41/18
60/12 73/6 78/24 83/6
88/18 118/7 118/23
125/22 132/23 133/10
talks [2] 89/13 89/22
Tampa [1] 17/12
target [1] 78/12
targeted [1] 100/3
targeting [1] 76/8
targets [1] 76/17
taught [1] 57/19
tax [8] 58/4 58/6 58/9
58/10 58/13 58/21 58/21
59/17
teachers [2] 87/17 88/12
teachers' [1] 88/12
tech [2] 94/7 112/10
technologies [3] 9/9 18/8
76/21
TECHNOLOGY [1]
12/4
tees [1] 106/20

telephone [8] 37/12
37/12 37/13 37/14 37/18
62/24 63/1 88/8
tell [4] 81/12 98/17 102/4
109/1
telling [1] 115/1
tells [1] 40/7
TELNYX [1] 11/13
TELTECH [1] 8/18
ten [12] 24/18 85/4 85/19
94/3 94/17 94/19 111/14
112/9 129/19 132/2
132/22 135/19
ten-day [2] 85/19 129/19
tend [1] 118/13
tens [1] 131/3
tension [1] 34/14
term [7] 26/9 26/19 27/1
32/13 33/24 91/25 125/15
terms [7] 83/16 88/6
88/16 89/14 113/4 115/9
128/22
terrible [1] 62/5
territory [1] 81/2 83/4
124/5
test [12] 40/24 49/8 52/2
52/8 56/6 56/7 56/9 56/14
60/3 68/1 68/19 125/12
text [7] 81/10 81/12 94/2
99/21 99/22 99/23 102/19
thank [28] 22/24 48/8
51/1 55/20 55/21 69/8
69/9 69/15 70/2 70/5
86/23 86/24 90/6 90/11
91/1 110/1 110/4 118/21
122/24 122/25 123/7
129/24 135/13 135/15
137/18 138/12 138/16
138/19
them [34] 25/15 36/1
40/7 40/18 42/1 42/1
42/16 47/10 47/11 53/6
63/13 66/6 74/23 75/23
85/13 86/16 90/10 91/18
92/19 92/21 96/5 98/10
100/7 101/4 112/15
117/24 122/7 122/9 127/4
127/5 130/21 130/25
134/15 138/4
theoretically [1] 106/14
theory [1] 47/18
therefore [1] 103/14
thereof [1] 111/15
these [40] 24/24 25/1
28/6 28/14 30/3 33/13
37/14 37/17 37/20 46/12
46/21 47/3 47/8 47/22
49/9 57/2 57/11 57/15
57/23 59/22 60/9 60/9
61/12 63/1 66/6 67/13
77/18 88/20 88/24 90/1
92/14 94/5 96/23 105/10
106/2 120/5 121/7 121/22
128/11 134/11
they're [26] 36/7 42/10
44/20 57/6 59/24 78/10
82/5 93/11 94/9 95/20

96/8 96/10 101/3 101/3
102/9 104/1 105/8 107/13
107/14 109/8 109/23
111/12 111/15 118/19
120/3 137/6
they've [10] 38/14 46/1
47/12 51/20 61/2 70/19
71/5 71/6 100/16 105/7
thick [1] 37/14
thin [1] 113/6
thing [16] 24/12 28/3
29/5 35/6 42/3 47/11
48/21 66/18 79/13 86/20
94/13 95/22 102/7 106/20
121/13 126/6
things [21] 32/11 39/13
45/24 59/14 63/23 66/13
90/5 101/19 106/2 122/9
130/4 136/2
think [221]
thinking [5] 28/7 47/4
70/14 98/4 128/7
thinks [4] 39/20 39/23
92/10 113/2
third [23] 27/5 31/19
32/3 47/15 51/24 52/1
53/21 61/13 66/2 71/22
74/8 74/21 75/1 75/23
104/14 104/15 116/15
117/22 118/1 128/16
128/20 131/16 132/17
this [202]
THOMSON [1] 9/23
thorough [1] 77/22
though [9] 26/7 29/3 35/6
61/7 81/13 84/24 117/13
125/4 128/6
thought [6] 69/24 78/12
83/18 97/24 117/6 137/24
thousands [4] 132/8
132/15 132/24 132/24
threat [6] 32/7 32/8 44/1
44/4 44/12 44/19
threatened [4] 36/19
44/20 134/15 134/19
threats [3] 42/25 91/16
111/2
three [17] 27/17 27/21
27/22 28/15 28/15 40/24
60/3 60/19 65/10 65/10
69/1 88/25 89/1 111/20
116/7 122/3 131/12
three-factor [1] 40/24
three-part [1] 60/3
threshold [3] 25/12 25/14
126/14
through [21] 25/14 28/15
30/13 35/19 36/19 36/22
38/20 38/23 43/9 46/9
56/14 59/2 63/18 73/24
78/3 106/3 112/15 112/16
119/7 129/11 130/23
throw [1] 25/12
thrown [1] 93/12
Thursday [5] 136/5
136/17 138/4 138/6
138/11

thus [2] 23/19 52/10
tie [1] 68/17
tiers [2] 49/9 71/24
ties [1] 65/7
till [1] 44/19
time [16] 27/10 34/12
37/20 54/8 63/22 64/1
67/20 98/8 98/9 114/22
121/14 125/6 131/20
133/1 133/9 136/7
times [3] 20/3 53/20
75/21
title [5] 82/2 103/16
131/13 131/15 131/18
today [4] 25/13 98/3
135/25 136/5
ton [1] 104/15
tons [1] 112/12
too [15] 23/4 42/10 45/12
55/7 67/5 101/1 103/10
107/19 115/4 116/1
120/19 120/21 120/22
121/3 121/10
took [1] 94/12
topic [2] 29/11 31/2
tort [29] 34/11 37/23
38/5 79/17 79/18 79/20
81/8 81/23 82/3 95/10
95/12 98/8 98/11 98/14
98/21 98/22 98/22 99/12
99/13 99/13 113/8 113/12
113/13 113/15 126/19
127/1 127/17 128/2 128/5
torts [10] 34/13 37/21
38/3 38/10 39/15 96/23
96/24 97/5 124/9 128/7
total [2] 62/4 109/14
totality [1] 33/1
totally [8] 42/2 58/22
59/21 59/21 64/19 77/11
93/9 102/6
toward [1] 118/13
towards [1] 53/6
town [5] 92/4 92/10
109/10 109/21 128/12
towns [1] 132/7
Trade [1] 131/16
tradition [1] 37/11
traditional [2] 34/7 74/19
traditionally [2] 34/10
73/14
tragedies [1] 134/12
tranches [1] 105/3
transaction [2] 49/20
49/23
transactions [2] 78/4
105/2
Transcriber [1] 139/4
transcript [2] 1/23
138/25
transcription [1] 1/23
transfer [4] 47/14 47/16
104/14 134/9
transfers [2] 47/19
129/20 133/19
translated [1] 137/15
transmitting [1] 54/3

**T**

**TRANSUNION [3]** 10/9 20/16 124/19
**trauma [1]** 40/15
**treated [2]** 66/17 131/8
**treatise [1]** 37/25
**treats [1]** 104/5
**trial [3]** 87/22 88/5 114/6
**tried [2]** 37/7 129/1
**trigger [1]** 46/25
**triggers [1]** 54/9
**trouble [1]** 99/16
**TROUTMAN [1]** 17/18
**true [19]** 32/14 34/2 35/3 38/4 39/9 40/9 44/4 44/8 47/21 48/17 49/22 50/4 50/23 103/15 105/18 111/2 122/12 122/16 124/23
**trustworthy [1]** 104/18
**truthful [16]** 25/4 29/24 29/25 30/4 31/7 42/4 50/11 50/12 60/8 60/12 68/14 110/10 110/18 111/4 113/25 115/16
**try [7]** 25/12 25/13 25/14 44/24 45/6 90/16 98/20
**trying [7]** 34/13 35/23 99/3 103/24 107/8 111/15 114/17
**Tryon [1]** 19/11
**Tuesday [1]** 1/14
**turn [1]** 81/16
**TWILIO [1]** 3/18
**two [31]** 27/4 27/19 28/7 35/15 45/24 56/25 57/14 57/21 57/23 70/16 71/6 87/13 88/14 89/1 90/5 94/1 96/14 99/21 101/19 111/25 116/24 121/22 127/7 130/3 132/2 132/7 133/18 133/18 133/19 136/2 137/20
**TYLER [1]** 20/5
**type [17]** 24/3 38/17 53/9 72/17 74/5 74/13 74/21 75/16 77/15 78/17 79/12 81/6 82/18 83/4 124/21 128/22 130/7
**types [3]** 73/18 79/12 134/11

**U**

**U.S [3]** 1/12 66/9 134/16
**Uh [3]** 78/22 79/24 82/7
**Uh-huh [3]** 78/22 79/24 82/7
**ultimate [1]** 40/1
**ultimately [6]** 30/5 31/16 39/15 40/2 48/22 97/25
**unable [2]** 94/9 94/19
**uncomfortable [1]** 68/9
**unconstitutional [23]** 22/9 43/22 52/3 54/14 55/16 61/10 65/12 67/18 68/13 68/20 69/5 77/13 80/2 87/8 87/19 88/1

111/9 112/21 113/1 115/11 117/12 121/20 123/15
**under [47]** 23/5 23/9 28/6 38/1 38/3 40/22 40/24 44/10 52/12 55/7 57/17 60/1 68/11 68/12 69/5 70/15 71/12 71/21 73/8 77/2 77/20 78/2 79/5 80/4 80/7 80/23 81/14 82/3 83/21 85/6 86/11 86/16 112/19 117/12 117/13 117/15 123/16 123/24 123/25 124/21 125/5 126/12 131/4 131/15 135/19 137/4 138/20
**underinclusive [10]** 27/21 32/17 32/20 77/6 77/9 78/9 120/13 120/17 129/6 129/10
**underinclusiveness [3]** 31/20 120/15 120/20
**underinclusivity [6]** 77/14 77/15 78/7 108/1 129/2 129/22
**undermine [3]** 47/24 77/18 82/6
**undermines [3]** 47/10 47/11 50/13
**underscores [1]** 92/11
**understand [22]** 29/6 33/22 36/25 41/16 51/20 52/22 53/13 61/17 62/15 88/23 90/17 98/19 99/3 99/10 103/4 106/21 107/2 108/12 109/9 109/17 130/17 130/18
**understanding [2]** 28/21 89/10
**unevenhanded [1]** 50/16
**Unfair [1]** 131/16
**unique [3]** 65/1 66/17 119/19
**UNITED [4]** 1/1 1/16 22/2 132/12
**unlawful [1]** 84/2
**unless [7]** 56/18 77/14 82/5 86/18 99/1 102/16 136/7
**unlisted [9]** 27/25 38/24 41/8 62/24 63/1 63/2 63/8 63/15 130/14
**unmanageable [1]** 104/23
**unnecessary [1]** 121/4
**unopposed [1]** 69/19
**unprotected [3]** 110/25 111/4 114/1
**unpublished [1]** 130/8
**unreasonable [1]** 33/7
**unreasonably [1]** 97/17
**unsatisfactory [1]** 102/3
**unseemliness [1]** 119/12
**unseemly [2]** 118/11 119/5
**until [2]** 90/13 105/10
**untruthful [1]** 60/10

**unusual [1]** 43/19
**up [26]** 25/25 26/1 26/2 33/12 42/4 50/21 54/24 65/9 69/14 70/19 76/22 76/23 90/16 94/4 98/2 102/21 103/13 106/20 107/18 108/7 108/23 109/16 115/15 125/6 128/10 137/14
**upheld [4]** 69/1 110/8 111/10 119/1
**upon [2]** 111/13 128/5
**us [8]** 16/8 18/9 40/7 57/19 63/12 81/12 94/12 136/19
**use [22]** 25/9 26/19 27/1 27/4 30/6 31/7 32/13 33/20 33/20 33/24 40/10 42/5 63/13 81/8 104/13 104/18 111/20 121/22 122/16 122/17 125/15 134/8
**used [6]** 26/8 37/14 40/11 53/6 76/12 99/23
**uses [1]** 26/16
**using [2]** 70/23 77/20
**usually [2]** 55/4 105/22
**Utah [2]** 67/3 68/24

**V**

**VALASSIS [2]** 14/13 19/9
**valid [4]** 85/22 94/15 94/16 94/16
**value [6]** 14/18 18/11 30/2 91/19 124/7 124/10
**variation [1]** 103/2
**variety [1]** 124/23
**various [3]** 22/7 34/12 57/15
**vastness [1]** 132/13
**VEDDER [1]** 17/23
**vendor [6]** 47/14 47/16 49/18 49/23 120/6 120/9
**vendors [4]** 24/22 104/12 104/21 120/6
**verification [3]** 105/17 105/19 111/25
**verified [1]** 24/19
**verify [2]** 105/17 105/20
**version [3]** 43/13 43/15 69/4
**versions [1]** 43/14
**versus [4]** 51/3 51/7 61/25 120/10
**very [42]** 22/17 22/20 22/22 24/12 24/15 29/5 31/25 33/1 33/5 39/7 47/12 48/17 53/17 59/2 60/20 61/2 61/7 66/21 67/5 67/6 89/5 90/7 90/25 91/13 91/19 93/2 93/2 94/7 95/19 103/19 103/19 116/7 116/14 116/18 116/24 118/7 118/8 121/13 130/4 130/4 131/24 136/16

**via [2]** 64/7 64/25
**vice [3]** 19/23 20/2 20/5
**victim [7]** 29/10 31/4 40/14 41/15 71/13 95/5 124/13
**victims [2]** 108/10 125/7
**view [6]** 73/13 82/21 95/3 125/9 126/21 128/23
**viewpoint [1]** 77/15
**violate [1]** 86/4
**violated [1]** 39/23
**violates [1]** 39/21
**violating [1]** 82/13
**violation [4]** 64/20 95/15 97/12 97/12
**violence [3]** 31/5 91/16 108/10
**VIOLET [2]** 5/23 17/21
**virtually [3]** 23/10 31/15 45/14
**visit [1]** 136/17
**vital [1]** 29/14
**voice [1]** 90/16
**void [1]** 102/17
**voluntarily [3]** 45/2 45/25 46/23
**vote [6]** 107/17 108/18 108/20 108/22 108/24 109/5
**voter [8]** 46/17 46/17 69/18 107/10 107/12 107/15 107/24 109/13
**votes [1]** 46/18
**voting [4]** 107/13 108/5 108/7 109/15
**vs [88]** 1/4 1/9 2/3 2/8 2/12 2/17 2/21 3/3 3/8 3/13 3/17 3/22 4/3 4/8 4/13 4/17 4/22 5/3 5/8 5/13 5/17 5/22 6/3 6/8 6/12 6/17 6/21 7/3 7/8 7/13 7/17 7/22 8/3 8/8 8/12 8/17 8/21 9/3 9/8 9/13 9/17 9/22 10/3 10/8 10/12 10/17 10/21 11/3 11/8 11/12 11/17 11/21 12/3 12/8 12/13 12/17 12/22 13/3 13/8 13/12 13/17 13/22 14/3 14/8 14/12 14/17 14/21 15/3 15/8 15/13 15/17 15/22 16/2 16/7 16/12 56/7 56/11 60/2 66/1 68/12 68/19 68/25 74/7 76/16 87/24 91/25 128/12 129/1

**W**

**Wabash [1]** 18/13
**wait [2]** 32/12 44/19
**waiver [4]** 61/1 61/8 61/11 61/11
**walk [2]** 25/13 60/23
**want [46]** 27/7 28/3 35/25 51/18 54/16 59/15 60/20 61/9 66/19 69/10 75/7 75/22 82/19 88/16 91/10 91/11 92/1 93/12

100/4 100/7 100/25 103/6 105/12 107/22 108/12 108/24 109/4 110/4 111/8 115/9 116/4 116/13 117/16 121/16 122/17 127/24 128/14 128/25 129/5 130/25 131/6 131/8 133/19 137/8 137/15 138/16
**wanted [14]** 51/2 72/15 88/1 90/5 107/16 108/17 108/19 123/8 123/12 126/22 128/9 130/9 135/2 137/11
**wants [8]** 24/10 100/12 113/5 115/23 130/13 130/15 135/21 136/6
**Washington [1]** 19/3
**wasn't [7]** 50/10 63/9 94/16 94/16 100/22 124/10 138/2
**water [1]** 95/8
**watershed [1]** 102/8
**WATKINS [4]** 18/12 18/17 19/2 23/2
**way [57]** 23/3 24/11 31/9 31/24 35/23 37/25 38/11 38/23 40/18 45/10 47/24 48/23 48/25 49/16 50/11 50/13 50/16 51/20 53/17 54/2 57/11 60/19 62/24 64/5 64/24 68/19 68/25 69/25 73/22 75/2 75/16 76/10 76/24 80/3 81/4 84/15 94/1 95/18 98/21 102/7 102/12 106/19 106/20 106/22 107/6 109/17 113/20 115/19 117/7 118/25 119/16 120/12 120/12 120/19 121/3 122/21 123/23
**Wayback [4]** 63/19 63/19 63/21 63/23
**ways [15]** 28/7 30/6 50/6 56/24 57/15 58/12 76/7 78/5 103/10 114/12 119/5 119/6 128/6 128/8 129/11
**we'll [12]** 32/14 70/6 70/8 90/8 90/8 90/9 90/18 91/2 108/18 126/1 130/24 136/9
**we've [3]** 121/14 127/23 135/16
**Web [2]** 78/6 100/9
**website [5]** 76/11 76/23 76/23 76/24 130/22
**websites [2]** 76/13 132/3
**weigh [2]** 55/15 93/7
**went [1]** 118/25
**weren't [1]** 59/25
**West [2]** 17/16 19/24
**Whac [1]** 105/4
**whatever [5]** 51/18 77/20 101/15 113/2 137/14
**whatsoever [3]** 37/11 45/11 111/19
**whenever [4]** 39/18

## W

**whenever... [3]** 105/5 105/5 124/9

**whereas [2]** 78/1 85/11

**whether [38]** 26/14 27/21 40/23 43/11 53/25 57/12 60/8 65/8 68/10 71/8 75/10 75/13 79/18 79/20 81/2 85/14 85/17 88/19 99/11 100/6 101/17 101/17 101/18 103/22 103/22 107/16 108/16 108/16 108/17 109/4 116/20 123/19 124/1 125/2 125/12 126/5 126/13 126/15

**while [4]** 67/18 82/3 88/22 99/11

**WHITEPAGES [9]** 1/10 17/25 56/3 60/22 63/9 71/23 87/3 87/14 128/16

**who's [3]** 46/8 95/4 118/24

**whole [12]** 33/15 58/11 67/24 92/24 93/11 93/12 94/13 118/8 118/9 118/19 124/8 132/18

**wholeheartedly [1]** 62/1

**wholesale [2]** 92/13 93/10

**whom [1]** 107/14

**why [31]** 25/14 28/19 36/25 39/15 40/5 42/3 42/20 45/6 47/13 49/8 55/3 67/16 71/4 74/3 77/1 80/21 88/22 92/8 93/24 104/9 108/12 121/8 121/16 121/22 122/12 124/14 125/21 129/3 130/11 131/7 131/19

**WILAND [1]** 13/4

**Wilkerson [1]** 133/21

**Wilkinson [1]** 133/21

**Wilkinson's [1]** 134/6

**will [14]** 22/21 25/13 49/8 69/10 76/19 81/6 81/7 81/16 91/25 111/11 133/17 136/5 137/15 138/20

**willfully [1]** 116/20

**WILLIAM [2]** 19/7 134/18

**Williams [9]** 32/22 48/3 77/12 107/3 118/1 118/2 118/7 119/25 129/1

**Williams-Yulee [9]** 32/22 48/3 77/12 107/3 118/1 118/2 118/7 119/25 129/1

**win [2]** 28/6 55/6

**window [1]** 50/23

**wish [3]** 51/13 51/13 135/9

**within [8]** 29/2 39/14 72/12 74/18 79/6 87/18 121/8 135/19

**without [9]** 41/7 41/8 62/8 62/12 72/24 83/22

85/15 85/25 99/18

**won't [7]** 49/1 59/20 100/2 101/10 127/14 136/16 138/13

**wondered [1]** 51/2

**word [7]** 33/20 44/5 44/6 44/20 97/20 99/23 99/25

**words [13]** 35/20 43/19 44/5 44/18 48/25 82/23 89/16 96/2 106/22 106/23 107/11 110/14 114/5

**work [10]** 73/23 74/23 77/16 78/16 84/17 104/17 104/21 105/11 107/10 138/10

**worked [4]** 136/8 137/24 138/2 138/3

**works [1]** 107/23

**world [2]** 39/21 123/23

**worldwide [1]** 94/10

**worried [3]** 48/17 81/2 95/6

**worse [2]** 67/20 132/18

**wouldn't [13]** 34/1 37/8 41/18 49/20 49/25 82/22 82/24 96/14 101/21 102/1 102/3 107/21 125/21

**wrestling [1]** 85/15

**write [3]** 97/10 113/2 118/21

**writing [1]** 73/5

**written [4]** 24/15 25/24 47/12 103/15

**wrong [3]** 26/21 112/3 134/25

## X

**X's [1]** 109/2

## Y

**YARDI [1]** 4/9

**yeah [26]** 34/23 36/1 36/17 38/4 52/19 54/19 58/6 60/17 72/23 72/24 74/2 80/22 81/11 81/20 82/14 83/8 85/14 107/5 109/8 114/2 115/5 118/6 118/7 123/21 137/23 138/1

**year [2]** 116/16 133/22

**years [3]** 37/15 63/3 63/14

**yes [19]** 25/20 29/19 30/17 30/24 57/7 58/1 58/7 60/14 75/11 78/19 84/6 84/13 84/22 85/6 87/1 95/25 123/4 130/3 137/20

**yet [2]** 118/25 138/18

**yield [1]** 78/4

**York [14]** 17/3 18/3 18/3 18/11 18/11 18/19 18/19 20/3 20/3 20/6 20/6 88/10 134/1 134/3

**you [396]**

**you'd [1]** 63/1

**you've [8]** 69/22 85/9

91/1 104/24 111/20 112/2 124/4 130/22

**YUDELSON [2]** 19/20 69/16

**Yulee [9]** 32/22 48/3 77/12 107/3 118/1 118/2 118/7 119/25 129/1

## Z

**Zadvydas [1]** 114/21

**ZILLOW [1]** 9/14

**zone [3]** 52/15 52/17 79/11

**zoom [2]** 130/6 131/8

**Zuckerman [3]** 20/11 21/8 91/7